# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

SKYKNIGHT AIR SERVICES, INC.
a Florida Corporation,
and Brian Kilcullen, President

       Plaintiffs,

vs.

GUY LEWIS
TERRENCE THOMPSON
LAURIE RUCOBA
HOWARD WEINTRAUB
MICHAEL CONSAVAGE
JOHN DEVANEY
MICHAEL PALMER
EG&G TECHNICAL SERVICES, INC.
(formerly EG&G Dynatrend, Inc.)
EG&G INC.
GEORGE MELTON
JERRY HAWKINS
JOHN DENT
ROY BUTLER, SR.
ROY BUTLER, JR.
PATRICK HOLMES
UNNAMED DEFENDANT(S) whom participated in;
(1) intrinsic fraud of N802ME;
(2) conspiracy to obstruct criminal investigation;
(3) conspiracy to violate Plaintiff's Civil Rights;
(4) criminal Racketeering Enterprise;
(5) and those whom bore responsibility for these
individuals criminal endeavors.

       Defendants,

CASE NO: **02-60964**

# CIV - ROETTGER

MAGISTRATE JUDGE
SELTZER





## COMPLAINT FOR MONETARY DAMAGES

Plaintiffs, Brian Kilcullen and SkyKnight Air Services, Inc. (SkyKnight), acting Pro Se, hereby

files this Complaint for Monetary Damages against both named and unnamed defendant(s),

and states:

1

## PARTIES AND JURISDICTION

1.      Brian Kilcullen is a resident of Broward County, Florida, and President of SkyKnight Air Services, Inc., a corporation organized and existing under the laws of the State of Florida, having it's principle place of business in Broward County, Florida.

2.      This Court possesses jurisdiction over this action pursuant to 28 U.S.C. - 1331, 1343, 1356, 1361, 42 U.S.C. - 1988  and 18 U.S.C. - 1964(a).

3.      The defendants, individually and collectively are amenable to these Actions in Tort, for violations of Civil Rights - 42 U.S.C. 1983, 1985, 1986 (Bivens Action); Civil Remedies for Criminal Practices - Fla. Statute 772.102 (1) 22, 27, 29 - 772.103 (1)(2)(3)(4) - 772.104, and Civil Remedies for RICO statute - 18 U.S.C. - 1964(c).

4.      Venue is proper in this Court pursuant to 28 U.S.C. - 1391 (b-2)(c), (e)(2) because a substantial part of the events giving rise to this claim occurred, and a substantial part of the property that is the subject of this action, was situated in the Southern District of Florida.

## STATEMENT OF FACTS

5.      On or about October, 31st, 1991, a 1979 Swearingen Merlin III aircraft, Registration number N802ME and a 1972 Mitsubishi MU-2 aircraft, Registration number N800BY and associated inventory, were seized pursuant to a judicial warrant under the provisions of 21 U.S.C. 881 (a) (6) from Rodney Norris Matthews. (Registered to PAS Equipment Co.)

6.      Due to time constraints, agents were only able to inventory N802ME.

7.      United States Customs Service, Special Agents, Jean Wilkinson and Laureen Zizzo, inventory N802ME and its associated inventory by completing the US Customs #6051

2

(Custody Receipt for Retained or Seized Property) **(Ex. #1 - pg. 1,2,3)** and #4006 (Aircraft Condition and Inventory) **(Ex. #1 - pg. 4)** forms.   Four (4) photographs were taken.

8.      Forms acknowledge the presence of numerous avionics (aircraft radios), which had been removed from the nose-compartment of N802ME, by make, model and serial number.**(Ex. #2 - pg. 3 lower)**   Remaining avionics are still installed in aircraft.**(Ex. #2 - pg. 1 upper-left)**

9.      The #6051 form for N802ME, itemizes; logs, records + documents relating to A/C + maintenance; removed avionics; Sony TV; headsets; microphones; life-vests; life-raft; FAA airworthiness certificate; starter shaft; etc...

10.     The removed avionics and logbooks are an inherent value of the aircraft, N802ME. The value of the remaining inventory is approximately $7,500.00. **(Ex. #2 - pg. 2 upper)**

11.      EG&G Dynatrend, Inc. and Red Aircraft/Miami Aviation Corporation are contractors for the United States Customs Service charged with the care, custody and control of seized assets.

12.     In the absence of federal agents, EG&G and other contractor personnel, take possession of N802ME, N800BY and their respective inventory.

13.     Current logbooks, which had not been inventoried for N800BY, were removed.

14.     Aircraft evaluation can only be accurately determined with a full and current set of logbooks.  There must be Airframe Log(s), Engine Log(s) and Propeller Log(s) corresponding to the class of aircraft. (Single-engine, Multi-engine, Turbo-Prop....etc) When one logbook becomes full than a subsequent one must begin where the older one left off.  N802ME, a twin-engine, turbo-prop aircraft had a set of 8 total logbooks. Airframe (2), Engines (4) and Propellers (2).

15.    Aircraft with no logbooks or no current logbooks can be devalued anywhere from 25% to 50%, as absence of detailed records makes it impossible to accurately determine hours of all components (airframes, engines, props). Times necessary to meet the requirements of certain Federal Aviation Administration regulations.

16.    On December 17th, 1991, John Roberts, an experienced aircraft appraiser for the US Customs Service (USCS) appraised N802ME at $606,021.50 **(Ex. #3 - pg. 1,2)**. John Roberts' appraisal clearly shows "aircraft and engine logbooks: Yes", no missing equipment and he places airframe and engine times at 3059.9 hours. Accurate notations that can only be determined with a full and current set of logbooks for both "airframe and engines". His notes also reference the Customs #6051 form for N802ME by listing "Line Item 4" which shows "logs, records + documents related to A/C + main."

17.    John Roberts appraisal of N800BY, notes missing logbooks and lessens value accordingly.

18.    On December 14th - 16th, 1992, in the course of prosecuting Rodney Matthews, Assistant United States Attorney (AUSA) Terrence Thompson, lead US Customs investigator, Special Agent (SA) Jean Wilkinson and other federal agents seek and receive permission **(Ex. #4 - pg. 1,2)** to inspect seized assets, consisting of the Mitsubishi MU-2 aircraft N800BY and the Swearingen Merlin aircraft N802ME and "inventory" in the presence of John Dent, EG&G Dynatrend Inc. Seizure Specialist.

19.    On November 8th, 1993, Assistant United States Attorney (AUSA) Terrence Thompson was prosecuting Rodney Norris Matthews in the afore mentioned case on federal charges of drug-smuggling, in Miami, FL. In the course of prosecution, this day, AUSA Thompson called to the stand, John Dent **(Ex. #5 - pgs.1-10)**, EG&G Dynatrend employee, responsible for the care, custody and control of seized aircraft provided under

contract for the United States Customs Service (USCS).  Under questioning by AUSA Thompson, John Dent evaluates, amongst other seized assets of Rodney Matthews, the Swearingen Merlin aircraft, N802ME, at $750,000.00 USD and the Mitsubishi MU-2 aircraft, N800BY at $250,000.00 USD.  Upon cross-examination by defense counsel, F. Lee Bailey, John Dent places N802ME engine times at "mid-time", admits to be in possession of the "logbooks" and acknowledges their location as being stored with the aircraft in his control and custody.  A value of $750,000.00 for N802ME could only be arrived at with a full and current set of logbooks.  All this testimony takes place under questioning by or in the presence of AUSA Terrence Thompson.

20.     On or about February 22nd, 1994, the General Accounting Office (GAO) conducts an inventory of N802ME and it's inventory.  A discrepancy is noted, as to how many oxygen masks there are in the inventory, which is resolved by use of the #6051 form.**(Ex. #6)** No mention is made of anything missing.

21.     Upon Rodney Matthews' conviction, criminal forfeiture proceedings were subsequently instituted and pursuant to an Amended Preliminary Order of Forfeiture entered on May 20, 1994, the aircraft, N802ME and N800BY, were forfeited to the United States as substitute assets.

22.     Subsequently, John Dent, Jerry Hawkins (supervisory employee of EG&G Dynatrend, Inc.), and others, known and unknown, as part of a continuing criminal enterprise, conspire to defraud the US Customs Service and the United States of America by misrepresenting and withholding the inventory (logbooks) associated with N802ME and N800BY, thereby devaluing the aircraft to prospective buyers.  As in previous auctions, John Dent, Jerry Hawkins and others allow select individuals to view the misrepresented /withheld inventory, just prior to auction, so as to profit from the person(s) whom would

5

naturally pay more at auction than those unaware of the fraudulent misrepresentations.

23.     The missing inventory is then "sold" to the high-bidder after the auction process.

"By nature and method of operation, Customs sales of forfeited property and general order merchandise are highly vulnerable to fraud, waste and abuse.  Customs employees have knowledge of the property they seize.  Contractor employees determine when and where the property will be sold and advertise the property for sale.  They could limit the number of interested buyers through misleading advertising or by offering the property for sale in locations with few interested bidders. Subcontractor employees also have direct control over the appearance of and access to property they store and maintain prior to sale.  They could degrade the appearance of the property or impede prospective bidders' access to inspect the property." (Excerpt from "1991" GAO report #B-242351)

24.     Starting on June 6th, 1994, upon the Preliminary Order of Forfeiture of N800BY and N802ME the month before, John Dent, Jerry Hawkins and others known and unknown, fraudulently alter the US Customs #4080 forms (Conveyance Evaluation and Fair Market Value Analysis) for N802ME, to devalue the aircraft to an inaccurate value prior to auction.  The forms clearly show logbooks and avionics disappearing from one to the next in rapid succession. **(Ex. #7 - pgs. 1,2,3)**

Evaluation prior to June 6th, 1994:             $606,021.50
On June 6th, 1994 the FMV is adjusted to:       $596,022.00
On April 10th, 1996 the FMV is adjusted to:     $526,022.00
On August 30th, 1996 the FMV is adjusted to:    $431,022.00

25.     On August 21st, 1996, with the court ordered Summary Forfeiture of the aircraft, to the US Customs Service, both N802ME and N800BY are released for sale and John Dent is directed to open and inventory the sealed boxes containing "partially removed avionics", "logbooks", manuals, life-raft, electronics, etc.. for advertising purposes.

26.     On October 4th, 1996, N802ME is pulled from the sale because the Drug Enforcement Administration (DEA) has expressed interest in this aircraft.  After examining the N802ME, on December 5th, 1996, in John Dent's presence, the DEA declines the aircraft, though, because of "missing avionics" and "missing logbooks" stating that

because of the absence of complete logs it was unable to determine engine times!

27.     N800BY is shown to viewers without the complete and current set of logbooks which had been present when originally seized.

28.     N800BY was sold at auction on or about October, 1996 to a Dr. Louis Provenza of Slidell, Louisiana.

29.     Dr. Provenza's pilot came into possession of the full and current set of logbooks for N800BY the day after the auction.

30.     N802ME is subsequently advertised and fraudulently misrepresented for sale in April of 1997, stating "No Logbooks"**(Ex. #8)**.

31.     At the respective showings on April 21st & 28th, 1997, at John Dents' direction and under Jerry Hawkins supervision, the aircraft minus removed avionics (listed on #6051) and only two older engine logbooks (2 out of the total of 8) are shown.

32.     On April 21st & 28th, 1997, Plaintiff and other prospective buyers view N802ME and one small flight case containing only two (2) ,out-of-date, engine logbooks and work orders, note missing avionics and logbooks and question EG&G Dynatrend employees (3-5 persons) as to the location of the missing items.  Plaintiff and others are advised "What you see is what you get!"

33.     On April 28th, 1997, a Roy Butler Jr. and a Patrick Holmes are shown inventory not shown to other prospective viewers at a time not authorized for viewing **(Ex. #9 - pg. 3)**. Property Access Register does not reflect Plaintiff or any of the approximately 20+ viewers whom attended that day.

34.     Plaintiff decides to attend auction based on representations of EG&G Dynatrend/US Customs and it's employees.

35.     On April 30th 1997, N802ME is put up for bid by EG&G Dynatrend, Inc.  No mention is

made of the presence of logbooks and avionics missing from the showings, but all attendees are advised that "All sales are final!", "As is!", "With all faults!".

36.     For reasons unknown, the individual(s) allowed to view the "missing inventory" stopped bidding in the auction process, leaving those unaware of the fraudulent misrepresentations to bid amongst themselves.

37.     N802ME is sold at public auction in Ft. Lauderdale, Fl. at the Broward County Convention Center on April 30th, 1997, to Plaintiff, SkyKnight Air Services, Inc, a Ft. Lauderdale based aircraft sales company.

38.     Brian Kilcullen, president for SkyKnight Air Services, Inc. is approached after the bidding by several individuals whom expressed an interest in possibly purchasing N802ME from SkyKnight.  They were Jack Tribuko and Patrick Holmes. (Individually)

39.     Upon payment of $365,000.00 USD, president for SkyKnight, Brian Kilcullen, is told that 10-11 boxes of inventory accompany N802ME.  Asked why these boxes were not shown with the aircraft at time of showings, Gary Poulsen, representative for Larry Lathame Auctioneers and EG&G, explained it was of no consequence since SkyKnight, being the high bidder, was now the rightful owner of the aircraft and the inventory that went with it.

40.     On May 13th, 1997, an inventory and "Oversight" inspection of seized property is performed at Miami Aviation Corporation, by John Dent and US Customs agents, Robert Del Toro and Anthony Caurdafe.

41.     On this same day and in the same property room where the previously stated oversight inspection was performed, Brian Kilcullen/SkyKnight, subsequently, met with John Dent, EG&G representative, at the Opa-Locka airport (Miami Aviation Corporation) to take delivery of N802ME and the inventory previously not shown.  When John Dent

8

was asked what the boxes contained, he stated that he "definitively" did not know what they contained, but made it abundantly clear to Brian Kilcullen and Patrick Kilcullen (his father) that the inventory being handed over was his (SkyKnight's) property.

42.     John Dent, Jerry Hawkins and others, known and unknown, must turn over all items listed on the #6051, or else the chain of custody will be broken and they will be culpable for theft of government property, as all items seized must be turned over to the high-bidder, whomever it is.

43.     Upon removal and examination, Brian Kilcullen/SkyKnight discover all the "missing avionics" and all the "missing logbooks" in the boxes provided as well as approximately $7,500.00 worth of electronics and manuals, all previously not shown, but listed on the attached Customs #6051 forms **(Ex. #1 - pg. 1,2,3)** (carbon copies).

44.     Plaintiff, relying upon Jerry Hawkins, John Dent and Gary Poulsen's false and fraudulent representations, believing that "all sales are final" and "the inventory is now rightfully yours (Brian Kilcullen/SkyKnight's)" believes that irrespective of "mistakes" made, that Brian Kilcullen/SkyKnight is the rightful owner of N802ME and it's inventory.

45.     On or about May 15th, 1997, Brian Kilcullen/SkyKnight, in the ordinary course of business, offers for sale, N802ME, to all interested parties, which include prospective buyers whom had attended the viewings and auction referred to above. (Patrick Holmes and Jack Tribuko)

46.     Upon being sent a "specification sheet", which reflected N802ME, complete with all log-books and avionics, Patrick Holmes called inquiring as to why SkyKnight was asking $495,000.00. Brian Kilcullen explained that $495,000.00 was a very fair wholesale price for N802ME, complete with all logs and avionics. Mr. Holmes called back a second time only to state "My boss says your making too much money!" When asked by Brian

Kilcullen how his boss knew how much money Brian Kilcullen/SkyKnight was making, he (Patrick Holmes) would only repeat his previous statement.

47.    On May 21st, 1997, a Roy Butler Sr., a prospective buyer, whom had sent his son & pilot (Roy Butler Jr. & Patrick Holmes) to examine N802ME at the above referenced showings, sends a letter **(Ex. #10)** to US Customs Internal Affairs alleging "possible" fraud in the sale of N802ME.  He states that they, his son, pilot and other viewers, were told that there were "no logbooks" and "missing avionics" and because of Brian Kilcullen/SkyKnight's possession of missing logs and avionics, he as a "concerned citizen" felt he should notify US Customs of "possible fraud" regarding the sale of N802ME.

48.    This letter was designed to and did in fact, initiate an investigation into the sale of N802ME and the possible defrauding of the US Government by Brian Kilcullen/SkyKnight.  His letter makes no mention of his son's and pilot's private viewing **(Ex. #9)** and falsely states that Brian Kilcullen said they (missing inventory) "mysteriously" appeared.  The only way he (Roy Butler Sr.) could know what SkyKnight was making would be if he had inside information as to the presence of inventory not shown and EG&G's delivery of same to Plaintiff.

49.    On or about the first week of June, 1997, USCS, Internal Affairs SA John Devaney calls Brian Kilcullen/SkyKnight to ascertain whether or not Brian Kilcullen, did in fact, come into possession of the "missing inventory" and if so, from whom.  Brian Kilcullen/SkyKnight readily admits to being in possession of the missing inventory, states that no laws were violated in their acquisition and offers to assist US Customs with their investigation upon being assured that SkyKnight would remain the rightful owner of N802ME, having violated no laws.  SA Devaney ends the conversation stating that he

10

will be in touch.

50. Brian Kilcullen is confused as to how the USCS Internal Affairs agents can not know the source of the "missing inventory" when it is clearly listed on the #6051, which have carbon copies attached to the respective boxes. **(Ex. #2 - pg. 2 - lower)**

51. Believing that all bidders had been on even ground, Brian Kilcullen/SkyKnight feels that he is well within his Constitutional Rights to preserve his position, with regard to N802ME.

52. On June 18th, 1997, in the ordinary course of business, Brian Kilcullen/SkyKnight entered into a contractual agreement with Pat Grasch (PATCO) and Mike Eberle (PARAMOUNT) for the sale of N802ME, for $495,000.00 dollars to SkyKnight. **(Ex. #11 - pgs. 1,2)**.

53. Upon entering into this contract, for sale of N802ME, Brian Kilcullen/SkyKnight was notified by a title company that the forfeiture documentation supplied to SkyKnight was incomplete. Brian Kilcullen/SkyKnight contacted Jerry Hawkins (EG&G), Mark Edwards (USCS FP&F officer) and left messages with AUSA Terrence Thompson, requesting assistance with the paperwork transferring title. Alerting all parties that Plaintiff was under contract with a third party for the sale of N802ME.

54. On June 20th, 1997 AUSA Terrence Thompson opens a criminal investigation alleging possible collusion in the purchase and sale of aircraft at the United States Customs Service auctions, in Miami, Fl.

55. On June 24th 1997, Pat Grasch of PATCO, advises EG&G, by fax, that he (PATCO) and Brian Kilcullen/SkyKnight are requesting assistance to clear liens which are hampering the sale of N802ME. **(Ex. #12)**

56. Over one (1) month has now transpired since the receipt of Mr. Butler's letter, by SA

Howard Wientraub, head of the USCS Internal Affairs division. The abundance of documentation, photos, court records, eye-witness accounts and AUSA Thompson's and SA Wilkinson's material knowledge of the presence of both avionics and log-books for N802ME, should, could and would have made evident to a reasonable person, that an "Internal Investigation" was indicated.

57.   AUSA Thompson never returns Brian Kilcullen's phone calls and Internal Affairs makes no attempt to contact Plaintiff.

58.   On or about the end of June, 1997, SA Weintraub, SA Consavage, SA Devaney, SA Palmer and AUSA Thompson collude and conspire to deprive Brian Kilcullen/SkyKnight of his legally obtained property in violation of his (Brian Kilcullen) Constitutional Rights.

59.   A Grand Jury is convened, by AUSA Terrence Thompson, in July of 1997 to investigate fraud, collusion and false statements to the United States involving Brian Kilcullen d/b/a SkyKnight Air Services, Inc and others.

60.   On July 3rd, 1997 Mike Consavage, Special Agent for USCS Internal Affairs swears out an affidavit (Ex. #13 - pgs. 1-10) for seizure of all the avionics and all the logbooks for N802ME, as substitute assets. The affidavit, falsely states, that all the avionics and all the logbooks were missing when N802ME was seized from Rodney Matthews and it's subsequent auction in Ft. Lauderdale, contrary to USCS own paperwork. (#6051, 4006 & Appraisal).

61.   Affiant also, falsely states that Brian Kilcullen was part of an aborted air-drop of marijuana and that Brian Kilcullen requested immunity in this matter. Both unsubstantiated and untrue.

62.   On July 7th, 1997, when first alerted to seizure warrant, Brian Kilcullen sends letters (Ex. #14 - pgs. 1,2) to AUSA Terry Thompson, SA John Devaney and EG&G manager,

12

Jerry Hawkins, explaining SkyKnight's position regarding N802ME, which clearly states that Brian Kilcullen, president for SkyKnight Air Services, Inc. committed no crime and requests documentation to complete sale of N802ME.

63.    On or about July 10th, 1997, SA Mike Consavage calls Insured Aircraft Title Service agent, (SkyKnight's escrow agent) Leda Francis, informing her of his intent to seize Brian Kilcullen/SkyKnight's property.  (log-books and avionics for N802ME)

64.    Brian Kilcullen/SkyKnight's credit and credibility in the financial world is ruined when Title and Financial institutions, with whom SkyKnight has a business relationship, are alerted to federal investigation and seizure.

65.    As the SA Consavage affidavit is sealed until the warrant is served, Brian Kilcullen has no knowledge of its contents or the fabrication that he, Brian Kilcullen, requested immunity.

66.    Brian Kilcullen committed no crimes in this matter and did not require or request immunity at any time.

67.    Brian Kilcullen, having spoken to SA Devaney the month before and upon notice of US Customs' intent to seize logbooks and avionics for N802ME, makes no attempt to remove it (N802ME) from the jurisdiction or conceal it's location.

68.    On or about July 14th, 1997, Brian Kilcullen/SkyKnight retains counsel, at great expense, to advise on how best to proceed.

69.    Joel Hirschhorn, Plaintiff's counsel, calls SA Consavage and advises him that they are making a mistake, as the Customs #6051 clearly shows logbooks and avionics turned over to Brian Kilcullen/SkyKnight.  When SA Consavage was advised to check his copies of the #6051, he (Consavage) stated that Brian Kilcullen could have made those (#6051) up.

13

70.    SA Consavage calls EG&G Dynatrend employee, John Dent, and inquires as to whether or not the "missing inventory" was in the boxes given to Brian Kilcullen/SkyKnight.  John Dent, falsely states, that he inventoried the boxes just prior to giving them to Brian Kilcullen/SkyKnight and that the avionics and missing logbooks were not in them.  Essentially, making Brian Kilcullen/SkyKnight the scapegoat for their (EG&G/USA) criminal enterprise.

71.    On July 15th, 1997, under advice of counsel, Joel Hirschhorn, Brian Kilcullen turns over all "removed" avionics and all logbooks (total of 8) for N802ME to Special Agents (SA) Mike Consavage, John Devaney and Mike Palmer (Ex. #15).  SA Mike Consavage indicated that the warrant stipulated "all" the avionics and when Brian Kilcullen explained that to remove all the attached avionics would be financially unfeasible, SA Consavage ordered the aircraft and it's remaining avionics to be considered seized, unable to be moved or sold.

72.    At this same meeting, Brian Kilcullen/SkyKnight is presented with a subpoena (Ex. #16) to appear before a Grand Jury, run by Terrence Thompson, and present (1) any and all original log books for N802ME, its engines, propellers and airframe; (2) any and all documents, including contracts, memoranda, offers, spec. sheets and correspondence pertaining to the sale, or offer for sale of N802ME.

73.    At this point in time, Special Agents Michael Consavage, John Devaney, Michael Palmer and Howard Weintraub of the United States Customs Service and AUSA Thompson of the Department of Justice seize private property which had been duly seized previously (Rodney Matthews warrant), inventoried, forfeited and sold at auction.

74.    The warrant falsely claims that "all" the avionics and "all" the logbooks are substitute assets, contradicting SA Consavage's own affidavit which states that two older engine

14

logbooks were shown and advertising and inventory forms which show/list avionics. All facts known to SA Consavage at that time.

75. And in fact, "all" the avionics and logbooks were in EG&G Dynatrend's/US Customs possession all along. Just not advertised and shown per the law.

76. AUSA Thompson's material knowledge should have pre-empted this seizure and had any reasonable or diligent investigation been conducted by SA Consavage, he would have been able to determine facts and fault without jumping to seize property which no reasonable person could have believed to be subject to seizure, as "Substitute Assets".

77. The seizure and investigation against Brian Kilcullen/SkyKnight were "unwarranted", "unlawful", "malicious" and in furtherance of a criminal enterprise.

78. Brian Kilcullen/SkyKnight suffers the loss of $495,000.00 (N802ME sales price) operating capitol, as the aircraft should and would have sold by this time.

79. Due to the rapidly deteriorating situation (N802ME), Brian Kilcullen/SkyKnight is no longer able to conduct business (aircraft sales), as all time and monies are now directed towards determining what and why events have transpired and how to secure return of legally obtained property.

80. SA Consavage determines that those avionics seized are listed on the readily available Customs #6051 forms from the Rodney Matthews case.

81. On or about this time, Roy Butler Sr., Roy Butler Jr., Patrick Holmes, Terrence Thompson, Laurie Rucoba (subsequently), Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, Jerry Hawkins, John Dent, George Melton, EG&G et al and others known and unknown collude and conspire to place the responsibility for fraud, collusion and false statements, in the sale of N802ME, with Brian Kilcullen/SkyKnight.

82.     On or about this time, Roy Butler Sr., Roy Butler Jr., Patrick Holmes, Terrence Thompson, Laurie Rucoba (subsequently), Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, Jerry Hawkins, John Dent, George Melton, EG&G et al and others known and unknown, in furtherance of a criminal enterprise, conspire to and subsequently make false statements, obstruct justice, withhold material knowledge from investigators (fraudulent concealment), commit perjury before a Grand Jury, withhold discovery (fraudulent non-disclosure), suborn perjury, file false and misleading affidavits, motions and declarations before the court and refuse to perform non-discretionary duties, knowing it will cause an injustice in another proceeding.

83.     All parties collude and conspire to conceal evidence of fraud in order to protect and perpetuate criminal enterprise, as any arrests or prosecution will bring to light this racketeering and corrupt enterprise within the Asset Forfeiture Program.

84.     On or about July 20th, 1997, Brian Kilcullen/SkyKnight through counsel, Joel Hirschhorn, filed a motion for "Relief from Seizure Order".

85.     On July 30th, 1997, Magistrate Lurana Snow denied Brian Kilcullen/SkyKnights' motion for relief from seizure order **(Ex. #17)** , citing; "when no indictment has been filed, the claimant who seeks return of property must do so by a separate civil lawsuit".

86.     In a phone conversation on July 30th, 1997, to Brian Kilcullen/SkyKnight counsel, Brian Bieber, AUSA Terrence Thompson states he will not give back property (logbooks & avionics) seized from Brian Kilcullen/SkyKnight.

87.     Counsel for Mike Eberle, buyer for N802ME, threatens civil action against Brian Kilcullen/SkyKnight for non-performance of the contract in place prior to seizure **(Ex. #18 - pgs 1,2,3)** .

88.     After two meetings between SkyKnight president, Brian Kilcullen, counsel Joel

Hirschhorn, AUSA Mark Lester and AUSA Terrence Thompson to resolve the situation proved futile, SkyKnight with counsel filed suit on August 25th, 1997, against the USA & US Customs Service.  (CV97-7027)   In the second meeting referenced above, AUSA Terrence Thompson states to Brian Kilcullen and counsel, Joel Hirschhorn, that he had evidence of "collusion and fraud" in the sale of N802ME.

89.     Plaintiff, upon having had property seized, been accused of crimes he did not commit and under threat of civil action by buyer, suffers extreme emotional distress.

90.     Upon determining that EG&G Dynatrend, Inc. was somehow at fault for the circumstances surrounding the "misrepresentations" and subsequent seizure, SkyKnight with counsel filed suit against EG&G et al in Florida State court on October 27th, 1997, asserting "Breach of Contract", "Breach of Implied Contract", "Negligent Misrepresentation", "Tortious Interference with a Business Contract".

91.     EG&G Dynatrend then filed for and received permission to remove this case to federal court before Judge Graham in Dade County.  Upon order removing them, EG&G, to federal court, EG&G then sought and received permission to join the SkyKnight vs. EG&G case (CV97-3765) with that of the SkyKnight vs. USA/USCS case before Judge Ferguson in Broward County, citing same subject matter.

92.     Both defendants, USA/US Customs Service and EG&G filed motions to avoid discovery in their respective suits and refused to participate in discovery.  Fraudulently concealing facts and documents, discoverable under the Fed. Rul. of Civ. Proc., necessary to fully and fairly present their (SkyKnight) case.

93.     On January 16th, 1998, a meeting between Brian Kilcullen, Joel Hirschhorn, AUSA Terrence Thompson, SA Mike Consavage, SA John Devaney and SA Jean Wilkinson takes place at the Ft. Lauderdale US Attorneys Office.  SA Mike Consavage, when

asked why he seized Brian Kilcullen's airplane, states "Because you were going to sell it!" The only statement made by AUSA Thompson was; "How do we make this lawsuit go away."

94.    The agents acknowledge "false statements" from John Dent with respects to the presence or absence of missing inventory and also to having interviewed someone else who verified US Customs possession of a "full set" of logbooks for N802ME, when the aircraft was first seized in "1991".

95.    Agents further state, that many times they (Internal Affairs) lack sufficient evidence to prosecute a crime.  Even though their investigation is just beginning!

96.    Despite these admissions, Brian Kilcullen/SkyKnight seized property is not released.

97.    This same day, EG&G, by court order, is ordered to comply with discovery, stating that Motions to Dismiss do not stay discovery **(Ex. #19)**.

98.    USA/US Customs Service refused to turn over any discovery (admissions, interrogatories & production).

99.    Special Agents of the US Customs Service and Assistant US Attorney Thompson, assigned to investigate this matter, maintain an "active investigation" for appearance purposes only.  No real or productive investigation is conducted to gather evidence, determine criminal intent or bring prosecution for the criminal fraud in the sale of N802ME.

100.    US Customs agents and US Attorneys utilize their respective positions to obstruct justice and a criminal investigation by refusing to perform non-discretionary duties.

101.    US Customs agents and US Attorneys in furtherance of a criminal enterprise, deliberately and maliciously, conceal facts and evidence of fraud (N802ME) from Plaintiff.

18

102.   US Customs agents and US Attorneys in furtherance of a criminal enterprise, protect and shield those known to be defrauding the United States of America from civil liability and criminal prosecution.

103.   Sometime shortly after the above referenced meeting, AUSA Laurie Rucoba called Brian Kilcullen/SkyKnight counsel, Brian Bieber, to offer to return the seized property (legally obtained avionics and logbooks) if SkyKnight would drop its lawsuit.  Brian Kilcullen, president for SkyKnight refused, as the damages (lawyers fees, investigation costs & damages to both SkyKnight's current and future business) were far too costly by this time.

104.   AUSA Laurie Rucoba deliberately and maliciously attempts to coerce Plaintiff into trading his Civil Rights for legally obtained property.

105.   On February 6th, 1998, EG&G Manager, Jerry Hawkins and counsel, perpetuate the fraud by stating in interrogatories that the inventory contained "removed avionics" and only "two logbooks for engines from 1978-1984" and that all inventory was shown to viewers **(Ex. #20 - pgs. 1-14)**.  John Dent had already stated to SA Consavage that he inventoried the boxes turned over to Brian Kilcullen and that they did not contain avionics or missing logbooks.  Further, resulting investigation showed all (8) the logbooks were in EG&G's possession.

106.   On this same day, EG&G refuses to comply with discovery, stating that "any disclosures of these documents (discovery) could subject EG&G to criminal sanctions imposed by 18 U.S.C. 641." **(Ex. #21- pgs. 1-7)**  This statute is clearly designed to prosecute theft and fraud from the US Government, not cover them up.

> 18 USC 641 Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency

thereof, or any property made or being made under contract for the United States or any department or agency thereof;

107. On February 9th, 1998, AUSA Mark Lester instructed the US Customs Service to return the logbooks and avionics seized pursuant to SA Mike Consavages' warrant **(Ex. #22)**.

108. On February 20th, 1998, Associate Chief Counsel for the US Customs Service, advises that SA Consavage is not authorized to testify in a deposition, for which he has been duly subpoenaed, citing 19 CFR 103.22, which pertains to cases in which the USA/US Customs Service is not a party.

109. On March 11th, 1998, US Customs, Office of Chief Counsel, sends a letter which states that EG&G is prohibited from releasing any documents, citing 18 USC 641. **(Ex. #23)** They, state that they will review the requested documents and decide which, if any, EG&G can produce. A privilege log is promised but never produced. A clear conflict of interest and violation of the Fed. Rul.of Civ. Proc.

110. On or about March 16th, 1998, a meeting was arranged between Brian Kilcullen/SkyKnight, Joel Hirschhorn, AUSA Thompson, SA Consavage and SA Devaney in order to divulge information, gathered by Brian Kilcullen's own investigation, which pointed to false statements, fraud, collusion and an on-going criminal conspiracy on the part of EG&G employees and others. Brian Kilcullen and Joel Hirschhorn were met by AUSA Rucoba, who stated that the meeting was canceled and when Brian Kilcullen persisted on meeting with AUSA Thompson and the agents, he was told by AUSA Rucoba: "You don't get it. They won't step foot in the room with you!" Brian Kilcullen and counsel were confused at to why a criminal AUSA and federal agents seeking evidence on "false statements", "collusion" and "fraud" would not want to hear

20

about it!

111.    On April 3rd, 1998, AUSA Laurie Rucoba files a motion to permit AUSA Thompson to file a declaration in case 97-7027 CIV because of an on-going criminal investigation.

112.    On April 3rd, 1998, AUSA Terrence Thompson files a declaration **(Ex. #24 - pgs. 1-5)** with this court, under seal, in support of AUSA Rucoba's motion to stay civil proceedings (discovery), citing an on-going  criminal investigation.

113.    Declaration states he (AUSA Thompson) has been investigating Brian Kilcullen/SkyKnight and others, by means of a Grand Jury, for fraud, collusion and false statements in US Customs Auctions in Miami, Florida and request a stay of all civil proceedings until the criminal investigation is completed.

114.    AUSA Thompson states he is investigating fraud and collusion, which contradicts Consavage warrant, as fraud and collusion in the sale of N802ME indicates that property seized from Plaintiff was in the possession of EG&G Dynatrend, Inc./US Customs from 1991, contrary to seizure warrant, which states that "missing inventory" had never been seized.

115.    Thompson Declaration states that Brian Kilcullen/SkyKnight is still under investigation, even though SA Consavage states in deposition that at this point in time, everything pointed to John Dent and EG&G, not Plaintiff.

116.    A Grand Jury is used for civil purposes to avoid and dodge liability in civil litigation and offset culpability for EG&G et al.

117.    On April 14th, 1998, Stacy Bercun, counsel for EG&G Dynatrend, Inc. deposes John Roberts of Roberts Air South, mentioned earlier as an appraiser for the USCS.  Mr. Roberts provides notes and appraisal **(Ex. #3)** of N802ME to counsel for both SkyKnight and EG&G, which clearly shows the afore mentioned facts that US Customs and EG&G

21

were in possession of the complete set of "logbooks" and complete "avionics" which these cases (Ferguson) revolve around, from the original seizure in 1991.

118.    John Roberts, states, that he had to have had the full and complete logbooks for N802ME and no missing avionics, in order to have made this appraisal.

119.    On April 29th, 1998, counsel for Brian Kilcullen/SkyKnight sends to AUSA Terrence Thompson the date and time of John Roberts' deposition **(Ex. #25)** , referenced above, and the location of the transcript for his, Thompsons' attention.

120.    By this point in time, Brian Kilcullen/SkyKnight, once eligible for $700,000.00 line of credit from Cessna Finance Corp. (SkyKnight's primary financier) is unable to obtain loans for any amount.

121.    Counsel for EG&G, Neil Linden and Stacy Bercun and Counsel for the US Customs Service and United States of America, Laurie Rucoba, refuse to turn over any relevant and detailed discovery for N802ME or stipulate to the, now evident fact, that EG&G/US Customs were in possession of the "missing inventory" for N802ME all along.

122.    On June 9, 1998, Brian Kilcullen/SkyKnight counsel, Brian Bieber makes phone calls to Roy Butler Sr. and Patrick Holmes as to events and statements regarding their involvement in the N802ME matter, whereby, both Roy Butler Sr. and Patrick Holmes make false statements regarding same.

123.    SA Consavage makes numerous calls to Roy Butler Sr. and Patrick Holmes, but is never told about unlawful viewing or advance knowledge.

124.    On June 23rd, 1998, John Dent, with counsel Neil Linden and Stacy Bercun, is deposed in the SkyKnight vs. EG&G case, whereby he falsely states all the "removed avionics" were shown to viewers and that the boxes supplied to Brian Kilcullen/SkyKnight did not contain the logbooks, Brian Kilcullen turned over to SA

22

Consavage. His false statements contradict his previous statements to SA Consavage and facts uncovered in investigation, which verified that no removed avionics were shown to viewers and that he was in possession of the complete set of logbooks (8).

125.    John Dent's new position, with respect to missing radios, shows collusion with his superior, Jerry Hawkins and a clear conspiracy to obstruct justice, as their version of events are now both identical and fraudulent.

126.    Depositions in both cases show numerous "false statements" on the part of John Dent and others before the Grand Jury run by AUSA Thompson.

127.    On July 24th, 1998, counsel for EG&G, advises counsel for Plaintiff, that they are awaiting a redacted set of documents from AUSA Laurie Rucoba in response to Brian Kilcullen/SkyKnight's discovery request. **(Ex. #26)** A clear conflict of interest, as all parties (EG&G, US Customs, USA) are defendants.

128.    On July 31st, 1998, EG&G, through the US Customs Service Office of Chief Counsel and the US Attorneys Office, produces redacted and incomplete response to SkyKnight's discovery request.

129.    On September 20th, 1998, the Ferguson court granted a stay of all civil proceedings, pending the Government's criminal investigation.

130.    This court closed the civil case against EG&G by order on September 30th, 1998 citing amongst legal jargon that no contract existed between SkyKnight and EG&G and that Plaintiff could prove no set of facts to support cause of action.

131.    The next day, John Dent "left" the employ of EG&G for a position offering substantially less money!

132.    Brian Kilcullen/SkyKnight sends a letter to EG&G Dynatrend, Inc. and counsel, whereby Plaintiff advises all parties that the actions of their employees and management

23

are both reprehensible and criminal and that Plaintiff will continue to seek restitution for these egregious transgressions.

133.    On or about this time, Brian Kilcullen/SkyKnight, in a continuing investigation into this matter learns of the sale of N800BY and the appearance of it's logbooks the following day.  Upon traveling to Slidell, Louisiana and locating N800BY, Plaintiff is told that Dr. Provenza did in fact get the complete set of logbooks for N800BY.  Head mechanic for Northshore Aviation, admitted to Brian Kilcullen in front of witnesses, that he (Dr. Provenza) got a "special deal" in the auction.

134.    Records show N800BY is still registered to Rodney Matthew's company (PAS Equipment Co.) as of the filing of this complaint.  A violation of the Federal Aviation Regulations.

135.    At some point, Brian Kilcullen/SkyKnight executes a Freedom Of Information Act (FOIA) request, seeking information on seized aircraft held at the Miami Aviation Corporation facility for US Customs/EG&G Dynatrend, Inc.  US Customs advises that EG&G will require payment for research in order to comply with request.  Brian Kilcullen/SkyKnight pays per request.

136.    On August 16th, 1999, AUSA Terrence Thompson closes his criminal investigation, with no arrests or prosecution, not even for false statements and in spite of his previous statements that he had evidence of fraud and collusion.**(Ex. #27)**

137.    On December 20th, 1999, US Customs and EG&G responds to Brian Kilcullen/SkyKnight's FOIA request by supplying an unresponsive and fraudulent report. (Aircraft known to be or known to have been in US Customs/EG&G custody and control are not listed) Plaintiff's counsel advises US Customs of this FOIA violation.

138.    On March 15th, 2000, the stay was lifted in response to Brian Kilcullen/SkyKnight's

motion to lift stay.

139.     On March 20th 2000, the USCS advises Brian Kilcullen/SkyKnight's counsel that EG&G has been advised to research their files again to comply with the FOIA request. As no response is forthcoming, Brian Kilcullen/SkyKnight's FOIA request response, by EG&G and US Customs, is both fraudulent and unresponsive.

140.     On April 25th, 2000, counsel for Brian Kilcullen/SkyKnight files a motion to compel the USA and USCS to comply with discovery as none has been received.

141.     On June 26th, 2000, Brian Kilcullen/SkyKnight sends a letter to Roy Butler Sr. stating SkyKnight's position with regard to N802ME and the subsequent investigation which Mr. Butler instigated.  A request is made for a full and truthful statement as to events, knowledge and cognition of fraud in the sale of N802ME, by the Butler's and Mr. Holmes, but to date, no response is forthcoming.

142.     On July 6th, 2000, SA Mike Consavage retired, states in deposition, that the seizure against Brian Kilcullen/SkyKnight was made in "error" and that he believed that John Dent had made "false statements" with regard to the "missing avionics" and "missing logbooks".  Mr. Consavage further states that his investigation showed that these missing items were in the custody and control of John Dent/EG&G since seizure in 1991, and that the "missing logbooks and avionics" were not shown to the viewers.

143.     On August 25th, 2000, Jerry Hawkins, district manager for EG&G, declares under penalty of perjury, based on his personal knowledge of the facts, that N802ME was advertised "with avionics missing".  Whereas, on February 6, 1998, he said that the boxes of inventory for N802ME (# 105), contained removed avionics.**(Ex. #28 pgs. 1-4)**

144.     On August 28th, 2000, AUSA Rucoba files "Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgement" utilizing Jerry Hawkins Declaration above.

**(Ex. #29 - pgs. 1-12)** Plaintiff's disadvantage (absence of discovery) at that time is obvious. What is also obvious is the care and exactness, Ms. Rucoba steps around the disputed facts. Ms. Rucoba uses perjured testimony of Mr. Hawkins declaration and false testimony of Clay Gamber (president for Miami Aviation Corp.) stating that Plaintiff had an opportunity to view N802ME and it's inventory prior to auction **(Ex. #29, pg. 4)**, knowing full well that Brian Kilcullen/SkyKnight can't prove otherwise without either discovery and/or Mr. Consavage's testimony. Testimony, she so clearly points out, is inadmissable.

145.    It is stated that by Plaintiff signing the Bidder Registration Form, he (Brian Kilcullen/SkyKnight) is bidding on the aircraft with knowledge of the risks involved, with missing equipment and logbooks. No where in the registration or bidding process is there any mention of risk of fraud, collusion and conspiracy on behalf of EG&G employees and others. No bidder can defend themselves from a criminal conspiracy of which they are not a party and certainly would not subject themselves to the risk, if suspected.

146.    Ms. Rucoba states that the US Government takes the position of EG&G, with regard to the fraudulently misrepresented inventory, instead that of their own Customs agent, who finds EG&G responsible for the US Government losing upwards of $250,000.00.

147.    Ms. Rucoba further states that the fraudulent advertising and misrepresentations surrounding the sale of N802ME are not material **(Ex. #29, pg. 9)** , when it is exactly these criminal acts which both these criminal and civil cases arise from.

148.    In all court filings by the government and EG&G, these missing logbooks and avionics, of which this matter revolves about, appear and disappear at the whim of the perpetrators (government and EG&G personnel) depending on whose position is liable,

26

at that time.

149.	Ms. Rucoba further states that they (US Customs) had probable cause to seize SkyKnight property and that it is the court's determination whether or not a warrant is valid and that no matter what the reason, SkyKnight cites no facts to support it's cause of action.  A clear abuse of her position and office, as discovery violations have prevented both SkyKnight and counsel from fully and fairly pleading its case, which is exactly the position Ms. Rucoba uses to her advantage.

150.	Ms. Rucoba deliberately manipulates these "irrelevant facts" to suit her position.  A position of covering up a criminal conspiracy, unwarranted seizure and a conspiracy to deprive Plaintiff Civil Rights afforded under the Constitution of the United States.

151.	Defendants within the Department of Justice, the Department of Treasury and EG&G clearly act in concert in order to sidestep the obvious contradiction of positions.

152.	Plaintiff and counsel are clearly at a disadvantage and prevented from fully and fairly presenting their case, as discovery and ethics violations are rampant.

153.	This court granted USA/US Customs sovereign immunity for its part on September 29th, 2000, summarily closing the case.

154.	Three years after attending a US Customs Seized Asset Auction, Brian Kilcullen/SkyKnight has depleted all savings, operating capitol and abilities by which to make money and retain counsel.  Having violated no laws and cooperated fully and truthfully with the US Customs Service and US Attorneys Office, Brian Kilcullen/SkyKnight has suffered both financial disaster and deprivation of Civil Rights under the Constitution of the United States by defendants overt and covert actions and inactions of fraud and conspiracy.

155.	Both counsel for USA/USCS and EG&G file motions for "Tax for Costs" (unlawful

27

debt) against Brian Kilcullen/SkyKnight and are successful in getting court orders for Costs. Costs attributed to civil litigation brought about by their (EG&G, USA & USCS) employees criminal actions. Criminal actions known to them at that time.

156.    Brian Kilcullen/SkyKnight is afforded no means by which to seek administrative or judicial relief/redress for tortious interference and the unlawful seizure of legally obtained property. The loss of savings, operating capitol and borrowing abilities has destroyed Plaintiff's business, peace of mind and family well-being.

157.    On October 12th, 2001 the court ordered the unsealing of AUSA Terrence Thompson's declaration filed under seal in 1998. **(Ex. #24)** AUSA Thompsons's declaration states that in April of 1998, he is investigating Brian Kilcullen/SkyKnight in spite of the fact that the lead US Customs investigator states that everything points to John Dent/EG&G and the civil division of the US Attorneys Office has returned Brian Kilcullen/SkyKnight's property two months earlier.

158.    Brian Kilcullen obtains a transcript of the Rodney Matthews trial, from 1993, where John Dent evaluates the subject Merlin aircraft at $750,000.00 and admits to being in possession of the logbooks in the presence of AUSA Thompson.

159.    It is only upon reviewing AUSA Thompson's declaration, Rodney Matthews' trial transcript (# 19) and previous court filings and affidavits that Brian Kilcullen becomes cognizant of the extent to which the extrinsic fraud exists and the ability and willingness of all parties to make false statements and representations, knowing that they will not be prosecuted by AUSA Thompson. AUSA Thompsons's actions and inactions shows participation in and perpetuation of a Corrupt and Racketeering Influenced Organization as both intrinsic fraud of N802ME and subsequent extrinsic fraud could not exist without his participation. Even a cursory examination of the evidence shows not only a clear

conspiracy to defraud the United States Government, but enough evidence to prosecute and win a conviction.

160.     On October 25th, 2001, Joel Hirschhorn, upon being supplied a copy of AUSA Thompson's declaration and Matthew's trial transcript, states in a letter the obvious lack of candor with the court on the part of the US Government and that the seizure, investigation and civil defense were all conducted in Bad Faith. **(Ex. #30 - pg. 1)**

161.     On November 16th, 2001 upon Brian Kilcullen supplying a written statement of all frauds, both intrinsic and extrinsic, regarding the sale of N802ME and the subsequent "cover-up" to SA Brian Dennison of the Department of Treasury Inspector Generals Office of Criminal Investigations, an "active" investigation was opened.

162.     On December 13th, 2001, Joel Hirschhorn, having received no reply from Terrence Thompson, sends another letter asking Mr. Thompson to reply. **(Ex. #30 - pg. 2)**

163.     On December 24th, 2001, Brian Kilcullen/SkyKnight, having exhausted all available funds, savings and reserves on legal and investigative costs associated with this matter, files a Pro Se motion with the court (Ferguson) for a Rule 60(b) Relief from Judgement, Sanctions and Opening of Relevant Grand Jury Testimony in the above referenced cases .

164.     On December 26th, 2001, Joel Hirschhorn receives a call from AUSA Thompson, whereby Thompson states that he is aware that John Dent may not have been truthful and that the investigation into the matter, albeit closed as far as Brian Kilcullen/SkyKnight is concerned, is still open as to others.  Even though in court filings, AUSA Rucoba states that the investigation is closed.**(Ex. #27)**

165.     Brian Kilcullen/SkyKnight, having sent a copy of the Rule 60(b) motion to US Attorney Guy Lewis, sends a letter inquiring as to whether or not an active investigation into the

fraudulent sales of Customs seized assets is taking place and requesting that Brian Kilcullen, a material witness and an expert in the aviation field, having the most credibility be debriefed by the US Attorneys Office, because to date, no such debriefing has ever taken place.**(Ex. #31 - pg. 1,2)**

166.    No acknowledgment is ever received from US Attorney Guy Lewis or his subordinates, but on March 5th, 2002, a request for payment of $918.90 (unlawful debt) awarded the US Government for their defense of Brian Kilcullen/SkyKnight's lawsuit is received.

167.    Brian Kilcullen/SkyKnight sends another letter to US Attorney Guy Lewis, whereby Brian Kilcullen explains that SkyKnight has been operating at a deficit since the purchase of N802ME and that it is criminal of the US Attorneys Office to demand payment from the wronged party in a civil case arising from a criminal matter where the US Government refuses to prosecute individuals and contractors for making false statements, fraudulent representations and defrauding the United States of America. Mr. Guy Lewis is advised that he is responsible for those attorneys whom sign in his name and that unless the US Government takes action to correct these matters that Brian Kilcullen/SkyKnight will take legal action against all those involved.
**(Ex. #31 - pg. 3,4)**

168.    Even though, Special Agent Brian Dennison of the Department of Treasury, has asked a few questions regarding the case supplied to him, no real debriefing is forthcoming and no substantive steps are taken to prosecute those known to have defrauded the United States.  When advised that they (Dept. of Treasury agents) are taking a precarious position by covering for those known to have committed Federal Offenses, he states, indicating to SkyKnight's Rule 60(b) motion supplied to him, that he does not want to see his name on that type of paperwork.

169.   Plaintiff is led to believe that SA Dennison has been warned, by the US Attorneys Office, to conduct a cursory investigation, for show purposes only, thereby perpetuating both the criminal enterprise and the ensuing cover-up.

170.   5 years since this matter began, no persons involved with the false statements and frauds of N802ME have been arrested, no corrections or admissions, as is required by law, are made by the attorneys involved and no action on the part of the US Government is taken to seek restitution from EG&G for the losses in the sale of N802ME, or the numerous other cases which Plaintiff tried to bring to their (US Attorneys Office) attention.

171.   Brian Kilcullen/SkyKnight, having been made the scapegoat for a criminal enterprise within the Asset Forfeiture Program of the Department of Justice and the Department of Treasury, has been and is still deprived due process by those; whom have perpetrated a fraud against the US Government; those whom executed an unwarranted seizure; and those whom are colluding in a criminal conspiracy to cover-up all of the above.

172.   This criminal symbiotic enterprise, by individuals within the US Attorneys Office, US Customs Service and their contractors (EG&G), has been and is still able to disrupt interstate commerce under the auspices of "Federal Law Enforcement" and the "Department of Justice".

173.   Irrespective of whether seizures are warranted or unwarranted, this corrupt organization (RICO) has been and is still able to reap the benefits of seized assets, through multi-million dollar contracts, political perks and fraudulent sales.

174.   The ability and willingness of individuals within the Department of Treasury and the Department of Justice to execute unwarranted and unlawful seizures of private property, shield and protect those known to be defrauding the United States of America and

31

conspire to and in fact deprive citizens of the United States their Civil Rights shows a clear and unequivocal Racketeering Influenced Corrupt Organization. (RICO)

175. This ongoing criminal enterprise has and continues to deprive citizens of their private property and Civil Rights, circumvents the laws of the United States and disrupts interstate commerce by means of a parasitic entity, which manipulates the laws, they are sworn to uphold, to facilitate their own criminal endeavors.

## COUNT I - NEGLIGENT MISREPRESENTATION

176. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees were bound by law and their contract with the United States Customs Service - Department of Treasury to properly and fully disclose all inventory and items for sale to prospective buyers, pursuant to the respective court order.

177. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees owed Plaintiff a duty to truthfully and accurately represent N802ME and its inventory for sale at the showings.

178. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees, were aware and should have been aware that its statements and representations were false when they made them to Plaintiff.

179. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees intended Plaintifsf to rely on its false statements and representations.

180.   Plaintiffs relied on Defendants false statements and representations in their decision to attend the auction.

181.   Plaintiffs relied on Defendants false statements and representations in their decision to participate and ultimately purchase N802ME and its inventory.

182.   Plaintiffs relied on and believed Defendants false statements and representations that they were the rightful owner of N802ME and its inventory, regardless of whether or not displayed.

183.   Plaintiffs relied on and believed Defendants false statements and representations that they were the rightful owner of N802ME and its inventory, when questioned by US Customs Internal Affairs.

184.   Plaintiffs' reliance on and belief in Defendants false statements and representations subjected them (Brian Kilcullen/SkyKnight) to an unnecessary and damaging federal investigation and subsequent seizure.

185.   Plaintiffs relied on negligent misrepresentations of Defendants to their detriment.

186.   Plaintiffs have suffered and continue to suffer damages as a result of Defendants false statements and representations.

187.   Defendants statements and fraudulent representations were the legal and proximate cause of Plaintiffs' damages.

188.   Defendants actions and misrepresentations were an intentional failure to perform its duties in reckless disregard of the consequences and in callous indifference to the life, liberty and property of Plaintiffs.

189.   Plaintiffs' loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income.  Damages continue to accrue and compound daily from loss of revenues and

interest thereof.

190. Plaintiffs have suffered and continue to suffer damages as a proximate result of Defendant's fraudulent conduct in an amount in excess of $6,000,000.00.

191. Wherefor, Plaintiffs pray for a compensatory and punitive damages award against Defendants in excess of twenty four million ($24,000,000.00) plus attorneys fees and costs of this and other actions with such further relief as this Court deems just, proper and equitable.

## COUNT II - FRAUDULENT MISREPRESENTATION

192. Plaintiffs reassert and reallege the allegations contained in Paragraphs 1 through 170 of this Complaint and further state:

193. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees were bound by law and their contract with the United States Customs Service - Department of Treasury to truthfully and accurately disclose all inventory and items for sale to prospective buyers, pursuant to the respective court order.

194. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees, were aware and should have been aware that its statements and representations were false when they made them to Plaintiff.

195. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees intentionally made false statements and representations to Plaintiff as to the existence and presence of missing avionics and logbooks for N802ME.

34

196.    Defendants knew at that time, that said statements and representations, that N802ME was being sold without certain avionics and logbooks, were false and made recklessly with regard to its truth or falsity.

197.    Defendants intended Plaintiffs to rely on its false statements and representations.

198.    Plaintiffs relied on Defendants false statements and representations in their decision to attend the auction.

199.    Plaintiffs relied on Defendants false statements and representations in their decision to participate and ultimately purchase N802ME and its inventory.

200.    Plaintiffs relied on and believed Defendants false statements and representations that they were the rightful owner of N802ME and its inventory, regardless of whether or not displayed.

201.    Plaintiffs relied on and believed Defendants false statements and representations that they were the rightful owner of N802ME and its inventory, when questioned by US Customs Internal Affairs.

202.    Plaintiffs' reliance on and belief in Defendants false statements and representations subjected them (Brian Kilcullen/SkyKnight) to an unnecessary and damaging federal investigation and subsequent seizure.

203.    Plaintiffs relied on fraudulent misrepresentations of Defendants to their detriment.

204.    Defendants statements and fraudulent representations were the legal and proximate cause of Plaintiffs' damages.

205.    Plaintiff has suffered and continues to suffer damages as a result of Defendants false statements and representations.

206.    Defendants actions and misrepresentations were an intentional failure to perform its duties in reckless disregard of the consequences and in callous indifference to the life,

liberty and property of Plaintiff.

207.    Plaintiffs' loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income.  Damages continue to accrue and compound daily from loss of revenues and interest thereof.

208.    Plaintiffs have suffered and continue to suffer damages as a proximate result of Defendant's fraudulent conduct in an amount in excess of $6,000,000.00.

209.    Wherefor, Plaintiffs pray for a compensatory and punitive damages award against Defendants in excess of twenty four million ($24,000,000.00) plus attorneys fees and costs of this and other actions with such further relief as this Court deems just, proper and equitable.

## COUNT III - FRAUD IN THE INDUCEMENT

210.    Plaintiffs reassert and reallege the allegations contained in Paragraphs 1 through 170 of this Complaint and further state:

211.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees were cognizant of fraud or should have been in the sale of N802ME.

212.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees foregoing statements and representations were false and misleading.

213.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees made statements and representations knowing that they were false and misleading, with the

36

intent that Plaintiffs would rely thereon.

214.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees omission of material facts including, but not limited to the true contents of the items in Defendants care, custody, control and possession, which were ultimately delivered to Plaintiffs, upon it being the successful bidder at the auction, rendered Defendants statements and representations to Plaintiffs false and misleading.

215.    Defendants engaged in a course of conduct and pattern of behavior which fraudulently induced, misled and deceived the Plaintiffs.

216.    Defendants, EG&G Inc., EG&G Technical Services Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees knowingly and intentionally made certain false and misleading statements, representations and omissions designed to, and which did in fact induce Plaintiffs into signing the Aircraft Purchase Agreement.

217.    Plaintiffs relied to their detriment on such statements, representations and omissions not knowing they were false and misleading.  Plaintiffs' reliance was reasonable under the circumstances.

218.    Plaintiffs' reasonable belief and reliance on Defendants statements and representations subject Plaintiff to unwarranted investigation and seizure of Brian Kilcullen/SkyKnight business and property.

219.    Defendants statements and fraudulent representations were the legal and proximate cause of Plaintiffs damages.

220.    Plaintiffs loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income.

Damages continue to accrue and compound daily from loss of revenues and interest thereof.

221.    Plaintiffs have suffered and continue to suffer damages as a proximate result of Defendant's fraudulent conduct in an amount in excess of $6,000,000.00.

222.    Wherefor, Plaintiffs pray for a compensatory and punitive damages award against Defendants in excess of twenty four million ($24,000,000.00) plus attorneys fees and costs of this and other actions with such further relief as this Court deems just, proper and equitable.


## COUNT IV - UNLAWFUL SEIZURE

223.    Plaintiffs reassert and reallege the allegations contained in Paragraphs 1 through 170 of this Complaint and further state:

224.    Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, acting separately and collectively, conspired to deprive Brian Kilcullen/SkyKnight of N802ME and its inventory.

225.    Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, author, sign and implement a false affidavit to seize Plaintiffs legally obtained property.

226.    Defendants seized all the log-books and avionics equipment relating to N802ME, without probable cause and without factual basis.

227.    Defendants seized all the log-books and avionics equipment relating to N802ME pursuant to a former order for forfeiture (Rodney Matthews) as substitute assets, contrary to evidenced facts in advertising and said affidavit which shows/states "older engine log-books" and avionics which had already been duly seized, inventoried,

38

forfeited and sold to Plaintiffs.

228.     Defendants have in effect seized property described in the advertisements by EG&G Dynatrend and represented to Plaintiffs at the showings/auction as part of the transaction.

229.     Defendants effected a seizure of Plaintiffs legally obtained property, contrary to facts, details and evidence which a reasonable person should, could and would have investigated prior to.

230.     Defendants effected a seizure of Plaintiffs legally obtained property, contrary to the readily available facts at their disposal.

231.     Defendants effected an untruthful and duplicitous warrant in order to deprive Plaintiff of N802ME and its inventory, in violation of Plaintiffs Fourth and Fifth Amendment Rights.

232.     Defendants, individually and collectively, deprived Plaintiff due process by executing a seizure warrant not based on the facts.

233.     Upon learning (Day of seizure) that property seized from Plaintiff was listed on Customs documentation from original seizure (Rodney Matthews), Defendants refused to return legally obtained property.

234.     Defendants were aware that Plaintiff, in the ordinary course of business, was under contract to a third party, for the sale of N802ME.

235.     Defendant's retention of the log-books and avionics (N802ME) did and continued to prevent Plaintiff from selling the aircraft to a good faith buyer in the ordinary course of business, violating Plaintiff's Constitutional rights.

236.     Defendants actions have wrongfully deprived Plaintiff of its property without due process of law and in violation of it rights under the Fourth and Fifth Amendments to the

39

United States Constitution.

237.    Defendants' continued retention of the seized property was wrongful, unlawful and in callous disregard of Plaintiffs rights under the Fourth and Fifth Amendments to the United States Constitution.

238.    Defendants actions were the legal and proximate cause of Plaintiff's damages.

239.    Plaintiffs' loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income.  Damages continue to accrue and compound daily from loss of revenues and interest thereof.

240.    Plaintiffs have suffered and continue to suffer damages as a proximate result of Defendants conduct in an amount in excess of $6,000,000.00.

241.    Wherefor, Plaintiffs pray for a compensatory and punitive damages award against Defendants in excess of twenty four million ($24,000,000.00) plus attorneys fees and costs of this and other actions with such further relief as this Court deems just, proper and equitable.


## COUNT V - TORTIOUS INTERFERENCE WITH A BUSINESS

242.    Plaintiffs reassert and reallege the allegations contained in Paragraphs 1 through 170 of this Complaint and further state:

243.    Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes were cognizant and had material knowledge of fraud within the auction process of N802ME.

244.    Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes participated in, by registering and bidding in, an auction known to them to be conducted under fraudulent circumstances.

40

245.   Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes were aware that Plaintiff, in the ordinary course of business, was in the process of selling N802ME.

246.   Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes intentionally and maliciously interfered with the normal course of business of Brian Kilcullen/SkyKnight by writing and sending, by US Mail, an incomplete and misleading letter, to US Customs Internal Affairs, alleging "possible fraud" in the sale of N802ME.

247.   Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes intent was to tortiously interfere with Brian Kilcullen/SkyKnight's business.

248.   Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes should have known and did in fact become aware that this letter, complaining of possible fraud, precipitated a criminal investigation, which resulted in an investigation of Plaintiffs and seizure of Plaintiffs' property.

249.   Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes conspired to and did in fact withhold details and facts of criminal activity within the sale of N802ME, knowing and insuring that Brian Kilcullen/SkyKnight would become the target of criminal investigation.

250.   Defendants, Roy Butler Sr., Roy Butler Jr. and Patrick Holmes actions and inactions, tortiously and intentionally interfered with Plaintiffs business with careless and malicious disregard for Plaintiff's business.

251.   Plaintiffs suffer the loss of N802ME (operating capitol), loss of business due to loss of operating capitol and time spent seeking return of legally obtained property, loss of savings and future business by being made the scapegoat for a fraud within the Asset Forfeiture Program of the US Customs Service.

.................................................

41

252.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees unlawfully and maliciously interfered with the normal course of business of Brian Kilcullen/SkyKnight by denying Plaintiffs truthful representations of inventory that accompanied N802ME.

253.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees unlawfully and maliciously interfered with the normal course of business of Brian Kilcullen/SkyKnight by making false and malicious statements and representations which induced Plaintiff into purchasing N802ME.

254.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees were cognizant of a pending sale of N802ME by Plaintiff, whom had called Jerry Hawkins, supervisor, for assistance with forfeiture documentation to support upcoming sale.

255.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees unlawfully and maliciously made false statements and representations to Special Agents of the US Customs Internal Affairs division investigating sale of N802ME.

256.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees knew at that time that said false statements and representations would subject Plaintiff to unwarranted investigation.

257.    Defendants had knowledge, responsibility and duty to convey true and correct facts to authorities investigating the sale of N802ME.

42

258.    Upon Defendants learning of US Customs seizure of Plaintiffs' legally obtained property, no actions were taken to correct their (EG&G et al) position which would have brought Plaintiffs relief.

259.    Defendants continued inaction to inform investigators of fraudulent statements and representations subjected Plaintiffs to unwarranted and egregious damages.

260.    Defendants agents and employees testimony before Grand Jury, convened in this matter, was both false and intentionally misleading.

261.    Plaintiffs suffer the loss of N802ME (operating capitol), loss of business due to loss of operating capitol and time spent seeking return of legally obtained property, loss of savings and future business by being made the scapegoat for their employees fraud within the Asset Forfeiture Program of the US Customs Service.

262.    Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees actions and inactions tortiously and intentionally interfered with Plaintiff's business with careless and malicious disregard for Plaintiff's business.

................................................

263.    Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer were alerted to the pending sale of N802ME by Plaintiff, whom had sought assistance with forfeiture documentation in the pending sale of N802ME.

264.    Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer improperly and unlawfully interfered with the normal course of business of Brian Kilcullen/SkyKnight by effecting an unwarranted and unlawful seizure of Plaintiffs legally obtained property.

265.   Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer seize property pursuant to a warrant for substitute assets having knowledge that said assets had already been duly seized, inventoried, forfeited and sold to Plaintiffs at auction.

266.   Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer conduct an investigation, convene a Grand Jury to investigate Brian Kilcullen/SkyKnight for fraud, collusion and false statements when facts did not support same.

267.   Defendants tortious interference prevented Plaintiff from performing its contractual obligations to the buyer of N802ME.

268.   Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer intentional, reckless and malicious actions and behavior cause both present and future damages to Brian Kilcullen/SkyKnight's credit and borrowing abilities by alerting third parties (Insured Aircraft Title) to seizure and investigation.

..................................................

269.   Plaintiffs are unable to secure any financing for future business from this event forward, literally negating a credit rating which took decades to develop.

270.   All Defendants interference was the legal and proximate cause of Plaintiff's damages.

271.   Plaintiffs' loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income.  Damages continue to accrue and compound daily from loss of revenues and interest thereof.

272.   Plaintiffs have suffered and continues to suffer damages as a proximate result of

Defendants conduct in an amount in excess of $6,000,000.00.

273.   Wherefore, Plaintiffs pray for a compensatory and punitive damages award against all Defendants in excess of twenty four million ($24,000,000.00), plus attorney's fees and costs of this and previous actions with such further relief as this Court deems just, proper and equitable, reserving the right to seek an award of punitive damages.

## COUNT VI - FRAUDULENT NON-DISCLOSURE AND FRAUDULENT CONCEALMENT

274.   Plaintiffs reassert and reallege the allegations contained in Paragraphs 1 through 170 of this Complaint and further state:

275.   Defendants, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees, were subject to the Federal Rules of Civil Procedure for discovery in the afore mentioned litigation. (CIV 97-7027, CIV 97-3765 - Ferguson Court).

276.   Defendants, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees, were subpoenaed, as per the Fed. Rules of Civ. Proc., for discovery, with such specificity as required by law, which Defendants withheld and/or refused to proffer.

277.   Defendants, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers

and employees were bound by law to turn over all relevant and pertinent discovery, regardless of culpability or liability.

278. Defendants, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees, contrary to the Fed. Rules of Civ. Proc., refused to proffer a privilege log, as is required by law.

279. Defendants, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees, by omission, fraudulent court filings, refusal to stipulate and refusal to correct positions, as required by law, misrepresented to the Ferguson Court, material facts pertinent to the subject matter before the court.

280. Defendants, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees did know and ought to have known that their omissions, court filings and refusals to stipulate or correct positions, were misleading and in furtherance of an extrinsic fraud.

281. Defendants, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent and other agents, representatives, officers and employees actions and inactions, statements and motions were intended to and did in fact conceal from Brian Kilcullen/SkyKnight and counsel, evidence of intrinsic fraud

46

and an ongoing criminal conspiracy.

282.    Defendants actions and inactions prevented Plaintiff, Brian Kilcullen/SkyKnight from fully and fairly presenting their case before the Ferguson court.

283.    Defendants actions and inactions were the proximate cause for summary dismissals in the Ferguson Court.

284.    Defendants interference was the legal and proximate cause of Plaintiffs' continuing damages.

285.    Plaintiffs' loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income.  Damages continue to accrue and compound daily from loss of revenues and interest thereof.

286.    Plaintiffs have suffered and continue to suffer damages as a proximate result of Defendant's conduct in an amount in excess of $6,000,000.00.

287.    Wherefore, Plaintiffs pray for a compensatory and punitive damages award against Defendants in excess of twenty four million ($24,000,000.00), plus attorney's fees and costs of this and previous actions with such further relief as this Court deems just, proper and equitable.

## COUNT VII - CIVIL CONSPIRACY TO COVER-UP FRAUD, UNWARRANTED SEIZURE, PERJURY AND OBSTRUCTION OF JUSTICE

288.    Plaintiffs reassert and reallege the allegations contained in Paragraphs 1 through 170 of this Complaint and further state:

289.    Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical

47

Services, Inc., George Melton, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes acting seperately and collectively conspired to and did in fact, frame Brian Kilcullen/SkyKnight for fraudulent representations and acts in the sale of N802ME.

290.    Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes and other agents, representatives, officers and employees, separately and collectively engaged in a systematic pattern to deprive Plaintiffs due process by means of their actions, inactions, false statements, fraudulent representations and fraudulent non-disclosure with regard to the details of the intrinsic fraud and resulting civil complaints.

291.    Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes and other agents, representatives, officers and employees, separately and collectively engaged in a systematic pattern to deprive Plaintiffs due process by means of an extrinsic fraud (cover-up).

292.    Defendants, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage and Michael Palmer, acting separately and collectively conspired to and did in fact deprive Brian Kilcullen/SkyKnight of due process by conspiring to, and in fact, depriving Plaintiffs of legally obtained property, when evidence did not support same, contrary to Federal Rules of Criminal Procedure.

293.    Defendants, Terrence Thompson and Laurie Rucoba, acting separately and collectively conspired to and did in fact deprive Brian Kilcullen/SkyKnight of due process

48

by filing court documents designed to cause undue delay and cost to Plaintiff, contrary to Federal Rules of Civil Procedure.

294. Defendants, Terrence Thompson and Laurie Rucoba, acting individually and collectively conspired to and did in fact deprive Brian Kilcullen/SkyKnight of due process by refusing to prosecute those known to be making false statements and obstructing justice.

295. Defendants, Terrence Thompson and Laurie Rucoba, acting individually and collectively conspired to and did in fact deprive Brian Kilcullen/SkyKnight of due process by refusing to correct their positions in court filings when to not do so would mean an injustice in another proceeding, contrary to the Federal Rules of Civil Procedure.

296. Defendant, Guy Lewis, upon being duly served with;(1) a copy of the "motion" before the Ferguson Court; (2) Plaintiffs request for acknowledgment of criminal investigation and interview; (3) a letter stating Plaintiffs intent to proceed with civil action if they (the government) did not correct their criminal and malicious positions, ignored Plaintiffs communications, thereby condoning and perpetuating the wrongs and criminal actions of those he is responsible for.

297. Defendant, Guy Lewis, was responsible for and in whose name Assistant United States Attorneys Terrance Thompson and Laurie Rucoba signed, refused to correct their malicious and illicit behavior, exacerbating and unduly promoting the civil conspiracy.

298. Defendants actions and inactions were the legal and proximate cause of Plaintiffs damages.

299. Defendants actions and inactions remain the legal and proximate cause of Plaintiffs continuing and escalating damages.

49

300. Plaintiffs loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income. Damages continue to accrue and compound daily from loss of revenues and interest thereof.

301. Plaintiffs have suffered and continue to suffer damages as a proximate result of Defendant's conduct in an amount in excess of $6,000,000.00.

302. Wherefor, Plaintiffs pray for a compensatory and punitive damages award against Defendants in excess of eighteen million ($18,000,000.00) plus attorneys fees and costs of this and other actions with such further relief as this Court deems just, proper and equitable.

## COUNT VIII - INFLICTION OF EMOTIONAL DISTRESS

303. Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 170 of this Complaint and further states:

304. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes and other agents, representatives, officers and employees, individually and collectively, illegally and maliciously placed liability for fraud and false statements in the sale of N802ME with Plaintiff.

305. Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes and other agents, representatives, officers and employees, individually and collectively, knew that Plaintiff would bear the responsibility for their crimes and violations, by their actions, inactions and false statements.

50

306.     Defendants, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes knew at the time and subsequently that their actions, inactions and fraudulent non-disclosure, had and continues to, place a extreme emotional burden on Plaintiff.

307.     Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer did know and now know that EG&G et al, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes and others were defrauding the United States in the sale of N802ME.

308.     Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer did know and now know that EG&G et al, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr., Patrick Holmes and others made false statements, obstructed justice and colluded to cover their criminal actions.

309.     Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer knew at the time and subsequently that their actions, inactions and fraudulent non-disclosure would place liability and burden for fraud and false statements in the sale of N802ME with Plaintiff.

310.     Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer knew at the time and subsequently that their actions, inactions and fraudulent non-disclosure, had and continues to, place a extreme emotional burden on Plaintiff.

311.     Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, EG&G Inc., EG&G Technical Services, Inc., George Melton, Jerry Hawkins, John Dent, Roy Butler Sr., Roy Butler Jr.,

51

Patrick Holmes and other agents, representatives, officers and employees individually and collectively, acted with callous, reckless and malicious disregard for the emotional distress caused Plaintiff.

312. Plaintiff, being made the scapegoat for a scheme to defraud the United States Customs Service; subject to harmful and stressful criminal investigation; denied redress/restitution by civil conspiracy (fraudulent non-disclosure & false statements); loss of business; loss of savings; loss of family well-being, is caused extreme and continuous emotional distress.

313. Plaintiff severe emotional distress is directly and unequivocally the proximate result of Defendants illicit, reckless and malicious behavior.

314. Wherefor, Plaintiff prays for a punitive damages award against Defendants in excess of thirty million ($30,000,000.00) plus attorneys fees and costs of this and other actions with such further relief as this Court deems just, proper and equitable.

## COUNT IX - OPERATING A CRIMINAL ENTERPRISE (RICO)

315. Plaintiffs reassert and reallege the allegations contained in Paragraphs 1 through 170 of this Complaint and further state:

316. Defendants, Guy Lewis, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage and Michael Palmer, while acting within the scope of their employment as United States Attorney, Assistant United States Attorney and Special Agents for the United States Customs Service effected both warranted and unwarranted seizures of properties pursuant to the Seizure and Forfeiture laws of the United States of America. (ie. Rodney Matthews warrants & SkyKnight warrant)

317. Defendants, EG&G, Inc. and EG&G Technical Services, Inc. have been and are now,

52

under contract with the Department of Treasury, United States Customs Service to maintain, secure, display and sell seized assets provided by the United States Customs Service.

318. Defendants, Jerry Hawkins, John Dent and others known and unknown, in performance of their duties for EG&G Dynatrend, Inc. fraudulently misrepresented and criminally withheld inventory for N802ME, N800BY and other seized assets in their control and custody.

319. Defendants, Jerry Hawkins, John Dent and others known and unknown, in performance of their duties for EG&G Dynatrend, Inc. made false statements to investigators, colluded and conspired to obstruct justice, committed perjury before a Grand Jury and fraudulently concealed facts and evidence of inventory for N802ME, N800BY and other seized assets in their control and custody.

320. Defendants, Guy Lewis, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage and Michael Palmer, while acting within the scope of their employment as United States Attorney, Assistant United States Attorney and Special Agents for the United States Customs Service used their respective positions to place blame for fraud, collusion and false statements in the sale of N802ME with Plaintiff, without factual basis.

321. Defendants, Guy Lewis, Terrence Thompson, Howard Weintraub, John Devaney, Michael Consavage and Michael Palmer, while acting within the scope of their employment as United States Attorney, Assistant United States Attorney and Special Agents for the United States Customs Service used their respective positions to shield and protect those known to be defrauding the United States of America by refusing to investigate and prosecute those responsible, in spite of extensive evidence known to

them, at that time.

322.   Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage and Michael Palmer, while acting within the scope of their employment as United States Attorney, Assistant United States Attorneys and Special Agents for the United States Customs Service conspired to and did in fact deprive Plaintiff of his Civil Rights provided for under the Constitution of the United States, by fraudulently concealing evidence and facts of intrinsic fraud in the sale of N802ME.

323.   Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage and Michael Palmer, George Melton, Jerry Hawkins, John Dent and EG&G et al, while acting within the scope of their employment as United States Attorney, Assistant United States Attorneys, Special Agents for the United States Customs Service and contractors, conspired to and did in fact obstruct law enforcement with the intent to facilitate an illegal business.

324.   Defendants, EG&G, Inc. and EG&G Technical Services, Inc. have been and are now cognizant of fraud within the Asset Forfeiture Program by their employees.

325.   Defendants, EG&G, Inc. and EG&G Technical Services, Inc. have illegally and fraudulently concealed evidence and facts of fraud in the sale of N802ME, N800BY and other assets from criminal investigators and Plaintiff.

326.   Defendants, EG&G et al, George Melton, Jerry Hawkins, John Dent, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, and others known and unknown, through contractual agreements between the US Department of Treasury/US Customs Service, allowed individuals and entities known to them to be defrauding the United States of America, to have custody,

care and control over seized assets provided to them.

327. Defendants, EG&G et al, George Melton, Jerry Hawkins, John Dent, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, and others known and unknown, allowed individuals and entities known to them to be defrauding the United States of America, to fraudulently misrepresent and fraudulently withhold inventory of seized assets provided under contract.

328. Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, George Melton and EG&G et al have permitted criminal fraud in the sales of seized assets in their control and custody.

329. Defendants, Guy Lewis, Terrence Thompson, Laurie Rucoba, Howard Weintraub, John Devaney, Michael Consavage, Michael Palmer, George Melton and EG&G et al routinely cover up criminal acts, refuse to investigate and prosecute the perpetrators and hide facts and details from the public in furtherance of a Racketeering Influenced Corrupt Organization.

330. Defendants Racketeering Influenced and Corrupt Organization has and still does operate a continuing criminal enterprise with monies provided by seizures, contractual agreements and purloined inventory.

331. Defendants Racketeering Influenced and Corrupt Organization were the legal and proximate cause of Plaintiffs' damages.

332. Defendants Racketeering Influenced and Corrupt Organization remains the legal and proximate cause of Plaintiffs' continuing and escalating damages.

333. Plaintiff's loss of operating capitol (business and savings) has and continues to prevent Brian Kilcullen/SkyKnight form engaging in aircraft sales, their primary source of income. Damages continue to accrue and compound daily from loss of revenues and

interest thereof.

334.    Plaintiff has suffered and continues to suffer damages as a proximate result of Defendant's conduct in an amount in excess of $6,000,000.00.

335.    Wherefore, Plaintiff prays for a compensatory and punitive damage award against Defendants in excess of eighteen million ($18,000,000.00), plus attorney's fees and costs of this and previous actions with such further relief as this Court deems just, proper and equitable.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on those issues so triable as of right.

Respectfully submitted,

BRIAN KILCULLEN, Pro Se
1208 Seminole Drive
Ft. Lauderdale, Florida 33304
Brian Kilcullen, Pro Se
Telephone No: (954) 772-0200
Facsimile No:   (954) 772-6996

By:_____
Brian Kilcullen

Dated this _15TH_ day of July, 2002.

56

## COUNTS

| Defendants: | Counts: |
| --- | --- |
| Guy Lewis | VII & VIII, IX |
| Terrence Thompson | IV, V, VI, VII & VIII, IX |
| Laurie Rucoba | IV, V, VI, VII & VIII, IX |
| Howard Weintraub | IV, V, VI, VII & VIII, IX |
| Michael Consavage | IV, V, VI, VII & VIII, IX |
| John Devaney | IV, V, VI, VII & VIII, IX |
| Michael Palmer | IV, V, VI, VII & VIII, IX |
| EG&G et al | I, II, III, V, VI, VII & VIII, IX |
| George Melton | I, II, III, V, VI, VII & VIII, IX |
| Jerry Hawkins | I, II, III, V, VI, VII & VIII, IX |
| John Dent | I, II, III, V, VI, VII & VIII, IX |
| Roy Butler Sr. | V, VII & VIII |
| Roy Butler Jr. | V, VII & VIII |
| Patrick Holmes | V, VII & VIII |

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

No. 0417143

## CUSTODY RECEIPT FOR RETAINED OR SEIZED PROPERTY

5234, P&PM

| 1. DISTRICT – PORT | 2. SEIZURE NO. | 3. GENERAL ORDER NO. | 4. OTHER CONTROL NO. | 5. DATE RET./SEIZED |
|---|---|---|---|---|
| 5203 | 9252030014 | | | 10/31/91 |

| 6. RETAINING/SEIZING OFFICER | 7. TELEPHONE NO. | 8. NAME & TYPE OF CARRIER | | TIME OF DAY |
|---|---|---|---|---|
| S A WILKINSON | 356-7238 | | | 1830 PM |

| 9. NAME & ADDRESS OF OWNER/CARRIER/CONSIGNEE | 10. EIN/IRS NO. | 11. NO. OF PKGS. | 12. APPROX. WGT. |
|---|---|---|---|
| D.A.S. EQUIPMENT 1800 N 4th Ave. Lake Worth, Fla. | | 1 | |

13. ENTRY NO. (WHS, IT, TE, OTHER (DESCRIBE)

14. SEAL OR OTHER ID NOS. (Beg Tag, B/L, AWG)

15. IDENTIFYING MARKS PLACED ON SEIZURE

| 16. SECTION OF LAW VIOLATED OR REASON FOR RETENTION | 17. IS PROPERTY TO BE HELD AS EVIDENCE? | 18. REMARKS (INCL. RECOMMENDED TYPE STORAGE, IF APPLICABLE) |
|---|---|---|
| Seizure Warrant 21 USC 881(a)(6) | 1: YES – Give Line Item No(s) 2: NO ☑ 2 Forfeiture | Cond. Custidy  EGG000057 |

19. DISTRICT DIRECTOR'S ADDRESS

### 20. PROPERTY (By Line Item) Attach CF 58 if conveyance.

| a LINE ITEM NO. | b DESCRIPTION | c CONDITION | d TYPE OF CONTAINER | e U/M | f QTY | g APPRAISED DOMESTIC VALUE | h HELD BY DIST. |
|---|---|---|---|---|---|---|---|
| 1 | ONE SWEARING IN Merlin IIIB, Aircraft (N802ME) | Good | | PC | 1 | 1,000,000.00 | |
| 2 | Inventory - Aircraft | Good | | ea | 41 | | |
| | Note: Inventory Packed in Boxes Seal # Box1 - 100946 Box 3 - 100970 Box 2 - 100599 Box 4 - 100549  10/01/ 12/11/91 | | | | | | |
| | Bag 5 | | | | | | |

### 21. ACCEPTANCE/CHAIN OF CUSTODY

| a DATE | b BY - INDIVIDUAL, TITLE, ORGANIZATION | c ITEM(S) | d NO. OF UNITS | e SIGNATURE |
|---|---|---|---|---|
| 11/1/91 | Signature of Customs Officer | 1 | 1 | |
| 11/1/91 | Harris E Mapes Reg Air Service | 1 | 1 | Harris E Mapes |
| 11/1/91 | Laureen Zizzo, 23406 | 1+2 | 42 | Laureen N. Zizzo |
| 11-1-91 | HARRIS E MAPES Reg Air Service | 1+2 | 42 | Harris E Mapes |
| 5/13/97 | BRIAN KILCULLEN | 1+2 | 42 | |

| 22. NOTICE OF ABANDONMENT AND ASSENT TO FORFEITURE | I hereby abandon all claim to the above-described articles, line item(s) _____ and waive any further rights or proceedings relative to these articles, other than my right to file a petition for administrative relief. | | |
|---|---|---|---|
| | a. Signature of Importer | b. Date | c. Witness (Customs Officer) | d. Date |

COPIES    OWNER/CARRIER/CONSIGNEE, VIOLATOR, RETAINING/SEIZING OFFICER, FP&F OFFICER, TRANSPORTATION

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

EGG000058

## CUSTODY RECEIPT FOR RETAINED OR SEIZED PROPERTY
CONTINUATION SHEET

Aircraft Inventory

5234, P&PM

| 1. DIST. – PORT | 2. SEIZURE NO. | 3. GENERAL ORDER NO. | 4. OTHER CONTROL NO. | 5. DATE RET./SEIZED |
|---|---|---|---|---|
| 5203 | 92-5203-00014 | — | — | 10/31/91 |

20. PROPERTY (By Line Item) Attach CF 58 if conveyance.

| LINE ITEM NO. | DESCRIPTION | CONDITION | TYPE OF CONTAINER | U/M | QTY | APPRAISED DOMESTIC VALUE | HELD BY DIST. |
|---|---|---|---|---|---|---|---|
| 01 | RCA Data Nav I S/N 1070 ME-585247-1 | Good | | ea | 1 | | |
| 02 | RCA Pilot Entry Keyboard S/N-1029 MI-585245 | Good | | ea | 1 | | |
| 03 | Starter Shaft | Good | | ea | 1 | | |
| 04 | Logs, Records + Documents relating to A/C + main | Good | | — | Misc | | |
| 05 | Sony Video Sat-1 Power Booster TV Model-EVST-1 (No S/N) | Good | | ea | 1 | | |
| 06 | Sony Remote Control Model RMT-442 | Good | | ea | 1 | | |
| 07 | Sony Headphone Set - Model MDR-V6 | Good | | ea | 2 | | |
| 08 | Manlife Raft 6/P Model #AV R0097-102 TS#C252-2 | Good | | ea | 1 | | |
| 09 | Flight Fone II | Good | | ea | 2 | | |
| 10 | Oxygen Mask (Generic) | Good | | ea | 3 | | |
| 11 | Microphone (Shure) S/N 45679/31450 | Good | | ea | 2 | | |
| 12 | Telex Headphone | Good | | ea | 1 | | |
| 13 | Cannon LC 22 - Calculator | Good | | ea | 1 | | |
| 14 | Maglite (Small) | Good | | ea | 1 | | |
| 15 | Lifevest | Good | | ea | 4 | | |
| 16 | Portable Table | Good | | ea | 1 | | |
| 17 | Fire Extinguiser | Good | | ea | 1 | | |
| 18 | Pilot + Co Pilot Chair (Blue Plaid) | Good | | ea | 1 | | |
| 19 | Cabin Seats (Blue Plaid) | Good | | ea | 4 | | |
| 20 | Couch (Blue Plaid) | Good | | ea | 1 | | |
| 21 | Clarion Cassette Player | Good | | ea | 1 | | |
| 22 | Windshield Cover | Good | | ea | 1 | | |
| 23 | Portable Potty | Good | | ea | 1 | | |
| 24 | Intake Covers | Good | | ea | 4 | | |
| 25 | Airworthiness Cert + Registration | Good | | ea | 1 | | |

EGG000059

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

## CUSTODY RECEIPT FOR RETAINED OR SEIZED PROPERTY

CONTINUATION SHEET

5234. P&PM

| 1. DIST. – PORT | 2. SEIZURE NO. | 3. GENERAL ORDER NO | 4. OTHER CONTROL NO. | 5. DATE RET./SEIZED |
|---|---|---|---|---|
| 5203 | 92-5203-00014 | — | — | 10/31/91 |

20. PROPERTY (By Line Item) Attach CF 58 if conveyance.

| a LINE ITEM NO. | b DESCRIPTION | c CONDITION | d TYPE OF CONTAINER | e U/M | f QTY | g APPRAISED DOMESTIC VALUE | h HELD BY DIST. |
|---|---|---|---|---|---|---|---|
| 26 | TRIMBLE NAVIGATION GPS S/N - 21061 | Good | | ea | 1 | | |
| 27 | NORTHSTAR LORAN MODEL MEL S/N 15819 | Good | | ea | 1 | | |
| 28 | COLLINS VIR-30 S/N 9708 | Good | | ea | 1 | | |
| 29 | COLLINS APC-80 S/N-297 | Good | | ea | 1 | | |
| 30 | COLLINS APA-80 S/N 521 | Good | | ea | 1 | | |
| 31 | COLLINS DME-40 S/N 6199 | Good | | ea | 1 | | |
| 32 | COLLINS FGC-80 A S/N 48 | Good | | ea | 1 | | |
| 33 | COLLINS VIR-30 S/N 9880 | Good | | ea | 1 | | |
| 34 | COLLINS 328 A 3G S/N 9124 | Good | | ea | 1 | | |
| 35 | COLLINS 328 A 3G S/N 3786 | Good | | ea | 1 | | |
| 36 | COLLINS 590A 3J1 S/N 341 | Good | | ea | 1 | | |
| 37 | COLLINS 562C 8F S/N 2316 | Good | | ea | 1 | | |
| 38 | COLLIN TDR 90 S/N# 5297/5757 | Good | | ea | 2 | | |
| 39 | STERO Chime PAGE - Amplifier S/N 181011 | Good | | ea | 1 | | |
| 40 | Flightronics CONVERTER S/N 112 | Good | | ea | 1 | | |
| 41 | RCA RT3001 S/N 1142 | Good | | ea | 1 | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

RCRAFT CONDITION AND INVENTORY

| 1. SEIZURE NO.: 92-5203-00014 | 2. LINE ITEM NO. FROM CF 6051: 1 | 3. DATE COMPLETED: 11-1-91 |
|---|---|---|

| 4. TYPES ENGINES: ☐ PISTON ☒ TURBO PROP ☐ JET | 5. AIRCRAFT CATEGORY: | a. HELICOPTER ☐ SINGLE ROTOR ☐ TWIN ROTOR |
|---|---|---|
| | | b. FIXED WING  ☐ SINGLE ENGINE ☒ MULTI ENGINE |

6. USE: ☒ PASSENGER   ☐ CARGO   ☐ PASSENGER AND CARGO   ☐ COMMERCIAL   ☐ PRIVATE USE

| 7. YEAR: 1978 | 8. MAKE: Sweating Merlin | 9. MODEL: 111B | 10. COLOR: W/Blue |
|---|---|---|---|

| 11. MANUFACTURED: ☒ USA ☐ FOREIGN | 12. REGISTRATION: ☒ USA ☐ FOREIGN | 13. REGISTRATION / TAIL NO.: N802Me | 14. SERIAL NO.: T-294 |
|---|---|---|---|

| 15. KEYS: a. IGNITION ☐ YES ☒ NO   b. DOORS ☐ YES ☒ NO | 16. AIRCRAFT DOCUMENTS (LOG BOOKS) LOCATED AT: Red Aircraft   ☐ NONE AVAILABLE |
|---|---|

17. ILLEGAL COMPARTMENTS: ☐ YES ☒ NO   IF 'YES' WHERE:

18. EQUIPMENT (SEE REVERSE):
a. OXYGEN ☒   b. PRESSURIZATION ☒   c. UHF-R. NAV/LORAN   MAKE: Collins
d. HF COMM. RADIO   MAKE: Collins   e. VHF NAV. RADIO   MAKE: "
f. ADF   MAKE: "   g. DME   MAKE: "
h. RADAR   MAKE: ACA   i. TRANSPONDER   MAKE: "
j. OTHER ELECTRONIC EQUIP: 

19. AIRCRAFT CONDITION:

a. DOCUMENTS:
☒ AIRWORTHY CERTIFICATE
☒ REGISTRATION
☒ OPERATOR MANUAL

| b. GENERAL | YES | NO |
|---|---|---|
| PAINT IN POOR CONDITION | | X |
| VISIBLE DAMAGE AND CORROSION | | X |
| FUEL TANK DAMAGE | | X |

| c. LANDING GEAR | YES | NO |
|---|---|---|
| BRAKES NONOPERABLE | | X |
| TIRES UNSERVICEABLE | | X |
| STRUTS LEAKING | X | |
| CORROSION | X | |

d. ENGINE(S)

| | NO. 1 | | NO. 2 | | NO. 3 | | NO. 4 | |
|---|---|---|---|---|---|---|---|---|
| | YES | NO | YES | NO | YES | NO | YES | NO |
| FUEL, OIL, HYDRAULIC LEAKS | | X | | X | | | | |
| PROPELLERS OR SPINNER DAMAGE | X | | X | | | | | |

| e. CABIN INTERIOR | YES | NO |
|---|---|---|
| UPHOLSTERY DAMAGED | | X |
| HEADLINER DAMAGED | | X |
| CARPETING DAMAGED | | X |

| f. WINGS AND FUSELAGE | LEFT YES | LEFT NO | RIGHT YES | RIGHT NO |
|---|---|---|---|---|
| DENTS, SCRATCHES, GOUGES | | X | | X |
| SKIN WRINKLES | | X | | X |
| WINDOWS SCRATCHED, CRACKED, CRAZED | | X | | X |
| DOORS BENT OR DAMAGED | | X | | X |
| LOOSE RIVETS | | X | | X |
| FLIGHT CONTROL SURFACES DAMAGED | | X | | X |
| ANTENNAS DAMAGED | | X | | X |
| DEICER BOOTS DAMAGED, CRACKED | | X | | X |
| CORROSION | | X | | X |

| g. EMPENNAGE | LEFT YES | LEFT NO | RIGHT YES | RIGHT NO |
|---|---|---|---|---|
| DENTS, SCRATCHES, GOUGES | | X | | X |
| SKIN WRINKLES | | X | | X |
| LOOSE RIVETS | | X | | X |
| FLT CTRL SURFACE DAMAGED | | X | | X |
| DEICER BOOTS DAMAGED | | X | | X |
| CORROSION | | X | | X |

EGG000062

20. NUMBER OF PHOTOGRAPHS TAKEN:
a. REQUIRED 4   b. DAMAGE _____   c. FOR CUSTOMS 4   d. OTHER _____

21. REMARKS   aircraft has avionics removed from nose compartment

22. WAITING TIME:   DESIGNATED ACCEPTANCE TIME _____   TIME ARRIVED _____   TIME CUSTOMS ARRIVED _____   WAITING TIME 0

| 23. CUSTOMS INVENTORY OFFICER: a. NUMBER OF PHOTOS REC'D | 24. SERVICEWIDE STORAGE FACILITY REPRESENTATIVE: |
|---|---|
| b. PRINTED NAME AND TITLE: LAUREEN M. Zizzo, 23406 | a. PRINTED NAME AND TITLE: HARRIS E Mapes |
| c. SIGNATURE: Laureen M Zizzo, 23406 | b. SIGNATURE: Harris C Mapes |

4006  09 Aug 91   DISTRIBUTION: White–Property Custody Package, Canary–Seizure Hard File, Pink–Subcontractor, Goldenrod–Customs
REFERENCE: Property Management Handbook Section 1







EGG0000372











# Roberts Air South, Inc

29701 S.W. 218th Street  Homestead General Airport
Homestead, Fl 33030
305-245-0154 Your Full Base Operations

```
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx RECORD NUMBER ... xxxxxxxxxxxxxxxxxxxxxxxxx
                    APPRAISAL SURVEY
JMBER : 92-5203-0001 |  MIAMI OFFICE  CALL#  12/17/91
_E & MODEL OF AIRCRAFT : _MERLIN 111B  SA-226-T (9. 1979
FFICIAL NUMBER : N801ME
LOR OF AIRCRAFT : WHITE/LT & DK BLUE STRIPES
RIAL NUMBER OF AIRCRAFT : T-294
RIAL NUMBER OF ENGINES : (1) P-75010         LEFT
                          (2) P-75008         RIGHT
IDEL NUMBER OF ENGINE : GARRETT 900 SHP/TPE 331-10UF512B
RESENT RECORDING TACH OR/
ESS CLOCK TIME : (1) H0589/ 1501.6
                 (2)
IRCRAFT AND ENGINE LOG BOOKS: YES
IME ON AIRCRAFT : 3059.5
IME ON ENGINES : (1) 3059.9                   LEFT (TBO-3600)
                 (2) 3059.9                   RIGHT (TBO-3600)
ENERAL CONDITION : (EXTERIOR) : VERY GOOD. 4-BLADED PROPS
TI/ICE WINGS & PROPS, HOT WINDSHIELD

                 (INTERIOR) : VERY GOOD/ EQUIPMENT IN GOOD
DDITION. CLARION TAPE DECK, STERO SYS, FLT PHONE, APU,
1EGA/NAV, RYAN ATS, 7 PASSENGER, POTTY CHAIR
AMAGE NOTED : FUEL LEAK/TANK & LOOSE NAVONICS TRAYS & WIRE
I THE NOSE COMPARTMENT-PROPS BADLY SAND OUT, AIRCRAFT HAS
ANK IN NOSE COMPARTMENT. ALL ELEC EQIF TAKEN OUT OF TAIL.
 AIRCRAFT BASIC VALUE :            $       717000.00
QUIPMENT ADDING VALUE :
     (1) TCAD RYAN COLL/AVOIDANCE  $         4395.50
     (2) FLT PHONE                 $         1540.00
     (3) TNL 2000                  $         5600.00
     (4) NORTH STAR LORAN          $         1400.00
     (5) H.F. RADIO HF 220         $         4585.00
AMAGE OR MISSING EQUIPMENT LESSING VALUE :
     (1) HIGH TIME ENGINES         $       129000.00
     (2)                           $            0.00
     (3)                           $            0.00
     (4)                           $            0.00
OTAL VALUE OF THIS AIRCRAFT :                $         604921.50
ALUE OF OTHER EQUIPMENT FOUND ONBOARD :      $              0.00
OTAL VALUE OF THIS :                         $         604921.50
```

EGG0000131

# Come Fly With Us

Number: _92-5203-00014_

~~ake and Model of Aircraft: _Merlin IIIB SA-226-T (B)_

Year: _1979_

Official Number: _N 802ME_

Color of Aircraft: _WHITE - LIGHT + DARK BLUE STRIPES_

Serial Number of the Aircraft: _T-294_

Serial Number of Engines: (1) _P-35010_ Left     *A/C Rec'd for*
GARRETT 900 SHP (2) _P-35008_ Right            *GOV'T Service*
TPE 331 -10U501G                                      *Line*
Present recording tachometer or (Hobbs) Clock Time:    *Item 4*
- - - - - - - - - - - - - - - -     _1501.6_

Aircraft and Engine Log Books: _Yes_

Time on Aircraft: _3059.5_ ~~( ▓▓▓▓▓ )~~

Time on Engines (1) _3059.5_          Left    *(TBO -3600)*
                 (2) _3059.5_          Right

General Condition: (Exterior) _Very Good_

_____

_____. (Interior) _Very Good_

_____

Damage noted: _Fuel Leak - TANK + Loose_
_AVONICS TRAYS + Wires iN THE Nose_
_COMPARTMENT - Props BADLY JAM CUT_

* Aircraft Basic Value:      $ ~~▓▓▓▓▓▓~~  _717,000.00_

* Equipment Adding Value:
   (1) _TCAD RYAN Coll Avoidance Sys_  $ _4,896.50_
   (2) _FLT Phone_            $ _1,540.00_
   (3) _TNL 2000_            $ _5,600.00_
   (4) _NORTH STAR LORAN_    $ _1,400.00_
   (5) _HF RADIO HF 220_     $ _4,585.00_

Damage or missing Equipment Lessing Value:
   (1) _High Time ENGINES_   $ _129,000.00_
   (2) ~~▓▓▓▓▓~~              $ _____
   (3) _____           $ _____
   (4) _____           $ _____

* TOTAL VALUE OF THIS AIRCRAFT:         $ _____

 ~~Va~~lue of other Equipment found onboard:   $ _____

TOTAL VALUE OF THIS ____ ___        $ _____

* Prices based on Aircraft Bluebook Price Digest

#34

UNITED STATES GOVER.  ENT

*Memorandum*

DEPARTMENT OF .HE TREASURY
UNITED STATES CUSTOMS SERVICE



DATE:   December 14, 1992

FILE:   ENF 8:E:RAC:FL:JW
x:   FL13MC9SG007

TO:   District Director
Miami, Florida

ATTN: Peggy Cumby
Fines, Penalties and Forfeitures

FROM:   Resident Agent in Charge
Fort Lauderdale, Florida

SUBJECT:   Request for access to seized aircraft (92-5203-00127) and (92-5203-00014).

The Office of the RAC/Ft. Lauderdale seized a Mitsubishi MU-2 aircraft (92-5203-00127) and its contents subsequent to the arrest of the owner Rodney N. MATTHEWS. At the time of the seizure, it was impossible to review the contents of the aircraft and/or to photograph the aircraft due to the arrest of MATTHEWS and time constraints placed upon the agents by the initial appearance in Federal Court.

In conjunction with the above, the Office of the U.S. Attorney, Ft. Lauderdale, requests the contents of the aircraft be reviewed for evidentiary value and the aircraft be photographed for trial purposes. In addition, that office requested that the seized Merlin IIIB aircraft (92-5203-00014) which is associated with this criminal case, be made available for review by the case agents and the Assistant U.S. Attorney.

It is requested that access to the seized aircraft be granted for December 16, 1992 for the following:

AUSA Thompson
S/A Wilkinson, USCS
S/A Ryan, IRS
S/A Sultan, IRS

EGG000094

John J. Sullivan Jr.

**U.S. CUSTOMS SERVICE**
**DISPOSITION ORDER**   EGG000092

TO:   ☐ DIST...CT/PROPERTY CUSTODIAN
      ☒ CONTRACTOR

| 1. SEIZURE NO. 92-5203-00014 92-5203-00~~127~~99 (PC) | 2. DISTRICT Miami, Fla. | 3. DATE December 15, 1992 |
|---|---|---|

**4. DISPOSITION INSTRUCTIONS:**

☐ REMIT
  ☐ Owner/Violator
  ☐ Authorized Agent
  ☐ Lienholder
  (Complete Block #7)

☐ SELL
  ☐ Export Only
  ☐ Quick Sale

☐ TRANSFER
  ☐ To USCS
  ☐ Other Federal Agency
  ☐ State & Local Law Enforcement Agency
  ☐ Charitable Institution
  (Complete Block #7)

☐ DESTROY
  ☐ Attach CF4613
  (Complete Block #6)

☒ OTHER
  (Complete Block #6)

CUSTOMS COLLECTION:
Amt $_____ Receipt #_____

*Walk Through Remission Call Contractor Central Office

Carmen Carvajal
NAME (PRINT)   DD ☐ or FP & F ☒
P. D. Cumley
SIGNATURE

**5. IDENTIFICATION OF PROPERTY**

☐ ALL LINE ITEMS IN SEIZURE          ☐ PARTIAL-ONLY LINE ITEMS LISTED BELOW

| LINE ITEM NO. | DESCRIPTION | UNIT OF MEASURE | QUANTITY |
|---|---|---|---|
| 01 | One Swearingin Merlin Aircraft & equipment, #N80ZME | | |
| | | | |
| | | | |

**6. SPECIAL INSTRUCTIONS** Permission and authorization is granted to the following personnel to view and photograph aircraft: AUSA Thompson, S/A Wilkinson, S/A Ryan and S/A Sultan on December 16, 1992.

OK TO USE FAX

**7. RELEASE PROPERTY TO:**
NAME OF AGENCY/ORGANIZATION: _____ TEL NO.: _____
NAME OF INDIVIDUAL AGENT: _____
ADDRESS (CITY, STATE, ZIP CODE): _____

**8. DISPOSITION ACCOMPLISHED**   RELEASE NUMBER _____

a. ☐ Remit   ☐ Transfer   Holding Cost Paid $_____ Date _____
*Warning: Do not accept property if damage or loss has occurred without jointly completing contractor's form 43-4002 or other statement listing deficiencies with the storage vendor. Be sure to retain a copy of the signed form or statement.*

SUBCONTRACTOR NAME (PRINT)   SIGNATURE   PERSON RECEIVING PROPERTY NAME (PRINT)   SIGNATURE

b. ☐ Destroy   Date Accomplished _____
CUSTOMS WITNESS (if required) (PRINT)   SIGNATURE

SUBCONTRACTOR NAME (PRINT)   SIGNATURE   CONTRACTOR (SIGNATURE)

c. ☐ Sell   ☒ Other   ☐ Export Only   Price Received _____   Date 12-16-92
EGG-3115   J WILKINSON
SUBCONTRACTOR (if required) (PRINT)   SIGNATURE   CUSTOMS WITNESS (if required) (PRINT)   SIGNATURE

**9. AUTHENTICATION**   JERRY L. HAWKINS / DISTRICT MANAGER
CONTRACTOR CENTRAL OFFICE: _____
NAME/TITLE (PRINT)   SIGNATURE   12-18-92   DATE

INSTRUCTIONS TO OWNER/LIENHOLDER: This property is in the custody of the U.S. Customs' seized property contractor. Payment of storage and handling charges is required. These charges may be paid in cash, traveler's checks, cashier's checks or money order. Personal or business checks are not acceptable. For information on property, amount of holding charges due, preparing check or money order, and procedures for pickup, call this toll free number during business hours: 1-800-331-4419. NOTE: Anyone acting as an agent of the owner/lienholder must have proof of identity and letter of authorization to claim the property.

Upon authentication of the above disposition, return original copy to the issuing FP & F Office to be filed in the official case file.

CASE #   92-CR-6020-UUB



# "Do Not Scan or Copy This Transcript."

DE #  285

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN  DISTRICT OF FLORIDA

UNITED STATES OF AMERICA          )
                                  )
              vs.                 )
                                  ) 92-6020-CR-UNGARO-BENAGES
                                  )
RODNEY MATTHEWS                   )
- - - - - - - - - - - - - - - - - - - - - - - - -

VOLUME VIII

FILED by _____ D.C.

OCT 1 5

clerk U.S. dist. ct.
S.D. OF FLA. MIAMI

Transcript of jury trial before The

Honorable URSULA UNGARO-BENAGES, United States

District Judge, in Miami, Dade County, Florida,

on Monday, November 8, 1993, in the above-

styled matter.


APPEARANCES OF COUNSEL:

|  |  |
|---|---|
| For the Government: | Mr. Terrence J. Thompson<br>299 E. Broward Boulevard<br>Ft. Lauderdale, Florida |
| For the Defendant: | Mr. F. Lee Bailey<br>400 Centrepark Boulevard<br>Suite 909<br>West Palm Beach, Florida<br>Mr. Ronald C. Dresnick<br>3191 Coral Way<br>Madison Circle<br>Miami, Florida |

Linda E. Fincannon
Official Court Reporter
123 U.S. Courthouse
301 North Miami Avenue
Miami, Florida 33128
305-379-6130

I N D E X

WITNESS:                                                    Page no.

JIMMIE ELLARD
          Cross-Examination (Resumed) by Mr. Bailey 1421
          Redirect Examination by Mr. Thompson       1486

NELSON EDGAR EMMENS
          Direct Examination by Mr. Thompson          1517
          Cross-Examination by Mr. Bailey             1582
          Redirect Examination by Mr. Thompson        1619

JOHN DENT
          Direct Examination by Mr. Thompson          1624
          Cross-Examination by Mr. Bailey             1627

RICHARD MILLER
          Direct Examination by Mr. Thompson          1632
          Cross-Examination by Mr. Bailey             1635
          Redirect Examination by Mr. Thompson        1639

# NOT

# SCANNED

## PLEASE REFER TO COURT FILE

## TELEPHONIC FLASH REPORT - ADVERSE INCIDENT
### SECTION I. FLASH REPORT ORIGINATOR

| REPORTING OFFICE _Miami DSO_ | PHONE (305) 621-5136 | DATE/TIME OF REPORT _2-22-94 14:00_ |
|---|---|---|

**1. TYPE OF INCIDENT - CHECK APPLICABLE** ☐ Injury ☐ Loss ☐ Damage ☒ Other

**2. SEIZURE/G.O. NO. AND LINE NO.** ☐ N/A
_92-5203-00014-02_

**3. DESCRIPTION OF PROPERTY** ☐ N/A
_Oxygen Mask_

**4. LOCATION OF INCIDENT (Precise Location)**
_270 SW 34 St. Fort Lauderdale 33315_

**5. WHO DISCOVERED INCIDENT (Name, Title)**
_Jerry Hawkins_
_District Manager_

**6. DATE/TIME OF INDICENT (Est.)** _UNK_

**7. DATE/TIME INCIDENT DISCOVERED** _2-22-94 13:00_

**8. NAME OF INJURED PERSON(S), DESCRIBE INJURIES**
_N/A_

**9. DESCRIBE PROPERTY INCIDENT** ☐ NONE    ESTIMATED VALUE OF LOSS OR DAMAGE $ _____
a. ☐ Lost    b. ☒ Damage or Other: Describe: _6051A listed 3 Oxygen Masks_
_Qty on 6051 was written over and looks like Qty is 3 original could_
_have been 2 masks. Only 2 masks were located in box that was sealed by USCS._

**10. ACTUAL OR LIKELY CAUSE (State Specific Facts/Reliable Information)**
_Possible mistake on initial inventory listing attached apparatus in cockpit_
_as #3 Oxy mask. The personnel that accomplished the initial inventory_
_3 yrs ago are no longer in the area to ask._

**11. HOW DISCOVERED:**
_Discovered during GAO inventory at time sealed box was opened_
_by USCS and IG personnel._

**12. WITNESSES:** ☐ Unk ☒ No ☐ Yes: Name(s) Address and Phone Number If Available

**13. ACTION TAKEN (Check Applicable)** ☒ Local Customs Notified
☐ Ambulance Called    ☐ Police Notified    ☐ Security Actions Taken:    EGG000037

**14. PERSON SUBMITTING REPORT (Print)** _Jerry Hawkins_

**15. SUBCONTRACTOR** _Red Aircraft_

### SECTION II. EG&G DYNATREND

**16. DISTRICT SUPPORT OFFICE**
a. Date/Time Received _14:00 2-22-94_ b. Name (Print) _Jerry Hawkins_

**17. REGION DIRECTOR**
a. Date/Time Received _____ b. Name (Print) _____

**18. REMARKS/COMMENTS**

**19. DISTRIBUTION:** ☐ Director, Risk Management    ☐ Director, Field Operations    ☐ Region Director

3055  9 Aug 91

## CONVEYANCE FAIR MARKET VALUE ANALYSIS

| SEIZURE NUMBER 92-5203-00014 | 2. LINE ITEM 01/02 | 3 COMPLETED BY JR Dea+ | | 4. DATE PREPARED |
|---|---|---|---|---|
| PRAISE VALUE/DATE 606,022.00 . | 6. FAIR MARKET VALUE/DATE — | 7. ADJUSTED FAIR MARKET VALUE/DATE 596,022.00  6-6-94 | | 8. DATE STORED 11-1-91 |
| YEAR (Example: 1978, 1968) 1979 | 10. MAKE Sweenger | | 11. MODEL (Example: Aztec) metro/merlin III B | |
| 12. ENGINE (Example: Twin 6 Cyl. Lycomings, Twin Turbo) Garrett | | | 13. SERIAL NUMBER T-294 | |
| 14. REGISTRATION NUMBER N.802mE | | 15 RESTRICTIONS/INSTRUCTIONS (Example: Export Only, Illegal Compartments) N/A | | |

16. AVIONICS/ELECTRICAL EQUIPMENT

_____   _____   _____   _____
_____   _____   _____   _____
_____   _____   _____   _____

17. SPECIAL EQUIPMENT (Propeller Type, Thrust Reversers, Tuna Tower, Swim Platform, Type Generators, etc )

_____   _____   _____   _____
_____   _____   _____   _____
_____   _____   _____   _____

Refer to Operations Procedure 1 - 4 (Conveyance FMV Matrix) to complete items 18 - 26

_____ 19. _____   20 _____   21. _____
_____   23 _____
_____   26 _____

18. SOURCE OF FMV DETERMINATION

| A. NADA Used Car Guide | ☐ | D Aircraft Blue Book | ☐ | G Manufacture Invoice | ☐ |
|---|---|---|---|---|---|
| B. NADA Boat Guide | ☐ | E Trade A Plane | ✗ | H Professional Appraisal | ✗ |
| C BUC Used Point Guide | ☐ | F Manufacture Price Guide | ☐ | I Other (specify) _____ | |

STARTING VALUE                                    $ 606,022.00

| Additions/Deductions | Add | Deduct | |
|---|---|---|---|
| Depreation (Time in Storage) | _____ | 10,000 00 | |
| _____ | _____ | _____ | |
| _____ | _____ | _____ | EGG0000127 |
| _____ | _____ | _____ | |
| _____ | _____ | _____ | |
| _____ | _____ | _____ | |
| TOTAL    (-) $ _____ | | (-) $ 10,000 00 | Add Total (-) $  O |

Subtotal $ 606,022.00

Deduct Total (-) $ 10,000 00

## CONVEYANCE [ ] ALUATION AND FAIR MARKET V[ ]LUE ANALYSIS

| 1. SEIZURE/G.O. NUMBER | 2. LINE ITEM | 3. COMPLETED BY | 4. DATE PREPARED |
|---|---|---|---|
| 92-5203-00014 | 01 | John R Dent | 4-10-96 |

| 5. APPRAISED VALUE | 6. FAIR MARKET VALUE | 7. ADJUSTED FAIR MARKET VALUE | 8. > 25% APV/FMV |
|---|---|---|---|
| 606,022.00 | 526,022.00 | 526,022.00 | ☐ |

| 9. YEAR (Example: 1978, 1968) | 10. MAKE | 11. MODEL (Example: Aztec) |
|---|---|---|
| 1978 | Swearinger | merlin III B |

| 12. ENGINE (Example: Twin 6 Cyl, Lycomings, Twin Turbo) | 13. COLOR | 14. REG. NO. AND STATE OR TAIL NO. |
|---|---|---|
| Garrett TPE 331-10U501G | White | N 802ME |

| Vehicle | Aircraft | Vessel |
|---|---|---|
| 15. VIN | SERIAL NO. T-294 | HULL ID NO. |
| 16. STYLE | LOG BOOKS AVAILABLE Not Available | LENGTH |
| 17. TRANSMISSION | EQUIPMENT Some And Collins Equipment | BEAM          DRAFT |
| 18. MILEAGE | EQUIPMENT Avionics Removed from | NAME |
| 19. EQUIPMENT | EQUIPMENT Nose section. | EQUIPMENT |
| 20. EQUIPMENT | EQUIPMENT | EQUIPMENT |
| 21. EQUIPMENT | EQUIPMENT | EQUIPMENT |
| 22. RESTRICTIONS | RESTRICTIONS | RESTRICTIONS |
| 23. OTHER | OTHER | OTHER |

24. SOURCE OF FM[ ] [ ]ETERMINATION

| A. NADA Used Car Guide ☐ | D. Aircraft Blue Book ☒ | G. Manufacture Invoice ☐ |
|---|---|---|
| B. NADA Boat Guide ☐ | E. Trade A Plane ☒ | H. Professional Appraisal ☐ |
| C. BUC Used Point Guide ☐ | F. Manufacture Price Guide ☐ | I. Other (specify) my opnion |

25. STARTING VALUE:      Fmv $596,022.00

| Additions/Deductions | Add | Deduct |
|---|---|---|
| Avonics replacement | | 50,000.00 |
| No Log books | | 15,000.00 |
| Depreation | | 5,000.00 |
| | | |
| | | |
| | | |
| | | EGG0000126 |
| | | |
| | | |
| TOTAL      (+) $ | (-) $ 70,000.00 | Add Total (+) $ _____0_____ |

Subtotal $ 596,022.00

Deduct Total (-) $ 70,000.00

FMV $ 526,022.00

# CONVEYANCE VALUATION AND FAIR MARKET VALUE ANALYSIS

| 1. SEIZURE/G.O. NUMBER | 2. LINE ITEM | 3. COMPLETED BY | | 4. DATE PREPARED |
|---|---|---|---|---|
| CS 92-5203-00014 | 001 | | | 8/30/96 |

| 5. APPRAISED VALUE | 6. YEAR (Example: 1978, 1968) | 7. MAKE | | 8. MODEL (Example: Aztec) |
|---|---|---|---|---|
| 606,022.00 | 1979 | Swearingen Merlin | | 111B SA226T (B) |

| 9. ENGINE (Example: Twin 6 Cyl, Lycomings, Twin Turbo) | 10. COLOR | 11. REG. NO. AND STATE OR TAIL NO. | 12. > 25% APV/FMV |
|---|---|---|---|
| Garrett 900 SHP / TPE 331-10U501G | White / Blue stripes | N802ME | ☐ |

| | Vehicle | | Aircraft | | Vessel |
|---|---|---|---|---|---|
| 13. VIN | | SERIAL NO. | T-294 | HULL ID NO. | |
| 14. STYLE | | LOG BOOKS AVAILABLE | Partical Logs. | LENGTH | |
| 15. TRANSMISSION | | EQUIPMENT | missing Logbooks | BEAM | DRAFT |
| 16. MILEAGE | | EQUIPMENT | Avionics missing | NAME | |
| 17. EQUIPMENT | | EQUIPMENT | | EQUIPMENT | |
| 18. EQUIPMENT | | EQUIPMENT | | EQUIPMENT | |
| 19. EQUIPMENT | | EQUIPMENT | | EQUIPMENT | |
| 20. RESTRICTIONS | | RESTRICTIONS | | RESTRICTIONS | |
| 21. OTHER | | OTHER | | OTHER | |

**22. SOURCE OF FMV DETERMINATION**

| A. NADA Used Car Guide ☐ | D. Aircraft Blue Book ☑ | G. Manufacture Invoice ☐ |
|---|---|---|
| B. NADA Boat Guide ☐ | E. Trade A Plane ☑ | H. Professional Appraisal ☐ |
| C. BUC Used Point Guide ☐ | F. Manufacture Price Guide ☐ | I. Other (specify) _____ |

**23. INITIAL FMV:**   Starting Value $_____

| Additions/Deductions | Add | Deduct | |
|---|---|---|---|
| _____ | _____ | _____ | Add Total (+) $_____ |
| _____ | _____ | _____ | Subtotal $_____ |
| _____ | _____ | _____ | Deduct Total (-) $_____ |
| _____ | _____ | _____ | FMV $_____ |
| _____ | _____ | _____ | |
| TOTAL   (+) $_____ | | (-) $_____ | |

**24. ADJUSTED FMV:**   Starting Value $ 526,022.00

EGG0000129

| Additions/Deductions | Add | Deduct | |
|---|---|---|---|
| Avionics | 25,000.00 | _____ | Add Total (+) $_____ |
| Airframe/Engines | | _____ | Subtotal $_____ |
| Logbooks | 50,000.00 | _____ | Deduct Total (-) $_____ |
| Annual Inspect. | 20,000.00 | _____ | Adjusted FMV $ 431,022.00 |
| TOTAL   (+) $_____ | | (-) $_____ | |

4080   2 Apr 96    DISTRIBUTION: Original-Seizure Hard File    REFERENCE: Operations Procedure 1-7

# U.S. DEPARTMENT of the TREASURY
# AUCTION

## 1979 Swearingen Merlin IIIB
★ Tail Number N802ME ★ Serial Number T-294 ★





- Airworthiness Certificate
- Avionics
  - Collins Proline Radio
  - RCA Radar
- Engines
  - Left - S/N P350100
  - Right - S/N P35008C
  - Garrett TPE331-10U501G Engine
- 4 Blade Hartzell Propeller
- Instruments
  - Air Conditioning
  - Co-Pilot Instruments
  - Flitefore VI

- Interior:
  - Gray & Blue
  - 6 Seats
  - Oxygen System
  - Airstair Door
- Exterior
  - White w/Blue Stripes
  - De-Ice Boots-Props/Wing/Tail
  - Hot Plate Windshield
- No log books available
- $25,000 Required Deposit
- Final Payment: by May 9 at 5 P.M.



**PHONE BIDDING AVAILABLE!!**



*Call 703-273-7373 to request a FREE video!*

**PREVIEW LOCATION**
Miami Aviation Corporation
Opa-Locka Airport
14980 N.W. 44th Court
Miami, Florida

**PREVIEW DATES**
April 21 • 9:00 A.M. - 12:00 Noon
Engines will be started at 11:00 A.M.

April 28 • 12 Noon - 4:00 P.M.
Engines will be started at 2:30 P.M.

## AUCTION DATE
April 30, 1997 at 12:00 Noon
Registration: 9:00 A.M. - 12:00 Noon

## AUCTION LOCATION
Broward County Convention Center
1950 Eisenhower Boulevard
Port Everglades, Florida



Larry Latham #AB427 • Sale #97-52-205 • http://www.ustreas.gov/treasury/bureaus/customs/planes.html
Auction conducted by EG&G DYNATREND on behalf of the U.S. Department of the Treasury, with all proceeds directed to the U.S. Treasury.

# GARY POULSEN • 305-621-2306

Case 0:02-cv-60964-WJZ   Document 1   Entered on FLSD Docket 07/15/2002   Page 78 of 159

PROPERTY ACCESS REGISTER

SUBCONTRACTOR _Miami Aviation_

MONTH _October_  YEAR _1996_

SECTION I - SIGN IN AND OUT

| 1. DATE | 2. NAME (PRINT) AND SIGN BELOW | 3. SSN/BADGE NO. | 4. FIRM/AGENCY | 5. SEIZURE NO. | 6. AUTHORIZATION DOCUMENT AND REASON FOR ACCESS | 7. TIME IN | 8. TIME OUT | 9. CHARGE INCURRED (Y) |
|---|---|---|---|---|---|---|---|---|
| 10/4 | B. _____ R. ____ | 3119 | EG&G | 92-5205-0127 / 92-5203 00127 | Sale | 1100 | 1145 | |
| 10/7 | ____ | 3119 | EG&G | All | O/S | 1030 | 1130 | |
| 10/8 | ____ | 3119 | EG&G | All | viewing | 930 | 1230 | |
| 10/9 | Dave Lee ____ ____ | 35248 / 6215 | FPD | | Viewing | 1203 | 1:05 | |

SECTION II - LABOR OR MATERIAL TO SUPPORT AUTHORIZED ACCESS
BY CUSTOMS, OTHER GOVERNMENT AGENCIES, OR EG&G

10 a. DATE _____  b. SZ NO. _____  c. LINE NO. _____

d. LABOR _____ hrs.  e. FORKLIFT _____ hrs.

f. MATERIALS USED _____

g. WORK PERFORMED _____

10 a. DATE _____  b. SZ NO. _____  c. LINE NO. _____

d. LABOR _____ hrs.  e. FORKLIFT _____ hrs.

f. MATERIALS USED _____

g. WORK PERFORMED _____

11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED

a. PRINT _____  b. SIGNATURE _____

11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED

a. PRINT _____  b. SIGNATURE _____

NOTE: Close out this form the last day of each month.

4063   09 Aug 91

DISTRIBUTION: Original - Finance and Accounting.  Copy: Subcontractor

REFERENCE: Property Management Handbooks, Section 7.

EGG0000375

Case 0:02-cv-60964-WJZ   Document 1   Entered on FLSD Docket 07/15/2002   Page 79 of 159

SUBCONTRACTOR _MAC_

MONTH _December_ YEAR _96_

**PROPERTY ACCESS REGISTER**

SECTION I - SIGN IN AND OUT

PAGE _1_ OF _1_

| 1. DATE | 2. NAME (PRINT) AND SIGN BELOW | 3. SSN/BADGE NO. | 4. FIRM/AGENCY | 5. SEIZURE NO. | 6. AUTHORIZATION DOCUMENT AND REASON FOR ACCESS | 7. TIME IN | 8. TIME OUT | 9. CHARGE INCURRED (Y) |
|---|---|---|---|---|---|---|---|---|
| 12/5 | *(signature)* | 3569 | EG&G | 92S2030004 | Dupo | 1230 | 1730 | |
| 12/5 | Ben Dixon *(signature)* | — | BEA | " | — | 143x | 1730 | |
| 12/5 | Mark C. Wilkinson *(signature)* Mark C. Will. | Cc#0. #2896 | DEA | " | — | 1432 | 1730 | |
| 12/5 | JAMES MORRIS | — | DeA | " | — | 1432 | 1730 | |
| 12/6 | JAMES MORRIS *(signature)* | — | DEA | " | | 1130 | 1200 | |
| 12/6 | *(signature)* | 3119 | EG&G | 92-S200004 | Dupo | 1130 | noo | |
| 12/2 | Jerry Hawkins *(signature)* | 3116 | EG&G | All | — | 3:30 | 4:15 | |
| 12/12 | *(signature)* | 3005 | EG&G | All | — | 3:30 | 4:15 | |

**SECTION II - LABOR OR MATERIAL TO SUPPORT AUTHORIZED ACCESS BY CUSTOMS, OTHER GOVERNMENT AGENCIES, OR EG&G**

10 a. DATE _____ b. SZ NO. _____ c. LINE NO. _____

d. LABOR _____ hrs. e. FORKLIFT _____ hrs.

f. MATERIALS USED _____

g. WORK PERFORMED _____

10 a. DATE _____ b. SZ NO. _____ c. LINE NO. _____

d. LABOR _____ hrs. e. FORKLIFT _____ hrs.

f. MATERIALS USED _____

g. WORK PERFORMED _____

11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED

a. PRINT _____ b. SIGNATURE _____

NOTE: Close out this form the last day of each month.

11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED

a. PRINT _____ b. SIGNATURE _____

4005  09 Aug 91

DISTRIBUTION: Original - Finance and Accounting.  Copy: Subcontractor

REFERENCE: Property Management Handbook, Section 7.

EGG0000376

Case 0:02-cv-60964-WJZ   Document 1   Entered on FLSD Docket 07/15/2002   Page 80 of 159

**PROPERTY ACCESS REGISTER**

SUBCONTRACTOR _MAC_

MONTH _MARCH/APRIL_ YEAR _97_

SECTION I - SIGN IN AND OUT

PAGE _1_ OF _1_

| 1. DATE | 2. NAME (PRINT) AND SIGN BELOW | 3. SSN/BADGE NO. | 4. FIRM/AGENCY | 5. SEIZURE NO. | 6. AUTHORIZATION DOCUMENT AND REASON FOR ACCESS | 7. TIME IN | 8. TIME OUT | 9. CHARGE INCURRED (Y) |
|---|---|---|---|---|---|---|---|---|
| 3/20 | JR Dent | 3119 | EG&G | ALL | Inventory | 0925 | 100 | |
| 4/4 | Robert | 3119 | EG&G | 92-5203-0304 | Records | 1000 | 1200 | |
| 4/10 | JR Dent | 3119 | EG&G | ALL | overnight | 1130 | 1330 | |
| 4/21 | JR Dent | 3119 | EG&G | 92-5203-0014 | Vieam | 0845 | 4.00 | |
| 4/25 | Jerry Hawkins | 3166 | EGG | // | Inventory | 1:20 | 2:40 | |
| 4/28 | | | | | | 10⁰⁰ | 12⁰⁰ | |
| 4/29 | | | | | | 10⁰⁰ | 12⁰⁰ | |
| 4/5 | Patrick M Holmes | | | | | 10⁰⁰ | 12⁰⁰ | |
| 4-25 | Schweiffenbach | 26739672 | | | | 12⁰⁰ | 12⁰⁰ | |

**SECTION II - LABOR OR MATERIAL TO SUPPORT AUTHORIZED ACCESS BY CUSTOMS, OTHER GOVERNMENT AGENCIES, OR EG&G**

10. a. DATE _____ b. SZ NO. _____ c. LINE NO. _____

d. LABOR _____ hrs. e. FORKLIFT _____ hrs.

f. MATERIALS USED _____

g. WORK PERFORMED _____

11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED

a. PRINT _____ b. SIGNATURE _____

NOTE: Close out this form the last day of each month.

4085   09 Aug 91

10. a. DATE _____ b. SZ NO. _____ c. LINE NO. _____

d. LABOR _____ hrs. e. FORKLIFT _____ hrs

f. MATERIALS USED _____

g. WORK PERFORMED _____

11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED

a. PRINT _____ b. SIGNATURE _____

DISTRIBUTION: Original - Finance and Accounting.   Copy: Subcontractor

REFERENCE: Property Management Handbook, Section 7.

EGG0000377

Case 0:02-cv-60964-WJZ   Document 1   Entered on FLSD Docket 07/15/2002   Page 81 of 159

## PROPERTY ACCESS REGISTER

SUBCONTRACTOR __MAC__

MONTH __MAY__   YEAR __1997__   SECTION I - SIGN IN AND OUT   PAGE __1__ OF __1__

| 1. DATE | 2. NAME (PRINT) AND SIGN BELOW | 3. SSN/BADGE NO. | 4. FIRM/AGENCY | 5. SEIZURE NO. | 6. AUTHORIZATION DOCUMENT AND REASON FOR ACCESS | 7. TIME IN | 8. TIME OUT | 9. CHARGE INCURRED (Y) |
|---|---|---|---|---|---|---|---|---|
| 5/3/97 | [signature] | 3119 | EGG | 8-5003-001Y | Release | 950 | 1100 | |
| | [redacted] | | | | | | | |
| 5/13 | [signature] | 3119 | EGG | All | Inventory | 0940 | 1030 | |
| 5/13 | ROBERT DEL TORO | 26840 | USCS | ALL | Oversite | 0940 | 1030 | |
| 5/13 | [signature] Anthony [illegible] | 3524 | USCS | All | oversite | 0940 | 1030 | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

### SECTION II - LABOR OR MATERIAL TO SUPPORT AUTHORIZED ACCESS
### BY CUSTOMS, OTHER GOVERNMENT AGENCIES, OR EG&G

| | |
|---|---|
| 10.a. DATE _____ b. SZ NO. _____ c. LINE NO. _____<br>d. LABOR _____ hrs. e. FORKLIFT _____ hrs.<br>f. MATERIALS USED _____<br>g. WORK PERFORMED _____ | 10.a. DATE _____ b. SZ NO. _____ c. LINE NO. _____<br>d. LABOR _____ hrs. e. FORKLIFT _____ hrs.<br>f. MATERIALS USED _____<br>g. WORK PERFORMED _____ |
| 11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED<br>a. PRINT _____ b. SIGNATURE _____ | 11. GOVERNMENT/EG&G VERIFICATION THAT THE WORK WAS PERFORMED<br>a. PRINT _____ b. SIGNATURE _____ |

NOTE: Close out this form the last day of each month.

4085   08 Aug 91

DISTRIBUTION: Original - Finance and Accounting. Copy: Subcontractor

REFERENCE: Property Management Handbooks, Section 7.

EGG0000378



# CAPITOL BEVERAGE COMPANY

10300 METROPOLITAN DRIVE
P.O. BOX 9190
AUSTIN, TEXAS 78766
(512) 837-6550
FAX (512) 837-6953

---

May 21, 1997

Mr. Howard Weintraub
U.S. Customs Service
499 North West 70th Avenue, Room 215
Plantation, Florida 33317

Dear Mr. Weintraub:

Pursuant to our conversation today, I enclosed some information on the sale of the seized aircraft 1979 Merlin 3B, tail number N802ME on April 30, 1997 at Ft. Lauderdale.

I sent two of my company pilots to Ft. Lauderdale three days before the sale to do due diligence on the plane's history.

Everyone involved said there were no log books with the plane when seized and not available. Further, all the avionics (the black boxes under the nose section) were missing at the time of the seizure reportedly in 1991. It was explained that the avionics were being repaired and upon seizure by customs, the repairing facility kept them for charges.

I am attaching a sheet showing the necessary expense that would be required to get the plane up to where the FAA would issue an Air Worthiness Certificate, because with no log book, there would be no way to establish engine hours, landings, cycles, etc.

In fact, the plane couldn't be moved without an FAA ferry permit, etc.

One week after the sale of the plane, the buyer, Sky Knight Air Services, Inc. (Mr. Brian Kilcullen) called and said the radios and log book "mysteriously" (his words) appeared and he offered the plane at $495,000 (a $130,000 mark-up from the $365,000 paid at auction).

I have no interest in the aircraft now, but as a concerned citizen I am appalled at the obvious possible criminal defrauding of the U.S. Government of the difference in the amount of money that the Treasury should have received.

After you have had the time to look into this situation, I would appreciate a prompt response from you.

I am told I should contact the Justice Department but feel this should go to your department, at least in the beginning.

Feel free to call me at (512)837-6550 at anytime.

Yours Very Truly,

Roy Butler
Roy Butler
President

# PATCO, INC.

*5500 NW 21st Terrace, Hanger 1E, P.O. Box 1, FT. Lauderdale, Fl 33309*
(954) 776-1802 Phone (954) 772-8056 Fax

*May 15th, 1997*

### AIRCRAFT SALES COMMISSION AGREEMENT

*This document when accepted and signed below by both parties constitutes an Exclusive Sales agreement between **Skyknight Air Services/Brian Kilcullen and Patco, Inc./Patrick Grasch.***

*This agreement authorizes  Patco, Inc. to sell the described aircraft below:*

*1979 Merlin IIIB*
*Serial Number T-294*
*N802ME*

*The agreed net price to Skyknight Air Services when aircraft is sold is **$495,000.**  Aircraft will be delivered with all Avionics and Logbooks with free and clear title with no liens or encumbrances.*

*The agreement time frame is open and can be cancelled at any time by Skyknight Air Services.*

**Seller:** _____ Date 5-15-97 .
**SkyKnight Air Services**
**Brian Kilcullen**

**Broker:** _____ Date 5-15-97 .
**Patco, Inc.**
**Patrick Grasch**

AIRCRAFT PURCHASE AGREEMENT

PURCHASER: Mike Eberle          SELLER: Peter Le
                                OWNER REPRESENTATIVE

ADDRESS: 2125 El Camino Real    ADDRESS: 5500 NW 21st Terrace Hanger 12
         Oceanside, CA 92054              Ft. Lauderdale FL 33309

PHONE: 619-966-0906             PHONE: 954-776-1802

I, the undersigned Purchaser, hereby enter my order for the aircraft described below with the above named Seller. My deposit of $ 50,000.00 is to be applied against the total purchase price. I understand that I must complete the full payment for the aircraft by ~Completion of Coo Purchase~ in order to complete this purchase. Purchaser and Seller agree that FULL PAYMENT for the aircraft shall be made by the purchaser upon Seller's delivery of all documents required for Purchaser to obtain " FREE AND CLEAR TITLE " to the aircraft prior to delivery of the aircraft which shall occur no later than the date specified above. Further, it is agreed that this aircraft is being sold on an " AS IS, WHERE IS BASIS, WITH NO WARRANTIES EXPRESSED OR IMPLIED OF MERCHANTABILITY OR OTHERWISE AS TO THE CONDITION OF THE AIRCRAFT, ENGINE ACCESSORIES, OR ASSOCIATED LOGBOOKS AND RECORDS."

AIRCRAFT MAKE & MODEL: Merlin IIIB          SERIAL NO: T-294

REGISTRATION NO: N 802 ME

SPECIAL TERMS & CONDITIONS: Purchase is predicated on a pre buy inspection at the sole expense of buyer. Complete log book and records all radios including limited to de-ice and anti icing. No damage history - Times calculated to of airplane To be current.

SALES PRICE:              $ 550,000.00          OUT OF STATE
DELIVERY COST, GAS & OIL: $                      SALE
STATE & LOCAL TAX:        $
MISCELLANEOUS COST:       $
   TOTAL PURCHASE PRICE:  $ 550,000.00
DEPOSIT CREDIT:           ($ 50,000.00    )
BALANCE DUE:              $ 500,000.00

DATED: 6-18-97                          11:30 am
                                 PURCHASER:

DATED: 6-20-97
                                 SELLER:
                          OWNER REPRESENTATIVE

NOTE: AVIONICS INSTALL SUBJECT TO 2/3 WEEKS INSTALL PS
BUYER OPTION TO PURCHASE "AS IS WHERE IS" W/O AVIO
INSTALL, ALONG WITH $5,000.00 DISCOUNT
                        (FIVE)                    Exhibit "D"

Global Exh. 6 ID
3-26-98   55

06/23/1997  18:21 ` 9547728056                    PATCOJM                              PAGE  01

305-621-2153

# PATCO, INC.

*5500 NW 21st Terrace, Hanger 1E, P.O. Box 1, FT. Lauderdale, Fl 33309*
*(954) 776-1802 Phone (954) 772-8056 Fax*

*6-24-97*

*To:   E.G.G. Dyna Trend*
      *U.S. Customs*

*Attn:   Jerry Hawkins*

*Ref:   N802ME, 1979 Merlin IIIB, SN T-294*
       *Lien information.*

*Following (8) pages include the following:*

*A.      Elizarda C.D. Dos Santos, Security agreement, FAA recording, Bill of sale.*
*B.      C.L.Z. Corporation  Security agreement, FAA recording, Bill of sale.*

*This information is being sent to you for your immediate attention.  We are in the process
of selling aircraft and these liens are still showing active.  We know that when U.S.
Customs sells aircraft all liens are cleared¹*

*SkyKnight Air Services/Brian Kilcullen has asked me to send you this information.  We
are working with Insured Aircraft Title Services (Escrow agent Leda Francis, 1-800-
654-4882).*

*We need your assistance with this matter to clear all liens, and time is of the essence.*

*Please contact myself for assistance on this matter>*

*Patrick A. Grasch*
*President/ Patco, Inc.*
*Representative for SkyKnight Air Services*

*Sincerely,*

*Patrick A. Grasch*
*President*
*954-776-1802 Phone*
*954-772-8056 Fax*

EGG000020

AO 108 (2/90) Application for Seizure Warrant

# United States District Court

SOUTHERN _____ DISTRICT OF _____ FLORIDA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

Aircraft log books and avionics equipment belonging to Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration number N802ME, Serial Number T294.

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

CASE NUMBER: 97-4762-SNOW

I, __MICHAEL CONSAVAGE__ _____ being duly sworn depose and say:

I am a(n) __U.S. CUSTOMS SERVICE SPECIAL AGENT__ _____ and have reason to believe
                                    Official Title

that in the ___SOUTHERN_____ District of ____FLORIDA_____
there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)
Aircraft log books and avionics equipment belonging to Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration number N802ME, Serial Number T294.
which is (state one or more bases for seizure under the United States Code)

the proceeds of cocaine trafficking activities

concerning a violation of Title ___21_____ United States Code, Section(s) _841(1)(1), 846, 848, 963_
The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT

DEFENDANT'S
EXHIBIT NO. 2 8
FOR IDENTIFICATION
DATE 7/1/98   RPTR:

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

Signature of Affiant   MICHAEL CONSAVAGE
S/A U.S. CUSTOMS

Sworn to before me, and subscribed in my presence

July 3, 1997
Date

at _Fort Lauderdale, FL_
   City and State

Signature of Judicial Officer

Name and Title of Judicial Officer  LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT

1)   I MICHAEL CONSAVAGE, hereinafter referred to as the Affiant being duly sworn, depose and say:

2)   That I have been a Criminal Investigator/Special Agent commissioned by the United States Customs Service, Department of Treasury and am employed by the above since April 1970. Prior to becoming a Special Agent, I was employed in various other capacities with the United States Customs Service from 1961 to 1970.  As a Special Agent of the United States Customs Service, I specialize in the investigation of violations of Titles 18, 19, and 21 of the United States Code,  specifically, money laundering, and the smuggling of narcotics, dangerous drugs and other contraband prohibited by law, into the United States. I have received specialized narcotics interdiction and money laundering training at the federal Law Enforcement Training Center located in Glynco, Georgia.  As a Criminal investigator/Special Agent with the United States Customs Service, I have gained experience and training and I know that:

A)   Individuals dealing in illegal controlled substances profit from the sale and attempt to legitimize those profits through the purchase of property and or assets.  Individuals utilize fictitious names or aliases, business records, foreign and domestic banks, securities, cashiers checks, money drafts and letters of credit, brokerage houses, real estate, shell corporations and business fronts.

B) These individuals often transfer and/or sell the property to other aliases, persons and/or businesses, to which they are associated, so as to maintain control of the property and/or asset.

3)   Affiant believes that there is probable cause to believe that the members of this organization (an illegal narcotics smuggling and money laundering organization controlled by Jimmie Norjay Ellard and Rodney Matthews), both known and unknown engaged in the illegal importation of narcotics into the United States and the subsequent laundering of monies gained from the profits of those illegal activities with the purchase of:

A Twin Engine, Turbo Propeller, Swearingin, SA-226T
Merlin III Aircraft, Registration number N802ME,
Serial Number T294, blue and white
in color, and last registered to PAS Equipment, Inc.
1800 4th Ave. North, Lake Worth, Florida, together
with its equipment, including log books and avionics
equipment.

4)   The Affiant states that the facts which establish probable cause necessary for seizing the aircraft described in paragraph three are as follows:

5)   From approximately September 1985 through approximately August 1990, Rodney Norris Matthews operated a Continuing Criminal Enterprise (CCE) engaged in the importation and distribution of cocaine. During much of that period, Matthews's partner was an individual by the name of Jimmie Norjay Ellard. Matthews and Ellard were responsible for successfully importing

2

SENT BY:CORAL GABLES,FLA.   : 7-18-97 ; 1:15PM ;JOEL HIRSCHHORN P.A.→   954 772 6996;# 4

an amount of cocaine estimated at more than 50,000 pounds.  The Matthews--Ellard organization used small, private aircraft to fly the cocaine from clandestine airstrips in Colombia to South Florida.

6)    From approximately 1987 through early 1990, Ellard and Matthews engaged in a number of business transactions which involved the transfer of valuable property.  Those transactions involved at least three airplanes and a valuable Montana ranch.  All of the property represented the proceeds of narcotics trafficking.

7)    From 1985 until his arrest on March 1, 1990, Ellard had no legitimate source of income; however, he earned millions of dollars from cocaine trafficking.  During that same period, Ellard was a fugitive on a Texas marijuana charge.  Matthews was aware of Ellard's fugitive status and financed Ellard's flight from Texas to the country of Colombia to avoid prosecution in Texas.

8)    Ellard originally served as a smuggling pilot for Matthews.  However, Ellard eventually rose to become the transportation coordinator for the smuggling operation.  Matthews was in charge of security for the operation and flew counter surveillance as the smuggling aircraft returned to South Florida.

3

9)   During the summer of 1989, Ellard became aware that he was being investigated by authorities.   In February 1989, the United States Customs Service (Customs) seized two airplanes from Ellard in Midland, Texas.   In May 1989, Customs seized two more airplanes from Ellard in Fort Lauderdale, Florida.   During this same period of time, Ellard began to liquidate many of his assets, all of which were narcotics proceeds.

10)   On December 13, 1988, Ellard purchased a Merlin III B aircraft, then bearing the registration number N800TA.   Ellard paid $715,875.46 for the aircraft and utilized wire transfers of funds from banks in Central America and South America to effect the purchase.   All of the funds represented the proceeds of Ellard's cocaine trafficking activities.   After the purchase, Ellard registered the airplane under a fictitious name.

11)   After Customs seized the two airplanes from Ellard in February 1989, Ellard moved aircraft N800TA to Mexico to avoid its possible seizure.   Ellard later moved the airplane from Mexico to Jamaica and eventually to Venezuela.

12)   In August 1989, Matthews began to negotiate the purchase of aircraft N800TA from Ellard.   Matthews travelled to Venezuela to inspect the airplane and eventually agreed to purchase it for $500,000.00 in United States currency.   The transaction took place at a Miami hotel.   Ellard, Matthews and Steve Huntley, an

4

Ellard operative, were present for the transaction.[1] After purchasing aircraft N800TA, Matthews changed the registration number to N802ME.

13) On about October 31, 1991, Customs executed a seizure warrant on aircraft N802ME (formerly N800TA) and seized the aircraft as narcotics proceeds. The aircraft was seized from Matthews' hangar at Fort Lauderdale Executive Airport. At the time of the seizure the avionics equipment and aircraft log books had been removed from the aircraft.

14) In December 1991, Ellard pleaded guilty to cocaine trafficking and money laundering charges which stemmed from his relationship with Matthews.

15) In May 1992, Matthews was indicted on cocaine trafficking charges in the Southern District of Florida. In September 1992, Matthews' indictment was superseded. The superseding indictment charged Matthews with operating a CCE and named aircraft N802ME in the forfeiture counts of the indictment.

16) In December 1993, following a jury trial, Matthews was convicted of operating a CCE. The jury returned a forfeiture verdict which included a judgement of $169,200,000.00 against Matthews. In April 1994 Matthews was sentenced to life imprisonment. A final forfeiture order included aircraft N802ME.

---

[1]Ellard and Huntley cooperated in the investigation and prosecution of Matthews, which included the seizure and forfeiture of aircraft N802ME. Matthews confirmed details of the aircraft transaction during his trial testimony.

17) After aircraft N802ME was forfeited to the United States, the Drug Enforcement Administration (DEA) inspected the aircraft and considered taking possession of it for use in DEA air operations. DEA examined the aircraft and found it to be in good condition. However, DEA also noted that the aircraft was missing avionics equipment, the air frame log books and all engine log books after 1984. The absence of the log books and avionics equipment meant that DEA would have had to have spent a prohibitive sum of money to make the aircraft airworthy. DEA estimated that aircraft N802ME was worth an estimated $236,000.00 absent the avionics equipment and logbooks. DEA further estimated that it would cost $444,000.00 to make the aircraft airworthy in the absence of the log books and avionics equipment. Accordingly, DEA estimated that the aircraft had a value of $680,000.00 with the logbooks and avionics equipment present. Due to the absence of the log books, DEA declined to utilize aircraft N802ME. Therefore, the aircraft was put up for sale at auction.

18) On or about April 30, 1997, aircraft N802ME was sold at a Customs auction. The aircraft was sold "as is" and lacked the logbooks and avionics equipment. The aircraft was purchased for $365,000.00 by Brian Kilcullen of Sky Knight Air Services, Inc., P.O. Box 11616, 2685 NW 56 Street, Fort Lauderdale, Florida 33309. DEA Air personnel familiar with aircraft N802ME believe

6

that Kilcullen paid an exorbitant price for the aircraft absent the log books and avionics equipment.

19)   Mr. Roy Butler, President of Capitol Beverage Company, Austin, Texas, had been interested in purchasing aircraft N802ME at the Customs auction.  Butler has stated that he sent two of his company pilots to inspect the aircraft prior to the auction. Butler has further stated that his pilots advised him that the aircraft was missing both its log books and avionics equipment. Absent the log books and avionics, Butler estimated that it would require an investment of approximately $405,000 in aircraft N802ME before an Air Worthiness Certificate could be obtained from the Federal Aviation Administration.

20)   Approximately one week after the Customs auction, Kilkullen offered to sell aircraft N802ME to Butler for $495,000. According to Butler, Kilkullen explained the $130,000 mark up in the price by stating that the aircraft radios and logbook had "mysteriously" appeared.  Butler reported the incident to the U.S. Customs Office of Internal Affairs.  Customs Internal Affairs then contacted Kilcullen by telephone and asked about the sudden appearance of the log books and avionics equipment pertaining to aircraft N802ME.  Kilcullen confirmed to Internal Affairs that he had obtained the log books and avionics equipment for aircraft N802ME.  Kilcullen added that he did not feel that he had done anything wrong; however, he refused to discuss his

7

SENT BY:CORAL GABLES,FLA.   : 7-18-97 : 1:18PM : JOEL HIRSCHHORN P.A.→   954 772 6996;# 9

acquisition of the log books and avionics unless he was given immunity.

21)   Your affiant has confirmed with the Drug Enforcement Administration that log books and avionics equipment for N802ME have a total value estimated at several hundred thousand dollars when used to enhance the value of aircraft N802ME.

22)   A check of records indicated that on June 29, 1989, Kilcullen and a companion pleaded guilty to possession of a small amount of marijuana in the Cayman Islands.  The marijuana was discovered on board a private aircraft occupied by Kilcullen and his companion following an aborted air drop of marijuana. Kilcullen was fined and deported from the Cayman Islands.  The aircraft was forfeited to Cayman Island authorities.

23.   The records check further revealed that on August 2, 1990, DEA and Customs seized $10,707.00 in United States currency from Kilcullen as he crossed the Border from Canada to Detroit, Michigan.  The money was concealed among clothing in various bags in Kilcullen's possession.  A canine unit alerted to the presence of narcotics odors on a package of currency removed from Kilcullen's bags.  The canine did not respond to control packages which were placed in the same area.

21)   The aircraft log books and avionics equipment related to aircraft N802ME represent the proceeds of narcotics trafficking activity.  The maintenance and alterations performed on the aircraft during its ownership by Ellard and Matthews, which will

8

be reflected in the log books, were paid for with narcotics proceeds.   The avionics equipment also constitute assets which were purchased with narcotics proceeds.   Further, the log books and avionics equipment are part of the equipment of aircraft N802ME, which constituted narcotics proceeds.

FURTHER AFFIANT SAYETH NAUGHT.

MICHAEL CONSAVAGE, SPECIAL AGENT
U.S. CUSTOMS SERVICE

Sworn and subscribed
to before me this 3rd day
of July, 1997.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

9

*SkyKnight*
*Air Services, Inc.*

July 7, 1997

Mr. Jack Devaney
Department of Internal Affairs
UNITED STATES CUSTOMS SERVICE
499 NW 70th Ave
Plantation, FL 33317      Fax: 954/327-6150

Dear Sir:

This letter is to clarify SkyKnight Air's position regarding
N802ME.

I, Brian Kilcullen, attended the U.S. Customs' Service auction on
April 30, 1997, run by E.G.&G. Dynatrend.  N802ME was offered for
sale "where is, as is" with some avionics and log books missing.  It
was represented by the U.S. Customs Service/E.G.& G. Dynatrend to be
sold with 'free and clear title.'  As per the government's own rules,
SkyKnight attended the auction with $25,000 minimum deposit, and upon
being the highest bidder paid the amount remaining and took delivery
of the aircraft and equipment from John Dent at the Opa-Locka
airport.

By signing the auction contract SkyKnight entered into a con-
tractual agreement which was initiated by the acceptance of the
minimum deposit and consummated by the purchase and delivery.  All
this in order, (1) 'free and clear title' still has not been
provided; (2) A recent phone call from Agent Jack Devaney, USCS
Internal Affairs, indicated concern for the missing avionics and
log books.

I want to resolve the above two points, which interfere with my
ability to conduct business.

1.  Free and clear title.  Since the purchase of this
    aircraft, it has come to my attention that there
    remains two outstanding liens, not mentioned in the
    seizure document.  I was told by USCS that both these
    liens are invalid or overshadowed by the original
    seizure.  Unfortunately, this matter is not clearly
    stated and is therefore a problem for financial
    institutions and title companies.  A letter to SkyKnight
    Air stating these facts regarding the liens could clear
    up this matter and seems, therefore, necessary, in order
    to satisfy the contractual representation of 'free and
    clear title.'

P. O. Box 11616, Fort Lauderdale, Florida 33339 • (305) 772-0200

- 2 -

2.   <u>Concern by USCS as to the source of the missing
     radios and equipment.</u>  SkyKnight purchased the
     aircraft.  'By Law' any radios and/or books relating to
     the aircraft's history becomes the property of the
     registered owner; in this case, SkyKnight Air.  How I
     came to possess this equipment should only be of concern
     to the U.S. government <u>if</u> a law affecting the transaction
     was violated.  This is <u>not</u> the case.

In the first conversation with Jack Devaney I offered to assist him
with the information he sought.  However, to protect my interest in
this matter, I asked to receive a letter stating that SkyKnight Air
is and would remain the rightful owner of the aircraft and
equipment, having violated no law.  It now seems, however, that the
U.S. Government wants to seize this equipment.

If you wish my assistance in this matter, as Agent Devaney
indicated, then please give me the assurance I seek.  It is
baffling that you are jeopardizing my business and violating my
civil rights by demanding information and materials that are
personal and private.  There is documentation to support my
position and I am confident of my legal standing.

I wish to resolve this matter promptly, since there is a sale
pending on this aircraft.  Please send a letter releasing the liens
previously stated, and a second letter assuring me that the
aircraft and equipment that belongs to the aircraft is rightfully
mine, as stated by law.

Copies: U.S. Attorney's Office
        EG & G Dynatrend

Sincerely,

Brian Kilcullen
President



July 15, 1997

SEIZURE WARRANT RESPONSE:

Case no# 97-4762-510000

Items:

Logbooks for Merlin N802ME:   Original Airframe Books   @2
                              Original Engine Books     @4
                              Propeller Books           @2
                              (All good condition)

Avionics for Merlin N802ME:   Collins 562C-8F   Ser# 2316
                              "       328A-3G    Ser# 9124, 3786   @2
                              "       590A-3JI   Ser# 341
                              "       VHF-20     Ser# 9299
                              "       VIR-30     Ser# 9708, 9880   @2
                              "       APA-80A    Ser# 521
                              "       APC-80     Ser# 297
                              "       FGC-80A    Ser# 48
                              "       TDR-90     Ser# 5697, 5757   @2
                              "       DME-40     Ser# 6199
                              Northstar M-1     Ser# 15819
                              RCA Nav-Data      Ser# 1070
                              Baker Chime       Ser# 781011
                              Flite-Tronics     Ser# 112
                              (All in Excellent Condition and working order)

"UNDER PROTEST"   _____  Brian Kilcullen
                                     President

Received by: _____  #735

                                P71

                                154/

                                WITNESS  7/15/97

2 . 2 Box 11616 Fort Lauderdale, Florida 33339 • (305) 772-0200

# United States District Court

## SOUTHERN DISTRICT OF FLORIDA

TO:  BRIAN ANTHONY KILCULLEN/Sky Knight Air Services, Inc.
1208 Seminole Street

Fort Lauderdale, FL

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

FGJ  97-02

SUBPOENA FOR:
☒ PERSON   ☐ DOCUMENTS OR OBJECT{S}

**YOU ARE HEREBY COMMANDED** to appear and testify before the Grand Jury of the United States District Court at the place, date and time specified below.

| PLACE | ROOM |
|---|---|
| United States District Court<br>299 East Broward Boulevard<br>Fort Lauderdale, Florida 33301 | 140 |

| | DATE AND TIME<br>July 17, 1997<br>9:00 a.m. |
|---|---|

**YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):*

1. Any and all original aircraft log books pertaining to Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Serial Number T294, Bearing FAA Registration Number N802ME. This includes all log books for the engines, propellers and air frame for the above-described aircraft.
2. Any and all documents, including contracts, memoranda, offers, specification sheets and correspondence pertaining to the sale, attempted sale, of offer for sale of Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Serial Number T294, Bearing FAA Registration Number N802ME during the period of April 30, 1997 through July 11, 1997.

☐  Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | | DATE<br>July 11, 1997 |
|---|---|---|
| (BY) DEPUTY CLERK | | |

| This subpoena is issued upon application<br>of the United States of America | Name, Address and Phone Number of Assistant U.S. Attorney<br>Terrence Thompson<br>Assistant United States Attorney<br>299 E. Broward Boulevard<br>Fort Lauderdale, FL 33301<br>954/356-7255 |
|---|---|

*If not applicable, enter "none."          To be used in lieu of AO110          FORM ORD-227
JAN.86

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



FILED by _____ D.C.

JUL 3 0 1997

CAMIOS JUENAE
CLEIK U.S. DIST. CT.
S.C. OF FLA. FT LAUD.

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 97-4762-SNOW |
| SEIZURE OF THE FOLLOWING PROPERTY | : | |
| | : | |
| AIRCRAFT LOG BOOKS AND AVIONICS EQUIPMENT BELONGING TO TWIN ENGINE, SWEARINGIN, SA-226T MERLIN III AIRCRAFT, REGISTRATION NUMBER N802ME, SERIAL NUMBER T294 | : : : | **O R D E R** |

THIS CAUSE is before the Court on Claimant, Brian Kilcullen's Emergency Motion for Relief from Seizure Order. Being fully advised, it is hereby

ORDERED AND ADJUDGED that the motion is DENIED without prejudice. Pursuant to the procedures implemented in this District, when no indictment has been filed, the claimant who seeks return of property must do so by a separate civil lawsuit.

DONE AND ORDERED at Fort Lauderdale, Florida, this 30th day of July, 1997.

LURANA S. SNOW
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Terrene Thompson (FTL)
Joel Hirschhorn, Esq.

# ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN, P.A.

### ATTORNEYS AT LAW

LAWYERS PLAZA · FOURTH FLOOR
2250 SOUTHWEST THIRD AVENUE
MIAMI, FLORIDA 33129-2095

FREDERICK S. ROBBINS
WILLIAM R. TUNKEY
ALAN S. ROSS
ROBERT O. AMSEL
DAVID RABEN
BENJAMIN S. WAXMAN
MARCO A. VAZQUEZ (1908-1995)
ALAN L. QUILES

TELEPHONES (24 HOURS)
DADE COUNTY (305) 858-9550
BROWARD COUNTY (954) 322-8244
WATS (800) 226-9550
FACSIMILE (305) 858-7491

July 16, 1997

**Via facsimile transmission to:**
**(954) 772-8056**

Patrick Grasch
Patco Inc.
5500 N.W. 21st Terrace
Hanger 1E
Ft. Lauderdale, Florida 32309

Re:     Sale of Merlin III B to Mike Eberle

Dear Pat:

This letter is to formally apprise you of Mike's position regarding the delay in sale occasioned by the seller turning over the logbooks and avionics to Customs. As you know, you signed the Aircraft Purchase Agreement on June 20, 1997, on behalf of the seller. Mike immediately arranged to deposit $50,000.00 in an escrow account as required by the agreement. That deposit was confirmed the following day. At that time, it was understood that the transaction would be completed by June 30th. Accordingly, Mike arranged for a letter of credit for the balance of the purchase price. When it appeared there would be a short delay, he had the letter of credit extended through July 15th. In reliance upon the Aircraft Purchase Agreement, Mike flew his mechanic to Fort Lauderdale and paid for him to inspect the plane. He also purchased an insurance binder.

I have reviewed your letter to Mike dated July 15th. It now appears that the seller contemplates delaying the sale indefinitely. This is unacceptable to Mike. Although you certainly had no control over Customs obtaining a warrant for the logbooks and avionics, from the limited information we have, it does not appear that this matter was handled properly. You had notice that the warrant was issued (or was about to be issued) more than a week before it was served. This was certainly time enough to determine the purpose of the Customs investigation and to negotiate an arrangement that would not have frustrated the sale of the plane. Also, it does not make sense that you responded to the warrant without the direct assistance and presence of the seller's attorney. More fundamentally, I do not understand why, on the one hand, the government sold the plane to Brian following the order of

*G[obal Ex. #15*

*5/29/98*
*Eberle Depo*

PATCO 000023

Patrick Grasch
Page 2
July 16, 1997

forfeiture, and on the other hand, it is now undermining that sale and preventing Brian from exercising his title rights by the FAA not certifying clear title and by Customs seizing the logbooks and avionics. Given, particularly, your refusal to put me in touch with the seller's attorney so I could directly monitor the status of the property which Mike has contracted to purchase, I have significant concerns whether your dealings with the government have been undertaken in good faith and in a manner that adequately protects Mike's interests.

Be this as it may, Mike continues to be willing, ready, and able to proceed with the sale pursuant to the Aircraft Purchase Agreement. It is my understanding that you have retained copies of the logbooks. This is adequate for Mike's purposes. Additionally, I understand that you are able to obtain replacement black boxes to install in the airplane to make it ready for sale. This should be done. Finally, it continues to be your obligation to clear any cloud on the title of the plane. As you know, Mike is willing to accept the plane with an adequate policy of title insurance. It is my understanding that this is commercially available. It is your obligation to procure this insurance.

You are aware that at the time Mike contracted to purchase your Merlin III B, he was involved in negotiations to purchase a different plane which, as a result of your contract, he abandoned. Mike runs several substantial businesses for which he intended to put the plane in service. In addition to Mike's out-of-pocket costs referenced above, the further delay in this sale threatens to put Mike out thousands of dollars in expenses necessary to address his current business travel needs. Your delay in this sale is directly responsible for these expenses.

Mike is willing to briefly delay seeking his legal remedies if he adequately can be assured that his interest in the plane is being protected. To that end, I again request the name of the seller's attorney and/or the names and telephone numbers of the Customs agents with the logs and equipment so that we can monitor their status and gauge the timing of the impending sale. Additionally, I would like a copy of the warrant and supporting affidavit. As I have explained, Mike has a significant interest in Customs releasing the logbooks and avionics as expeditiously as possible so that the sale can be consummated. Obviously, I would not do anything to interfere with Brian's compliance with Customs' demands. On the other hand, further delays in the sale of the plane are costing Mike thousands of dollars. He is entitled to have his interests protected.

If you cannot comply with this simple, reasonable request, Mike will have no choice but to cancel his contract and seek damages from you and Brian Kilcullen. If we do not hear from you with the information I have requested within the next 48 hours, I will file a lawsuit to enforce Mike's rights. If you cannot get in touch with me, feel free to contact Mike. We hope to hear from you soon.

Sincerely,

Benjamin S. Waxman

BSW/jem
cc: Mike Eberle

PATCO 000024

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN, P.A.
ATTORNEYS AT LAW

LAWYERS PLAZA · FOURTH FLOOR

2250 SOUTHWEST THIRD AVENUE

MIAMI, FLORIDA 33129-2095

FREDERICK S. ROBBINS
WILLIAM R. TUNKEY
ALAN S. ROSS
ROBERT O. AMSEL
DAVID RABEN
BENJAMIN S. WAXMAN
MARCO A. VAZQUEZ (1968-1995)
ALAN L. QUILES

TELEPHONES (24 HOURS)
DADE COUNTY (305) 858-9550
BROWARD COUNTY (954) 522-8244
WATS (800) 226-9550
FACSIMILE (305) 858-7491

July 23, 1997

RECEIVED

JUL 24 1997

JOEL HIRSCHHORN, P.A.

**Via facsimile transmission to:**
**(305) 446-1766**

Joel Hirschhorn, Esquire
Douglas Centre Penthouse 1
2600 Douglas Road
Coral Gables, Florida 33134-6134

Re:     Sale of Merlin III B to Mike Eberle

Dear Joel:

By this letter my client is formally demanding compliance with the Aircraft Purchase Agreement entered by Mr. Patrick A. Grasch on behalf of your client, Brian Kilcullen, on June 20, 1997, for the sale of the above-referenced airplane. Mr. Eberle has fully executed all aspects of the contract including placing $50,000.00 in escrow, inspecting the aircraft, obtaining a letter of credit for the balance of the purchase price, and procuring insurance for the aircraft. As you know, it was originally contemplated that the sale would occur on or before June 30th. Subsequently, Mr. Eberle secured an extension on his letter of credit through July 15th. Obviously, we are now more than one week beyond the July 15th date.

Your client has failed to comply with the terms of the agreement. He has failed to deliver all documents to Mr. Eberle which are necessary to obtain a free and clear title. In particular, he has failed to deliver those documents necessary from the FAA. Additionally, he has failed to make the aircraft, together with all avionics and logbooks which were contemplated by the Aircraft Purchase Agreement, available to Mr. Eberle.

Mr. Eberle has sustained, and continues to sustain, substantial losses as a result of your client's failure to comply. Full compliance is hereby demanded immediately. Failure to ready the plane for immediate delivery will result in my client seeking any and all legal remedies against your client, Patrick Grosch, and PATCO, Inc.

Sincerely,

Benjamin Wo

Benjamin S. Waxman

BSW/jem
cc:     Mike Eberle
        Patrick Grasch

Global Exh 9 (10)
3-26-98  SS

Exhibit "E"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 97-3765-CIV-GRAHAM

SKY KNIGHT AIR SERVICES, INC.,

Plaintiff,

vs.                                                    **ORDER**

EG&G INC., et al.,

Defendants.

_____/

**THIS CAUSE** came before the Court upon Defendants' Motion To Stay Discovery.

**THE COURT** has considered the Motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** that the Motion is DENIED.  It is further,

**ORDERED AND ADJUDGED** that in accordance with the Court's scheduling order, which will be issued in the near future, Motions To Dismiss do not stay discovery.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of January 1998.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:   Magistrate Judge
      Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

SKY KNIGHT AIR SERVICES, INC.,  )      CASE NO.  97-3765 CIV-GRAHAM
a Florida corporation,                        )
                                                       )
        Plaintiff,                                  )
                                                       )
vs.                                                  )      **EG&G DYNATREND, INC.'S**
                                                       )      **NOTICE OF SERVING**
EG&G, INC., a Massachusetts corporation,)      **ANSWERS TO INTERROGATORIES**
and its subsidiary EG&G DYNATREND, )
INC., a Virginia corporation,                )
                                                       )
        Defendants.                            )
_____)

EG&G DYNATREND, INC., by and through undersigned counsel, and pursuant to Rule

26.1.G., Local Rules of the United States District Court for the Southern District of Florida, hereby

serves its Answers to the Plaintiff, SKY KNIGHT AIR SERVICES, INC.'s ("SKY KNIGHT") First

Set of Interrogatories.

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by

regular U.S. Mail this ___ day of February, 1998, upon Brian H. Bieber, Esquire, JOEL

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

HIRSCHHORN, P.A., 2600 Douglas Road, Coral Gables, Florida 33134, Attorneys for Plaintiff,

SKY KNIGHT AIR SERVICES, INC.

**ROLLNICK & LINDEN, P.A.**
Attorneys for Defendants, EG&G, INC. and
EG&G DYNATREND, INC.
133 Sevilla
Coral Gables, Florida 33134
Telephone No: (305) 444-7800
Facsimile No: (305) 444-3683

By:_____
    **NEIL P. LINDEN**
    Florida Bar No.  174589
    **STACY E. BERCUN**
    Florida Bar No. 022462

-2-

W:\11022\7001\PLD Notice of Serv. InterrSEB.WPD

**Rollnick & Linden, P.A.**

## ANSWERS TO INTERROGATORIES

1.    State the full name, complete current address and telephone number of all persons answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed.

Jerry L. Hawkins,
District Manager EG&G Dynatrend, Inc.
1173 NW 159 Drive
Miami, Florida
Phone No: 621-5136

2.    State the full name, complete current address and telephone number of all persons to whom you have made verbal or written statements regarding the subject matter of this lawsuit.

John R. Dent
EG&G Dynatrend, Inc.
1173 NW 159 Drive
Miami, Florida
Phone No: 621-5136

Gary Poulsen
1173 NW 159 Drive
Miami, Florida
Phone No: 621-2306

Clayton I. Gamber
Miami Aviation Corporation
14980 NW 44 Court
Opa-Locka, Florida
Phone No: 688-0511

Mike Consavage
United States Custom Service
Phone No: 327-6100

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

Robert Deltoro
United States Custom Service
Phone No: 597-4850


Dave Webb
EG&G, INC.

John A. Shetterly
EG&G, INC.
45 William Street
Wellesley, MA 02181
Phone No: (781) 437-4137

Timothy D. O'Toole
EG&G DYNATREND, INC.
3702 Pender Drive, Suite 400
Fairfax, VA 22030
Phone No: (703) 273-3441

Ignacio E. Arango, Esquire
ROLLNICK & LINDEN, P.A.
133 Sevilla
Coral Gables, FL 33134
Phone No: (305) 444-7800

Neil P. Linden, Esquire
ROLLNICK & LINDEN, P.A.
133 Sevilla
Coral Gables, FL 33134
Phone No: (305) 444-7800

-2-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

3.    State the full name, complete current address and telephone number of all persons who have knowledge of the facts, issues, allegations and circumstances surrounding this litigation; and specify the subject matter about which the witness has knowledge.

Jerry Hawkins - Mr. Hawkins has overall knowledge of the handling of the aircraft.

John Dent - Mr. Dent has overall knowledge of the handling of the aircraft.

Gary Poulsen - Mr. Poulsen handled the advertising and sale of the aircraft.

Clayton Gamber - Mr. Gamber has overall knowledge of the handling of the aircraft.

Mike Consavage - Mr. Consavage has been investigating the sale of this aircraft.

Robert Deltoro - Mr. Deltoro would oversee the actions taken in the handling of the aircraft and associated property.

Dave Webb - Mr. Webb has no direct knowledge of the aircraft. He has knowledge of the operations that take place under EG&G Dynatrend's contract with the U.S. Customs Service.

John A. Shetterly - Mr. Shetterly has knowledge of this litigation and overall knowledge of the handling of the aircraft.

Timothy D. O'Toole - Mr. O'Toole has knowledge of this litigation and overall knowledge of the handling of the aircraft.

4.    State the full name, complete current address and telephone number of all persons whom you and your attorneys intend to call as a witness at the trial of this cause and in detail and with particularity the subject matter of his or her anticipated testimony.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United

-3-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

States District Court for the Southern District of Florida.   Without waiving this objection, undetermined at this time as discovery has just commenced.

5.     Identify (or attach copies of) each and every document, matter or thing which each individual listed in response to #4 above will testify to, identify and/or has used or is anticipated will use in conjunction with or preparation for his or her testimony at trial.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida.   Additionally, this Interrogatory is vague, overbroad and calls for attorney-client and/or work-product privileged information and is not reasonably calculated to lead to the discovery of admissible evidence, pursuant to Rule 26(b)(1) Federal Rules of Civil Procedure. Without waiving these objections, undetermined at this time.

6.     State the opinions to which each individual in response to Interrogatory #4 will testify at the trial.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida.   Without waiving this objection, undetermined at this time.

7.     State in detail the facts upon which each such opinion as set forth in answer to Interrogatory #6 above is based and as to each such fact that is in any way relied upon by such person in arriving at his opinion state:

   (a)     The name and address of the person supplying such facts.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida.   Without waiving this objection, undetermined at this time.

-4-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

(b)     How or the form in which such facts were supplied to him/her.

objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida.   Without waiving this objection, undetermined at this time.

8.     Do you intend to call any expert witness at the trial of this case?  If so, state as to each such witness the name and business address of the witness, the witness' qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and a summary of the ground for each opinion.

Undetermined at this time.

9.     State the full name, complete current address, telephone number and relationship with the Defendants, of each and every person with knowledge of the location (at or before the time of said auction, located in Port Everglades, Broward County, Florida) and inventory of the avionics equipment and log books of the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida.  Without waiving this objection:

Jerry L. Hawkins,
District Manager EG&G Dynatrend, Inc.
1173 NW 159 Drive
Miami, FL

Gary Poulsen
1173 NW 159 Drive
Miami, Florida
Phone No: 621-2306

-5-

**Rollnick & Linden, P.A.**

Clayton I. Gamber
Miami Aviation Corporation
14980 NW 44 Court
Opa-Locka, Florida
Phone No: 688-0511

Larry Rissmiller
14980 NW 44 Court
Opa-Locka, FL
Phone No: 688-0511

Mark Wilkerson
DEA

Ben Dixion
DEA

Jim Morris
DEA

John R. Dent
1173 NW 159 Drive
Miami, FL
Phone No: 621-5136

10.     State the full name, complete current address, telephone number and relationship with the Defendant, of each and every person with knowledge of the advertisement for the auction of the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T2094.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Without waiving this objection:

Jerry L. Hawkins,
District Manager EG&G Dynatrend, Inc.
1173 NW 159 Drive
Miami, FL

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

Sandra Caceres
EG&G Dynatrend, Inc.
Senior Coordinator
Phone No: 621-5136

Gary Poulsen
Larry Latham Auctioneers
1173 NW 159 Drive
Miami, Florida
Phone No: 621-2306

Wendy Wilson
Phone No: (703) 351-7887

John R. Dent
EG&G Dynatrend, Inc.
1173 NW 159 Drive
Miami, FL
Phone No: 621-5136

11.    State the full name, complete current address, and telephone number of all persons, including but not limited to, agents/employees of Defendants, Miami Air Corporation, the Department of Treasury, and the Department of Justice who came in contact the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294 at any time following its seizure on October 31, 1991, in Lake Worth, Florida by the U.S. Customs Service.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Without waiving this objection:

Terrance C. Tompson
Assistant U.S. Attorney
Phone No: 356-7255

Gene Wilkerson
United States Customs Service

Mark Wilkerson
DEA
Phone No: (954) 359-6449

-7-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

Ben Dixon
DEA

Jim Morris
DEA

Gene Mapes
Unknown

John Roberts
Phone No: 245-0184

Loraine Zizzo
United States Customs Service

Jerry L. Hawkins,
District Manager EG&G Dynatrend, Inc.
1173 NW 159 Drive
Miami, FL
Phone No: 621-5136


Gary Poulsen
1173 NW 159 Drive
Miami, Florida
Phone No: 621-2306

John R. Dent
1173 NW 159 Drive
Miami, FL
Phone No: 621-5136


12.     State any and all Internal Affairs Investigations of the United States Customs Service related to aircraft maintained and auctioned by Defendant, including, but not limited to, the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294 between October 31, 1991 and the present, and the nature of these Investigations.

-8-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Without waiving this objection:

Mike Consavage
United States Customs Service
Internal Affairs
Phone No: 327-6100

13.    State any and all persons, including, but not limited to experts, agents/employees of Defendant, and agents/employees of the Department of Treasury, used to determine the one million ($1,000,000.00) dollar appraisal value of the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294 listed on the Custody Receipt for Retained or Seized Property dated October 31, 1991, and the process by which the one million ($1,000,000.00) dollar value was determined. (Attached hereto and incorporated herein by specific reference as Exhibit "A").

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Additionally, no exhibits were attached to the Plaintiff's First Set of Interrogatories. Without waiving this objection: Estimated by USCS Agent, Gene Wilkerson.

14.    State, specifically, any and all criteria, including, but not limited to, criminal history background checks, and conflict of interest determinations, used to ascertain which agents/employees of Defendant were to be permitted to have contact with the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294 while in Defendants' custody, possession or control.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Without waiving this objection: The United States Customs Service and the Miami Aviation Corporation determined what criteria was to be used

-9-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

to ascertain which agents/employees were permitted to have contact with the aircraft.

15.   List the total number of boxes of equipment, the contents of said boxes, and the chain of custody of said boxes for the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N8902ME, Serial Number T294 at all times between October 31, 1991 and the present.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. The disclosure of some of these documents are expressly prohibited, pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service. (See the Defendants Response to the Plaintiff's First Request for Production). Without waiving this objection:

4 Boxes of property removed from Aircraft.  Boxes contained removed avionics, misc. paperwork, two logbooks for engines from 1978-1984, airworthy certificates, oxygen mask, microphone headsets, lifevest, calculator, maglite flashlight.

16.   Describe specifically the process implemented in storing said boxes mentioned in Interrogatory #15.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Without waiving this objection:

The equipment and inventory are removed jointly between the United States Customs Service and Miami Aviation Corporation.

17.   Describe, specifically what the proper procedure that the agents/employees of Defendant are instructed to follow to be in compliance with the contract between Defendant and the Department of Treasury for the maintenance of the auctioned goods, and the conducting of the auctions themselves.

-10-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Without waiving this objection:

The sealed boxes are not opened for maintenance purposes. Upon a disposition to sell, the boxes are opened and evaluated for sale. Boxes are resealed with tape until public viewing. At public viewing all boxes are available for inspection along with the aircraft. After the viewing is completed, the boxes are resealed and stored in a locked room at Miami Aviation Corporation.

18.    List any and all present or former employees of Defendant including, but not limited to, executives, support staff, secretaries, and mechanics, who had any contact with, or performed work on the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294.

Objection, this Interrogatory is beyond the scope of Rule 26.1.G(2) of the Local Rules of the United States District Court for the Southern District of Florida. Without waiving this objection:

Gene Mapes - Unknown
Ben Dixion - DEA
Jim Morris - DEA
Mark Wilkerson - DEA (359-6449)
Larry Rissmiller - MAC (688-0511)
Clayton I. Gamber - MAC (688-0511)
Doug Miller - Unknown
John R. Dent (621-5136)

-11-

**Rollnick & Linden, P.A.**

CASE NO. 97-3765-CIV-GRAHAM

## AFFIDAVIT

STATE OF FLORIDA          )
                          )
COUNTY OF MIAMI-DADE      )

BEFORE ME, the undersigned authority, personally appeared _Jerry L. Hawkins_

as representative of EG&G DYNATREND, INC., who after being duly sworn, deposes and says that

he has reviewed and compiled the answers to Plaintiff's First Set of Interrogatories attached hereto

based on information provided to him and said answers are true to the best of his knowledge,

information and belief. _Jerry L. Hawkins_ is personally known to me or produced _N/A_

_Pr. Lie. Fl._ as identification, and did take an oath.

FURTHER AFFIANT SAYETH NAUGHT.

SWORN TO AND SUBSCRIBED before me this _6_ day of _February_, 1998.

ID FL DLH252-432-50-295
Exp 06-06-2001

**My Commission Expires:**



**Notary Public, State of Florida**

Rosario M Polanco
Miami Dade County
State of Florida

Rosario M Polanco
My Commission CC577783
Expires September 7, 2001

-12-

W:\11022\7001\PLD N SVC ANS TO INTERROG SE8.WPD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| SKY KNIGHT AIR SERVICES, INC., a Florida corporation,<br><br>Plaintiff,<br><br>vs.<br><br>EG&G, INC., a Massachusetts corporation, and its subsidiary EG&G DYNATREND, INC., a Virginia corporation,<br><br>Defendants. | CASE NO. 97-3765 CIV-GRAHAM<br><br>U.S. MAGISTRATE JUDGE: TURNOFF<br><br>**EG&G DYNATREND, INC.'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION** |

EG&G DYNATREND, INC., by and through their undersigned counsel, and pursuant to

Rule 26.1G of the Local Rules of the United States District for the Southern District of Florida,

responds to the Plaintiff's First Request for Production, and states:

1.      Objection.  The Plaintiff seeks:

any and all contracts, records, documents, correspondence, and communication between the Defendants and the U.S. Customs Service, regarding, relating, or referring to the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents

pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S.

Customs Service.  Pursuant to the terms of the Award Contract, any disclosure of these documents

could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641.

The requested documents can be obtained directly from the United States Customs Service.

**Rollnick & Linden, P.A.**

Exhibit "A"

CASE NO. 97-97-3765-CIV-GRAHAM

Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested.

2.      Objection.  The Plaintiff seeks:

> any and all contracts, records, documents, correspondence, and communication between Defendant, EG&G DYNATREND, INC. and Defendant, EG&G, INC., regarding, relating, or referring to the Twin Engine, Swearingin, SA-226T Merlin Aircraft, Registration Number N802ME, Serial Number T294.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service.   Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641.  Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested.

3.      Objection.  The Plaintiff seeks:

> any and all contracts, records, documents, correspondence, and communication between Defendants and the Department of Treasury, including, but not limited to, the United Customs Service, regarding, relating, or referring to the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service.   Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18

-2-

**Rollnick & Linden, P.A.**

CASE NO. 97-97-3765-CIV-GRAHAM

U.S.C.§641.  The requested documents can be obtained directly from the United States Customs Service.  Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested.

    4.    Objection.  The Plaintiff seeks:

> any and all contracts, records, documents, correspondence, and communication between Defendants and any sub-contractor, including, but no limited to, Miami Aviation Corporation, regarding, relating, or referring to the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service.   Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641.  The requested documents can be obtained directly from the United States Customs Service and/or Miami Aviation Corporation.  Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested.

    5.    Objection.  The Plaintiff seeks:

> any and all contracts, records, documents, correspondence, and communication between Defendants, and the Department of Treasury, including, but not limited to, the ninety-two million ($92,000.000.00) dollar award contract, regarding, relating, or referring to the maintenance of auctioned goods, and the conducting of the auctions themselves, from 1987 to the present.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S.

-3-

**Rollnick & Linden, P.A.**

CASE NO. 97-97-3765-CIV-GRAHAM

Customs Service.    Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641.   The requested documents can be obtained directly from the United States Customs Service.  Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested.

6.    Objection.  The Plaintiff seeks:

> any and all records, documents, correspondence, and communication, regarding, relating, or referring to any audits of the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294 performed by the Department of Treasury, including, but not limited to the United States Customs Service, and the General Accounting Office, from October 31, 1991 to the present.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service.   Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641.   The requested documents can be obtained directly from the United States Customs Service, General Accounting Office and Department of Treasury.  Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested.

7.    Objection.  The Plaintiff seeks:

> any and all records, documents, correspondence, and communication, including, but not limited to, photographs, regarding, relating, or referring to any inventory taken of the equipment of the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294

-4-

**Rollnick & Linden, P.A.**

CASE NO. 97-97-3765-CIV-GRAHAM

performed by Defendants, and/or, the United States Customs Service, from October 31, 1991 to the present.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service. Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641. The requested documents can be obtained directly from the United States Customs Service. Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested.

8.      Objection. The Plaintiff seeks:

        any and all photographs of the Twin Engine, Swearingin, SA-226T
        Merlin III Aircraft, Registration Number N802ME, Serial Number
        T294 taken from October 31, 1991 to the present.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service. Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641. The requested documents can be obtained directly from the United States Customs Service.

9.      Objection. The Plaintiff seeks:

        any and all contracts, records, documents, correspondence, and
        communication regarding, relating, or referring to any aircraft
        owned, prior to its seizure by the United States Customs Service
        and subsequent auction by Defendants, by the same person or

-5-

**Rollnick & Linden, P.A.**

CASE NO. 97-97-3765-CIV-GRAHAM

persons as the Twin Engine, Swearingin, SA-226T Merlin III Aircraft, Registration Number N802ME, Serial Number T294.

EG&G DYNATREND, INC. is expressly prohibited from producing these documents pursuant to the Award Contract entered into between EG&G DYNATREND, INC. and U.S. Customs Service.   Pursuant to the terms of the Award Contract, any disclosure of these documents could subject EG&G DYNATREND, INC. to criminal sanctions imposed by 18 U.S.C.§641. The requested documents can be obtained directly from the United States Customs Service.  Additionally, this request is overbroad, as it does not specify a time frame for which these documents are requested and pursuant to Rule 26(b)(1), Federal Rules of Civil Procedure is not calculated to lead to the discovery of admissible evidence.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by regular U.S. Mail this 6 day of February,1998, upon Joel Hirschhorn, Esquire and Brian H.

-6-

**Rollnick & Linden, P.A.**

CASE NO. 97-97-3765-CIV-GRAHAM

Bieber, Esquire, JOEL HIRSCHHORN, P.A., 2600 Douglas Road, Coral Gables, Florida 33134,

Attorneys for Plaintiff, SKY KNIGHT AIR SERVICES, INC.

**ROLLNICK & LINDEN, P.A.**
Attorneys for Defendants, EG&G, INC. and
EG&G DYNATREND, INC.
133 Sevilla
Coral Gables, Florida 33134
Telephone No: (305) 444-7800
Facsimile No: (305) 444-3683

By:_____
     **NEIL P. LINDEN**
     Florida Bar No. 174589
     **STACY E. BERCUN**
     Florida Bar No. 022462

-7-

**Rollnick & Linden, P.A.**

U.S. Department of Justice

United States Attorney

*Southern District of Florida*

*500 Australian Avenue, North, Suite 400*
*West Palm Beach, FL 33401*
*(561) 820-8711*

February 9, 1998

RECEIVED

FEB 1 2 1998

JOEL HIRSCHHORN, P.A.

Joel Hirschhorn, P.A.
2600 Douglas Road, Penthouse one
Coral Gables, Florida 33131

Re:  Sky Knight Air Service, Inc. v. EG&G Dyntrend, Inc.
     97-3765-CV-GRAHAM

Dear Mr. Hirschhorn:

      By copy of this letter I am instructing the United States
Customs Service to return all items seized from your client by
seizure warrant on July 15, 1997.  Please contact Michael Consavage
at your earliest convenience to make arrangements for return of the
log books and avionics.  Agent Consavage may be reached at 954-327-
6100.

                              Very truly yours,

                              THOMAS E. SCOTT
                              UNITED STATES ATTORNEY


                         BY:_____
                              Mark W. Lester
                              Assistant U.S. Attorney

c.c. United States Customs Service

ML/ml

# DEPARTMENT OF THE TREASURY

## U.S. CUSTOMS SERVICE
### OFFICE OF CHIEF COUNSEL

March 11, 1998

Re:   EG&G, Inc. adv. Sky Knight Air Services, Inc.,
      Federal Court Case No. 97-3765CIV-FERGUSON

To Whom it May Concern:

EG&G Dynatrend, Inc. ("EG&G") entered into a contract with the United States Customs Service ("Customs") to provide property management and disposal services which contract is presently in effect. EG&G is prohibited by the terms and conditions of the contract from releasing any documents generated by EG&G in performance of the contract or made available to EG&G by the government. The contract further provides that disclosure of any such information, by any means, for any unauthorized purpose may subject the offender to criminal sanctions imposed by 18 U.S.C. § 641.

Customs will review the requested documents and will make a decision as to which documents, if any, EG&G can produce. A privilege log will be provided for any documents for which a privilege is asserted.

Very truly yours,

U.S. Customs

*Barbara H. Vail*

BARBARA H. VAIL
Attorney

**NIGHT BOX**
**FILED**

APR 3 1998

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CARLOS JUENKE
CLERK, USDC / SDFL / FTL

| | |
|---|---|
| SKY NIGHT AIR SERVICES, INC., )<br>a Florida corporation, )<br>         Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>UNITED STATES CUSTOM SERVICE, )<br>and SAMUEL BANKS, )<br>COMMISSIONER of the UNITED )<br>STATES CUSTOM SERVICE, )<br>        Defendants. )<br>_____ ) | CASE NO. 97-7027-CIV-FERGUSON<br><br>MAGISTRATE JUDGE SNOW<br><br>**DECLARATION OF AUSA**<br>**TERRENCE J. THOMPSON IN**<br>**SUPPORT OF THE UNITED**<br>**STATES' MOTION FOR**<br>**STAY OF DISCOVERY**<br><br>**Filed under Seal** |

I, TERRENCE J. THOMPSON, hereby declare as follows:

1.  I am an Assistant United States Attorney for the Southern District of Florida, in Fort Lauderdale, Florida, and I have been assigned to the criminal grand jury investigation concerning allegations of fraud, collusion and false statements to the United States, involving Brian Kilcullen d/b/a Sky Knight Air Services and others.  I am submitting this declaration in support of the United States' Motion to Stay Discovery in Sky Knight Air Services, Inc.



vs. United States of America, et al., Case Number 97-7027-CIV-FERGUSON.

2.   I have reviewed the Complaint in the above-referenced civil matter and am familiar with the allegations therein.   I am also familiar with witnesses and evidence that likely will bear upon issues included in the civil complaint allegations.   These civil allegations, witnesses and evidence are similar and/or identical to portions of the allegations, witnesses and evidence presently being investigated in the related criminal investigation.

3.   The Office of the United States Attorney for the Southern District of Florida has requested that the Civil Division of the Office of the United States Attorney for the Southern District of Florida, which has responsibility for defending the above-captioned civil case, stay discovery in this matter until the criminal investigation has been completed.   I believe that good cause for the requested stay is present in this case.

4.   The grand jury investigation has been ongoing since July, 1997 and the nature and scope of the investigation have required the expenditure of significant amounts of time and resources of the United States.   As the criminal Assistant United States Attorney charged with case responsibility, I will continue to require

2

extensive investigative efforts in connection with the criminal case.

5. The Office of the United States Attorney is actively pursuing the criminal investigation of the allegations at issue in this civil case with the investigative assistance of the Office of Internal Affairs, United States Customs Service. Substantial progress has been made in the conduct of the investigation. However, I currently anticipate that the Criminal investigation into these matters will require at least an additional nine months to complete. The criminal investigation was opened on June 20, 1997, and involves allegations of hundreds of thousands of dollars of fraudulent activity involving possible collusion in the purchase and sale of aircraft at United States Customs Service auctions. The criminal statute of limitations will extend for several additional years from the present time, and the sensitivity, magnitude and ramifications of the investigation will require that the Office of the United States Attorney, the grand jury, and the investigation agents utilize this time to examine, investigate and dispose of the potential criminal charges and acts.

6. I am familiar with the discovery that plaintiff has propounded upon the United States. I believe that much of the information and material that plaintiff seeks to elicit in civil

3

discovery would involve matters that are directly material to the above-noted criminal investigation. For example, plaintiff seeks in Interrogatory Nos. 2, 3, and 4, information regarding any and all fact witnesses, the subject matter of their knowledge, and whether they have given statements. Much of this information is protected grand jury information. In Interrogatory No. 9, plaintiff seeks all information with respect to any Internal Affairs Investigations regarding the Swearingin aircraft and the nature of the investigation. Plaintiff would not be entitled to discovery of those materials and information in the criminal matter. Such disclosure in this civil case would seriously compromise the criminal investigation. Moreover, the plaintiff is deposing the government's grand jury witnesses and thus, jeopardizing the ongoing criminal investigation.

7. If the civil matter proceeded at this time, there would be a serious adverse impact on the ongoing criminal investigation. Potential witnesses might become substantially less cooperative if plaintiff's lawyers were permitted to conduct discovery including depositions, interrogatories, requests for admissions and requests for production of documents. Plaintiff might also seek the production of evidence, not obtained in the grand jury, which government investigators have in their possession.

4

8.   A stay of the civil proceedings would be in the best interest of justice, avoid potential discovery disputes, and would also facilitate the speedy resolution of the criminal investigation.   Accordingly, in view of the time necessary to complete the current investigation and the potentially adverse impact civil discovery and potential discovery disputes would have on the criminal investigation, I respectfully request that the Court grant the United States' motion for a stay of this matter until the Grand Jury investigation and criminal cases have been completed.

I declare under penalty of perjury pursuant to Title 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my knowledge.

DATED:  This __6th__ day of __April__, 1998.

TERRENCE J. THOMPSON
ASSISTANT UNITED STATES ATTORNEY

5

# JOEL HIRSCHHORN, P.A.

### ATTORNEYS AT LAW

DOUGLAS CENTRE · PENTHOUSE ONE

2600 DOUGLAS ROAD

CORAL GABLES, FLORIDA 33134

JOEL HIRSCHHORN *

BRIAN H. BIEBER

* ALSO ADMITTED IN WISCONSIN

April 29, 1998

TELEPHONE 445-5320

AREA CODE 305

TELECOPIER 446-1766

Terrence Thompson, Esq.
Assistant United States Attorney
United States Attorney's Office
299 E. Broward Boulevard
Fort Lauderdale, Florida 33301

RE:   **Sky Knight Air Services, Inc./Kilcullen**

Dear Mr. Thompson:

Please be advised that on April 14, 1998 at the deposition of John Roberts in the
Sky Knight v. EG&G Dynatrend case, Mr. Roberts testified that he appraised the subject
aircraft in December 1991, or January 1992, and a complete set of the log books and
avionics were present. We are advising you of the above should you wish to order the
transcript of the deposition. The court reporter's information is as follows: **Allen
Benowitz, Court Reporting, 46 S.W. 1st Street, Suite 100, Miami, Florida 33130 and
the telephone number is: (305) 373-9997.**

Please do not hesitate to call me should you have any questions.

Very truly yours,

BRIAN H. BIEBER

BHB/bb

cc: Lori Rucoba, Assistant United States Attorney

**Rollnick & Linden, P.A.**                                    *Attorneys At Law*

133 Sevilla

July 24, 1998                                                  Coral Gables, FL 33134

Tel. 305 444 7800

**VIA FACSIMILE ONLY**                                         Fax 305 444 3683

Brian H. Bieber, Esquire
**JOEL HIRSCHHORN, P.A.**
2600 Douglas Road, PH-1
Coral Gables, FI. 33134

Re:    **EG&G, Inc. adv. Sky Knight Air Services, Inc.**
       **U.S. District Court, Case No. 97-3765 CIV FERGUSON**

Dear Brian:

This will confirm our conversation today regarding EG&G's production of documents responsive
to Sky Knight's First and Second Requests for Production (the "Requests"). As we discussed United
States Customs' counsel has given us approval to produce a redacted set of documents responsive
to Sky Knight's Requests. We are waiting for Assistant United States Attorney Rucoba to return your
set of the responsive documents back to us so they can be produced.

Accordingly, you agreed you would not file a Motion to Compel as we anticipate producing these
documents by July 30, 1998. However, if the documents are not returned to us by July 30, 1998, you
agreed you would grant EG&G a brief extension if necessary.

If you have any questions or this does not accurately reflect our conversation, please contact our
office immediately.

Very truly yours,

ROLLNICK & LINDEN, P.A.

STACY E. BERCUN
SEB/mrw

cc:    Laurie E. Rucoba (**via facsimile**)
       Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-7027-CIV-FERGUSON/SNOW

SKY NIGHT AIR SERVICES, INC.,
a Florida corporation,

          Plaintiff,

v.

UNITED STATES OF AMERICA,
UNITED STATES CUSTOM SERVICE,
and SAMUEL BANKS,
COMMISSIONER of the UNITED
STATES CUSTOM SERVICE,

          Defendants.

_____/

AUG 17 1999

### DEFENDANTS' MOTION TO LIFT STAY

Defendants, United States of America, United States Custom Service and Samuel Banks, Commissioner of the United States Customs Service (hereinafter "United States"),[1] through the United States Attorney for the Southern District of Florida, hereby advise this Court that the stay in this cause may now be lifted. By Order dated September 20, 1998 (DE # 19), this Court granted the motion of the United States (DE # 14) which sought a stay of all discovery

_____

[1] The United States Customs Service and the Commissioner of the Customs Service are inappropriate parties to this litigation and should be dismissed, as argued in the defendants' motion to dismiss, filed separately herein (DE # ). As a general rule, in the absence of specific statutory authority, agencies of the United States cannot be sued in their own name (eo nomine). Blackmar v. Guerre, 342 U.S. 512, 514-5 (1972).

and proceedings in this case, pending completion of an ongoing criminal investigation. The undersigned Assistant United States Attorney has been advised that the related criminal investigation has been completed, and there is no longer any reason for a stay in this civil cause. A proposed Order lifting the stay in this cause is submitted for the Court's convenience.

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

By: _Laurie E. Rucoba_

LAURIE E. RUCOBA
Assistant United States Attorney
FL # A5500052
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394
Tel: (954) 356-7314, Ext. 3613
Fax: (954) 356-7180

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy was mailed this 16th day of August, 1999 to the following:

Joel Hirschhorn, P.A.
Douglas Centre-Penthouse One
2600 Douglas Road
Coral Gables, FL 33134

_Laurie E. Rucoba_

LAURIE E. RUCOBA
Assistant United States Attorney

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-7027-CIV-FERGUSON/SNOW

SKY KNIGHT AIR SERVICES, INC.,
a Florida corporation,

              Plaintiff,

v.

UNITED STATES OF AMERICA,
UNITED STATES CUSTOM SERVICE,
and SAMUEL BANKS,
COMMISSIONER of the UNITED
STATES CUSTOM SERVICE,

              Defendants.

_____/

## DECLARATION OF JERRY L. HAWKINS

I, Jerry L. Hawkins, hereby declare and state the following.

1. I am the District Manager of EG&G Technical Services, Inc., formerly known as EG&G Dynatrend, Inc. (hereinafter "EG&G"). I have been a District Manager with EG&G since August 1990. As the District Manager, my duties and responsibilities generally consist of managing and overseeing operations in South Florida area. EG&G is responsible for taking custody of, storing and disposing of seized property pursuant to a contract with the U.S. Department of the Treasury, United States Customs Service.

2. I am making this Declaration based on my personal knowledge of the facts of this case, and my review of documents in the files of EG&G. I am familiar with and have personal knowledge of the facts surrounding the Auction of Seized Property and General

Order Merchandise which EG&G conducted on behalf of the U.S. Department of the Treasury on April 30, 1997.

3. A 1979 Swearingen Merlin IIIB (N802ME) was listed for sale as Lot 0001 in the Catalog for the April 30, 1997 auction. A true and correct copy of the original Auction Catalog is attached as Exhibit A. The Auction Catalog described the plane with "Avionics Missing, No Log Books."

4. It is the customary practice of EG&G to publish an aircraft flyer for each specific aircraft sold at auction. The flyer is distributed publically two to three weeks in advance of the sale, and is available at the offices of the United States Customs Service and EG&G. Flyers are also available to prospective purchasers at the time of registration. A true and correct copy of the original Aircraft Flyer for the 1979 Swearingen Merlin is attached as Exhibit B. The flyer contains information about preview dates and locations (when prospective bidders or purchasers may view and inspect the aircraft prior to auction), auction dates and location, photographs of the aircraft, information on the aircraft, addendum for bidding terms, and selected terms of sale.

5. This particular aircraft was previewed on April 21 and 28, 1997 at Opa-Locka Airport. Prospective bidders or purchasers who attend the preview have an opportunity to view and inspect the airplane. Engines on the plane are started at specific times and run for observation. It is customary practice of EG&G to permit any prospective bidder or purchaser to enter the plane and inspect the inside of the aircraft, as well as inspect inventory that may be sold with the aircraft.

2

6. The terms of the sale for this particular aircraft provided that the "buyer understands and agrees that the property/merchandise is purchased and accepted by the buyer 'AS IS,' and 'WITH ALL FAULTS.'"

7. This particular aircraft was advertised with "No Log Books Available." It is the customary practice of EG&G to advertise in this manner, even if partial Log Books are available, so that the prospective bidder or purchaser, understands that some or all aircraft Log Books are not available. The presence or absence of log books significantly affects the value of an aircraft.

8. The flyer for this specific aircraft also contains the standard proviso that "This is a partial list, items may be added or deleted. All weights, descriptions, and export status must be considered approximations and do not create any warranty."

9. To bid on an item, prospective bidders must submit a "Bidder Registration Form" prior to the auction. A true and correct copy of the original Bidder Registration form for the 1979 Swearingen Merlin IIB, submitted for Sky Knight Air Services, Inc., and signed by Brian A. Kilcullen, on behalf of Sky Knight Air, is attached as Exhibit C.

10. On April 30, 1997, Mr. Brian A. Kilcullen, purchased the 1979 Swearingen Merlin IIIB ("N802ME") on behalf of Sky Knight Air Services, Inc., at the auction, for the sum of three hundred sixty five thousand dollars ($365,000).

11. On May 13, 1997, Brian A. Kilcullen took possession of the aircraft with its inventory. A true and correct copy of the Property Release Document is attached as Exhibit D.

3

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America  that the foregoing is true and correct.  Executed on this 25th day of August, 2000.

JERRY L. HAWKINS
District Manager
EG&G Technical Services, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-7027-CIV-FERGUSON/SNOW

SKY KNIGHT AIR SERVICES, INC.,
a Florida corporation,

        Plaintiff,

v.

UNITED STATES OF AMERICA,
UNITED STATES CUSTOM SERVICE,
and SAMUEL BANKS,
COMMISSIONER of the UNITED
STATES CUSTOM SERVICE,

        Defendants.

_____/

RECEIVED

AUG 2 ~ 200?

HIRSCHHORN & BIEBER, P.A.

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The United States of America, on behalf of the Defendants, United States of America, United States Customs Service, and Samuel Banks, Commissioner of the United States Customs Service, through the undersigned United States Attorney for the Southern District of Florida, hereby respectfully submits this response in opposition to plaintiff's Motion for Summary Judgment. Plaintiff's motion is confusing, distorts the law and facts in this case, and should be denied.  Plaintiff is not entitled to any relief from this Court.

## STATEMENT OF THE CASE

On August 25, 1997, plaintiff filed this Complaint seeking the return of aircraft log books and avionics equipment, monetary damages and injunctive relief against the defendants (DE #1). Plaintiff contended that there was an unlawful seizure of the property at issue in this case, aircraft log books and avionics equipment. In Count I, plaintiff sought return of its property, asserted that defendants' retention of the property violated its due process rights (DE #1, ¶27), and contended that this deprivation was in "callous disregard of Sky Knight's rights under the Fourth and Fifth Amendments to the United States Constitution" (DE #1, ¶29). In Count II, plaintiff, without stating a legal basis for its right to receive monetary damages, contended that it lost "a considerable amount of money" (DE #1,¶31), and sought damages in excess of $50,000 against the defendants. In Count III of the complaint, plaintiff also sought injunctive relief to force the United States to convey title to the aircraft.   Count III has been voluntarily dismissed by plaintiff (DE # 13). Subsequent to the filing of this lawsuit, the avionics and log books were returned to plaintiff on February 13,1998. Thus, the only relief now sought by plaintiff in this case is limited to an award of monetary damages in excess of $75,000.  See parties' Joint Pretrial Stipulation at ¶ 1, page 2.

The United States originally sought dismissal of this cause for lack of subject matter jurisdiction on November 28, 1997 (DE # 8). This Court denied that motion, without opinion, on September 20, 1998 (DE #17); at the same time, granting the United States a stay of this civil action pending completion of the related criminal investigation (DE #19).

2

On August 16, 1999, the United States advised this Court that the stay could be lifted. On March 15, 2000, this Court lifted the stay in this cause (DE # 26).

Thereafter, the United States filed its Motion to Dismiss and/or for Summary Judgment on March 20, 2000 (DE #27) and its Reply to plaintiff's Response on May 5, 2000 (DE # 35), contending that this Court lacks subject matter jurisdiction in this case, based on the principle of sovereign immunity. It is the government's position, that under any set of facts alleged by the plaintiff, the United States is immune from suit for money damages for constitutional violations. The Court has not yet ruled on the government's motion.

The United States is entitled to summary judgment as a matter of law. Plaintiff is not entitled to summary judgment, and the United States submits this opposition to plaintiff's Motion for Summary Judgment.

## CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

The United States, in its Motion to Dismiss and/or for Summary Judgment filed on March 20, 2000 (DE #27), set forth its Statement of Undisputed Material Facts, and incorporates those facts by reference herein.

The United States does not dispute plaintiff's Statement of Undisputed Material Facts, as alleged in paragraphs 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12. The United States disagrees with the facts as alleged in paragraphs 2 and 13.

As the Declaration of Jerry Hawkins, District Manager of EG&G Technical Services, Inc., formerly known as EG&G Dynatrend, Inc. ("hereinafter EG&G" and attached hereto as Exhibit 1, see ¶5) demonstrates, plaintiff Brian A. Kilcullen, on behalf of Sky Knight Air

3

Services, Inc., had an opportunity on April 21 and 28, 1997 to view and inspect the aircraft prior to the auction at the Opa-Locka Airport, contrary to his claim in paragraph 2 of plaintiff's Undisputed Facts. Moreover, in a recent deposition of witness Clay Gamber on August 18, 2000, Mr. Gamber testified that he saw Mr. Kilcullen, with another individual, inside the aircraft, inspecting the aircraft prior to the auction.[1]

In addition, as demonstrated by the Auction Catalog and Aircraft Flyer, attached as Exhibits to the Declaration of Jerry Hawkins, the terms of the sale for this particular aircraft provided that the "buyer understands and agrees that the property/merchandise is purchased and accepted by the buyer 'AS IS,' and 'WITH ALL FAULTS.'" See ¶ 6 of Hawkins Declaration.  Moreover, the aircraft flyer provides on each page that "[t]his is a partial list, items may be added or deleted. All weights, descriptions, and export status must be considered approximations and do not create any warranty."  See ¶ 8 of the Hawkins Declaration.

To bid on an item, prospective bidders must submit a "Bidder Registration Form" prior to the auction. A true and correct copy of the original Bidder Registration form for the 1979 Swearingen Merlin IIIB, submitted for Sky Knight Air Services, Inc., and signed by Brian A. Kilcullen, on behalf of Sky Knight Air, is attached as Exhibit C to the Hawkins Declaration.  See ¶ 9 of the Hawkins Declaration.  That form provides that the bidder "agree[s] to comply with the terms of sale contained in the sale catalog for this sale and future sales I attend."  That form also indicates that this was not the first United States

---

[1] The deposition transcript of Mr. Gamber is not yet available, but will be ordered and provided to this Court.

4

Customs Service auction attended by Brian A. Kilcullen, on behalf of Sky Knight Air Services, Inc. Mr. Kilcullen bid on this aircraft with knowledge of the risks involved, the missing equipment and log books, and the limited warranty given by the United States Customs Service.

With respect to the deposition testimony of Special Agent Michael Consavage, the United States disagrees with plaintiff's restatement as set forth in his paragraph 13. The testimony speaks for itself. The United States noted an objection to the questions by plaintiff's counsel, as the testimony sought is inadmissible, irrelevant opinion testimony, and calls for a legal conclusion. See discussion infra.

## ARGUMENT

### A.      Plaintiff is not entitled to Summary Judgment under Hunsucker

Plaintiff first argues, in support of his motion at page 6, that federal district courts have the power to order the suppression or return of unlawfully seized property, relying on Hunsucker v. Phinney, 497 F.2d 29, 32 (5th Cir. 1974). While the Hunsucker decision stands for this proposition, that is not the issue presently pending before this Court. Plaintiff's property has been returned. The United States also cleared up title to the aircraft, as the plaintiff requested, and that count of the complaint was dismissed. There is no further equitable relief that plaintiff is requesting in this case. The only relief that plaintiff is presently seeking in this case is his claim for monetary damages in excess of $75,000.

More importantly, plaintiff misreads the Hunsucker decision, and fails to point out the Fifth Circuit's conclusion in that case. The Hunsucker case concerned a taxpayer who protested that the Internal Revenue Service had illegally seized bet slips, wage recap slips

5

and other gambling documents from his apartment, and sought an order from the district court compelling the return of the property and prohibiting the use of the documents as evidence against plaintiff in a criminal prosecution. The documents were returned to the plaintiff, prior to any prosecution. The district court determined that it had jurisdiction and dismissed plaintiff's action with prejudice. The Fifth Circuit held, as plaintiff has cited herein, that while federal district courts have the power to order suppression or the return of property prior to indictment, "this jurisdiction is...exceptional...." 497 F.2d at 31. The Fifth Circuit recognized that the jurisdiction the Hunsucker plaintiff sought to invoke is "governed by equitable principles," and the Fifth Circuit went on to conclude that the return of the property "prior to trial in the District Court forecloses the possibility that equitable intervention might have been justified [in this case]...." 497 F.2d at 35. The Court succinctly concluded that the exercise of equitable jurisdiction was not warranted in this case given the return of the property, and rebuffed Hunsucker's attempts (as plaintiff also argues in this case) to create jurisdiction under 28 U.S.C. §§ 1356, 1331.

The Fifth Circuit also commented in Hunsucker that the Tucker Act at 28 U.S.C. §1346(a)(2)[2] applies to suits for money damages for alleged unlawful seizures. 497 F.2d

---

[2] If the Court determines that there is jurisdiction over this action under 28 U.S.C. § 1346(a)(2), more commonly known as the Tucker Act, then plaintiff's case should be transferred to the United States Court of Federal Claims, as plaintiff's complaint, on its face, seeks in excess of $10,000 in damages (the district court's jurisdictional limitation). Even though this Court lacks subject matter jurisdiction of the monetary damages' claim of plaintiff, 28 U.S.C. § 1406(a) allows the district court to transfer, rather than dismiss, suits within the exclusive jurisdiction of the Court of Federal Claims directly to the Court of Federal Claims "in the interest of justice." See Keller v. Merit Sys. Protection Bd., 679 F.2d 220, 223 (11th Cir. 1982).

6

at 36. In Hunsucker, plaintiff did not make any claim for money damages , unlike plaintiff Sky Knight in the instant case. Plaintiff Sky Knight, here argues, that because the Court of Federal Claims has no power to grant equitable relief, the government's argument that his case belongs in the Court of Federal Claims is wrong.  However, plaintiff's argument is inapposite. There is nothing in the nature of equitable relief sought by plaintiff at this time.  Seemingly to mislead this Court, plaintiff states in his conclusion that he is entitled to saleable and marketable title. Title has been given to plaintiff,[3] and plaintiff has dismissed this Count of his complaint.

Plaintiff next cites the Keller v. Merit Sys. Protection Bd., 679 F.2d 220 (11th Cir. 1982) in support of its motion, without discussing the facts. In Keller, a federal employee plaintiff contested his termination by the Merit Systems Protection Board (MSPB) and sought back pay and reinstatement in the district court. The district court granted plaintiff's relief and the MSPB appealed, alleging that the district court lacked subject matter jurisdiction of plaintiff's claim because he sought in excess of $10,000 in damages against the United States.  The Eleventh Circuit agreed that the district court lacked subject matter jurisdiction and relied on a body of Fifth Circuit decisions in affirming that "'t]he Court of Claims is the sole forum for the adjudication of a claim against the United States exceeding $10,000). . . ." Keller, 679 F.2d at 222 (citation omitted). Plaintiff in this case argues that this jurisdiction is by implication and implies it is not well settled. Plaintiff ignores the wealth

_____

[3] In fact, plaintiff's receipt of a letter from the United States Attorney's office, stating its position regarding title, presumably is what enabled plaintiff to sell the plane on April 24, 1998.

7

of case law clearly holding that district courts have concurrent jurisdiction of Tucker Act claims less than $10,000 (known as Little Tucker Act cases) and the Court of Federal Claims has exclusive jurisdiction of claims over $10,000. [4]

Plaintiff next relies on Bowen v. Massachusetts, 487 U.S. 879 (1988), to support the proposition that Claims Court jurisdiction is improper in the instant case. But the Bowen v. Massachusetts decision by the Supreme Court is clearly distinguishable and has no bearing on the facts of this case. In Bowen v. Massachusetts, the issue presented was whether a federal district court has jurisdiction to review a final order of the Secretary of Health and Human Services refusing to reimburse a State for a category of expenditures under its Medicaid program. In rejecting the government's argument that exclusive jurisdiction of the matter rested with the Claims Court, the Supreme Court commented that the State of Massachusetts was not seeking monetary damages for losses (such as those intended to provide a victim with compensation for an injury to his person, property or reputation), but rather the State was seeking funds to which a statute allegedly entitled it to and which the federal government was withholding. Clearly, in the instant case, plaintiff Sky Knight is seeking "compensation for the resulting damages" and monetary damages for the loss of his property, "business and ability to earn a living," as is claimed in his motion at page 8.

---

[4] See United States v. Hohri, 482 U.S. 64, 66 n. 1 (1987); United States v. Mitchell, 463 U.S. 206, 216 (1983); Chemung County v. Dole, 781 F.2d 963, 967 (2d Cir.1986); Orange Ridge, Inc. v. Florida, 696 F.Supp. 600, 603 n. 7 (S.D.Fla.1988) (Court of Claims has exclusive jurisdiction over fifth amendment taking claims for more than $10,000).

Plaintiff objects so strenuously to the government's suggestion of possible Court of Federal Claims jurisdiction because it realizes that it stands no chance of recovery there. Plaintiff's complaint seeks monetary damages against the United States and its agency, the United States Customs Service, and the Commissioner of the United States Customs Service (in his official capacity) for the wrongful deprivation of plaintiff's property without "due process of law" and in violation of the Fourth and Fifth Amendments to the United States Constitution (Plaintiff's Complaint, ¶s 27, 29, 35). The Supreme Court in Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86 (1994) held that an individual cannot bring a constitutional claim for money damages against a federal agency, nor does a claim for money damages lie against the United States for the constitutional deprivation of property . Montalvo v. United States, 231 Ct. Cl. 980, 982-83 (1982). The sovereign, its agencies and officials are immune from suit for such constitutional violations.

B.   **Plaintiff's Representations Regarding an Inability to Inspect and Misleading Advertising do not Warrant Summary Judgment**

Plaintiff next argues that he was prevented from inspecting the aircraft and that the advertising regarding the log books was misleading. There is no legal support or argument made in plaintiff's brief for why these facts entitle him to summary judgment. While the United States does not believe that these facts are material, nonetheless, it is clear that there is a genuine dispute here. See Declaration of Hawkins filed herein. Thus, plaintiff is not entitled to summary judgment because of these facts.

9

**C.** **Special Agent Consavage's Testimony that the Seizure was in "Error" does not Warrant Summary Judgment**

Plaintiff next suggests that because Special Agent Consavage testified in deposition that in "retrospect," the seizure was in "error," that this entitles him to summary judgment. Plaintiff cites absolutely no legal authority, and makes no argument as to why this statement entitles him to summary judgment.

First, the agent's testimony on this issue was objected to by the government. The testimony is inadmissible opinion testimony made by a witness who is incompetent to render the opinion because it calls for a legal conclusion. The issue in this case is whether or not the government's seizure of the log books and avionics was lawful or unlawful. It is not the agent's opinion "in retrospect" that determines this issue; it is a determination to be made by this Court.

Whether the seizure was lawful or unlawful depends upon whether there was "probable cause" at the time of seizure. It is undisputed that there was a Seizure Warrant issued by United States Magistrate Judge Lurana S. Snow on July 3, 1997, at which time Magistrate Judge Snow found probable cause to support the seizure of the log books and avionics. See Seizure Warrant and affidavit attached to Government's Motion to Dismiss and/or in the alternative Motion for Summary Judgment (DE # 27 at Exhibit B). A Magistrate Judge's "determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates , 462 U.S. 213, 236 (1983); U.S. v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994); U.S. v. Gonzalez, 940 F,2d 1413, 1419 (11th Cir. 1991). In addition, any doubts are resolved in favor of upholding the warrant, and all of the evidence is

10

construed in the light most favorable to the government. <u>Marine Midland Bank, N.A. v. U.S.</u>, 11 F.3d 1119, 1125 (2nd Cir. 1993).

Plaintiff cites absolutely no facts to dispute this finding of probable cause, other than the Special Agent's inadmissible opinion testimony "in retrospect." Probable cause is defined as a reasonable ground for belief of guilt supported by less than prima facie proof but more than mere suspicion. <u>United States v. $4,255,000</u>, 762 F.2d 895, 903 (11th Cir. 1985). Obviously, at the time, there was reasonable cause to seize the log books and missing avionics which had "mysteriously appeared" after the auction. The facts support Special Agent Consavage's good faith belief that seizure of the log books and avionics was warranted.

First, the aircraft was sold by EG&G at a very low value, consistent with the understanding that some log books were missing.[5] It is undisputed that the presence or absence of log books significantly affects an aircraft's value. Witnesses have testified in deposition that a Merlin in top condition with log books would have been worth approximately $750,000 at that time. It is obvious that the United States Customs Service may have been mislead about the value of the plane in its inventory, given the difference in the auction sales price to Sky Knight ($365,000) and Sky Knight's agreement with Patco, Inc. ($495,000) and Patco's subsequent offer to Mike Eberle ($550,000). See plaintiff's

---

[5] All the witnesses in deposition have testified that some log books were shown at the viewing and it appears that log books prior to 1984 were available. However, as the Declaration of Hawkins notes, it was customary to advertise an aircraft with "no log books available," even where partial log books are available, in order to place buyers on notice of the risk associated with the purchase of the aircraft.

11

Motion at ¶s 5&6.   Moreover, the United States Customs Service received a complaint from another bidder after the auction which launched Special Agent Consavage's criminal investigation and contributed to  the seizure of the log books and avionics.  See letter of Roy Butler dated May 31, 1997 attached as Exhibit 2.   The fact that the criminal investigation resulted in no indictments merely means there was insufficient evidence to support a finding of wilful criminal conduct, warranting indictment.  Plaintiff has offered no admissible evidence to suggest that there was insufficient probable cause to support the seizure, and thus is not entitled to summary judgment on this issue.

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that an Order be entered denying plaintiff's Motion for Summary Judgment, and respectfully renews its request that its Motion to Dismiss and/or in the alternative, Motion for Summary Judgment, be granted.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _Laurie E. Rucoba_
LAURIE E. RUCOBA
Assistant United States Attorney
NO.  A5500052
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, Florida  33394
Tel: (954) 356-7314, ext. 3613
Fax: (954) 356-7180

HIRSCHHORN & BIEBER, P., ..

ATTORNEYS AT LAW

DOUGLAS CENTRE · PENTHOUSE ONE

2600 DOUGLAS ROAD

CORAL GABLES  FLORIDA 33134

JOEL HIRSCHHORN *

BRIAN H. BIEBER

*ALSO ADMITTED IN WISCONSIN
*FELLOW, AMERICAN BOARD OF
 CRIMINAL LAWYERS

TELEPHONE 445-5320
AREA CODE 305
TELECOPIER 446-1766
E-MAIL:
jhirschhorn@aquitall.com
bbieber@aquitall.com

October 25, 2001

Terrence J. Thompson, Esq.
Assistant United States Attorney
United States Attorney's Office
299 E. Broward Boulevard
Fort Lauderdale, Florida 33301

> RE:   **Sky Knight adv. U.S.A.**
>        **Case No.: 97-7027-CIV-Ferguson**

Dear Mr. Thompson:

We recently received a copy of your previously sealed April 6, 1998 Declaration in support of the United States' Motion for Stay of Discovery in the above-styled case. Although this case is closed, we are confused and frankly appalled at your lack of candor with the Court.

Enclosed please find pages 1624-1631 of the Rodney Matthews' Trial Transcript. Unless you slept through Mr. Bailey's cross-examination of John Dent, clearly, you and Mr. Dent were aware that the Government and EG&G Dynatrend were in possession of the log books accompanying the Merlin (N802ME). Yet, the Government took the exact opposite position in the above-styled case. Unless I am missing something, the Government's seizure, investigation, and subsequent defense in the civil litigation were all pursued in bad faith.

Sky Knight and Brian Kilcullen are entitled to some form of relief. I look forward to hearing from you.

Very truly yours,

JOEL HIRSCHHORN

JH/amb
Enclosure

# HIRSCHHORN & BIEBER, P.A.

ATTORNEYS AT LAW

DOUGLAS CENTRE · PENTHOUSE ONE

2600 DOUGLAS ROAD

CORAL GABLES, FLORIDA 33134

JOEL HIRSCHHORN *

BRIAN H. BIEBER

*ALSO ADMITTED IN WISCONSIN
*FELLOW, AMERICAN BOARD OF
 CRIMINAL LAWYERS

TELEPHONE 445-5320
AREA CODE 305
TELECOPIER 446-1766
E MAIL:
jhirschhorn@aquitall.com
bbieber@aquitall.com

December 13, 2001

Terrence J. Thompson, Esq.
Assistant United States Attorney
United States Attorney's Office
299 E. Broward Boulevard
Fort Lauderdale, Florida 33301

**RE: Sky Knight adv. U.S.A.**

Dear Mr. Thompson:

On October 25, 2001 I wrote you regarding the above-captioned matter.

I thought I had detailed my concern. You have either not received my letter, or elected to ignore it. I am going to presume that you either did not receive the letter, or were so busy that you did not have a chance to respond, so I am forwarding another copy of the letter to you.

As a matter of fundamental decency, won't you please respond within a reasonable time – shall we say two weeks? I have noted in my calendar that if I do not hear from you, I will (reluctantly, but inevitably) take this matter up with your supervisor.

Very truly yours,

JOEL HIRSCHHORN
(Signed in Mr. Hirschhorn's absence
to avoid delay)

JH:aa

Enclosure

January 24, 2002

United States Attorney Guy Lewis
Office of the United States Attorney
99 NE 4th St.
Miami, Florida 33132

Attn:  Mr. Guy Lewis


Ref:    97-7027 - Civ Ferguson
        97-3765 - Civ Ferguson


Dear Sir,

On December 24th, 2001, motions were filed before the court in the above styled cases.  A copy was supplied to you for your review and attention, as these government attorneys act under your authority.  The "Statement of Facts" clearly outline the events and circumstances which brought about the necessity to seek sanctions.

I seek neither to be a government investigator, nor an attorney and certainly not to interfere with any current investigation, but given that these fraudulent actions have deprived my family and I of our savings, business and peace of mind, I intend to proceed with whatever action necessary to seek restitution for the damages caused by those involved.  To that end, I must determine that an "active investigation" does in fact exist into the criminal matters of the case.

Communications with your office have indicated that I, Brian Kilcullen, have been cleared with regards to this matter and that an active investigation still exists, but the credibility and intent of these statements (AUSA Thompson) is suspect.

The government's last position filed with the above referenced civil matters leaves the allegations of fraud, collusion and false statements at my doorstep and the status of the investigation in question.  That coupled with the fact that in over four years, since this matter began, I, Brian Kilcullen, being; the buyer and person most knowledgeable as to facts, statements and representations in the sale of N802ME; an expert in the aviation field; and a material witness with the most evidentiary value and credibility, having never been formally interviewed by anyone in your office, leads one to believe that no real investigation is taking place.  Having been threatened with "obstruction of justice" and prosecution if found to be making "false statements" in this case, I find it puzzling and unacceptable that those guilty of fraud, collusion and false statements have escaped prosecution in this matter to date.

As a material witness, I have no doubts or confusion as to the existence of or nature of the crimes committed and with the overwhelming evidence to support these assertions, I fail to see the reasoning for the lack of action on the part of the US Customs Service and the United States Attorneys Office.

I am requesting acknowledgment as to whether or not an active investigation into the fraudulent sale of N802ME does exist and do hereby request that I, Brian Kilcullen, a material witness, be debriefed as to facts and details of fraud and false statements in this case, as well as others, at your office's earliest convenience.

As a taxpayer, litigant and citizen of the United States, I am appalled at the losses suffered by the US Customs Service and the United States of America due to fraud, obstruction of justice and misconduct by those involved in said criminal matters and the continuing damages to my business and myself.

I would expect that the nature and severity of the crimes committed and perpetuated would command your prompt attention.

Sincerely,

Brian Kilcullen
SkyKnight Air Services, Inc.
(954) 772-0200
(Fax) 772-6996

cc:   Eileen O'Conner, Assistant United States Attorney
      Barbara Petras, Assistant United States Attorney
      Special Agent Brian Dennison, Department of Treasury
      Congressman E. Clay Shaw

March 20, 2002

United States Attorney Guy Lewis
Office of the United States Attorney
99 NE 4th St.
Miami, Florida 33132

Attn:  Mr. Guy Lewis


Ref:   97-7027 - Civ Ferguson
       97-3765 - Civ Ferguson


Dear Sir,

On January 24th, 2002, a letter was sent, certified mail, to your office requesting acknowledgment as to whether or not an active investigation exist into the fraudulent sales of seized assets (N802ME) of the US Customs Service in South Florida.  It was also requested that I, Brian Kilcullen, a material witness with the most knowledge and credibility be debriefed, but to date the only response from the Department of Justice is that SkyKnight pay the $918.10, Tax for Costs, awarded the government in the above styled case.  A judgement fraudulently obtained, I might ad, as the  motion referred to clearly shows that the government prevailed only because of an extrinsic fraud on the court by AUSA Thompson and AUSA Rucoba.  The motion before the court seeks to remedy this travesty of justice.

The US Government lost hundreds of thousands of dollars in the sale of N802ME and upwards of millions in the fraudulent sales of other forfeited property in years past at the hands of the US Customs Service and it's contractors (EG&G), but yet your office allows those responsible for defrauding the US Government of millions to go free and not even seek restitution.  The perpetrators are unscathed, but yet this $918.10 merits your office's attention.

One can't help but wonder what politics or business arrangements between EG&G and the US Government exist which could sway the balance of justice so far from center.  As stated in the motion, before the court, money was at the heart of the intrinsic fraud of John Dent and his co-conspirators and money is at the heart of this cover-up, but where does it's influence end?  The monies taken away from Rodney Matthews has done nothing to bolster crime fighting and the costs of prosecution due to losses from fraud, waste and abuse.  The greatest losses of all, though, are the Constitution of the United States and the credibility within the Department of Justice.  The Asset Forfeiture Program is a fraud and everyone and every entity it touches is corrupted by it.

AUSA Mary Dooley wants SkyKnight to pay $918.10, but the fact is that Brian Kilcullen/SkyKnight has been operating at a deficit since the unlawful seizure of which I speak.  I was deprived due process in the seizure of my property and I have been deprived due process in the resulting civil litigation.  If justice is what you seek, then direct your subordinates to pursue both criminal

and civil prosecutions of those actually responsible for the government's losses. If the government persists on making myself the scapegoat for it's internal deficiencies, then this will only exacerbate and escalate the matters between us.

> In BIVENS v. SIX UNKNOWN FED. NARCOTICS
> AGENTS, 403 U.S. 388 (1971), JUSTICE BRENNAN wrote:
> The Fourth Amendment provides that:

> It guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."

The circumstances we find ourselves in today are not of my doing and as such, I refuse to bear the responsibility.  As the US Attorney for the Southern District of Florida, you are in charge of and responsible for the actions and inactions of those whom sign in your name. As a citizen, taxpayer and litigant, I find your office's lack of responsibility and accountability in this matter both appalling and unacceptable. It is therefore  my intent to hold all responsible for these Constitutional transgressions both officially and personally.  The utter gall of the Department of Justice to exonerate fraud within this government and demand payment from the wronged party in the resulting litigation is criminal.

SkyKnight hopes to prevail in the above styled cases, but if not, rest assured that there still exists other avenues to pursue and this letter serves as notice to all parties, per the Federal Rules of Civil Procedure, that unless your office corrects the injustices outlined, Brian Kilcullen/SkyKnight will seek restitution from those individuals responsible.

Sincerely,

Brian Kilcullen
SkyKnight Air Services, Inc.
(954) 772-0200
(Fax) 772-6996

cc:   Attorney General John Ashcroft            ABC
      DOJ Office of Professional Responsibility   CBS
      AUSA Mary Dooley                          NBC
      AUSA Barbara Petras                       GAO
      AUSA Terrence Thompson
      AUSA Laurie Rucoba
      Congressman E. Clay Shaw
      Congressman Alcee Hastings

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SkyKnight Air Services, Inc.
Brian Kilcullen

## DEFENDANTS

Guy Lewis, et al

MAGISTRATE JUDGE
~ SELTZER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

**02-60964**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES. USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)

Brian Kilcullen, Pro Se

ATTORNEYS (IF KNOWN)

**CIV - ROETTGER**

O:02CV 60964 NCR

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE,   MONROE,   (BROWARD,)   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault. Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R R & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC DIWW (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | | | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret Inc Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION

(CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

18 U.S.C. 1964 (c)
42 U.S.C. 1983, 1985, 1986
FLA. STATUTE 772.102, 103, 104

LENGTH OF TRIAL
via 5 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $
$6,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE  Wilkie Ferguson

DOCKET NUMBER  97 CV 7027, 3765

DATE  7-15-02

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 525684   AMOUNT 150   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JUL 15 2002